# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| | * | **CASE NO. 22-1740** |
| | * | |
| **IN RE ROMAN CATHOLIC CHURCH** | * | **SECT. "T", JUDGE GUIDRY** |
| **OF THE ARCHDIOCESE OF NEW** | * | |
| **ORLEANS** | * | **MAG. DIV. 3, MAG. JUDGE** |
| | * | **DOUGLAS** |
| | * | |

## MEMORANDUM IN SUPPORT
## OF APPELLANT'S MOTION FOR EMERGENCY STAY
## OF SANCTIONS HEARING IN BANKRUPTCY COURT
## PENDING APPEAL OF CONTEMPT ORDER

**MAY IT PLEASE THE COURT:**

Appellant Richard C. Trahant, through undersigned counsel, respectfully submits this memorandum in support of his motion for an emergency stay of a sanctions hearing against him currently set for August 22, 2022 in the underlying bankruptcy proceeding, pending his appeal herein from a final Order of the Bankruptcy Court dated June 7, 2022, pursuant to Fed. R. Bankr. P. 8007[1]

---

[1] Fed. R. Bankr. P. 8007 provides in pertinent part:

Rule 8007. Stay Pending Appeal; Bonds; Suspension of Proceedings

(a) Initial Motion in the Bankruptcy Court.

> (1) In General. Ordinarily, a party must move first in the bankruptcy court for the following relief:

>> (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal;
>> . . .

>> (D) the suspension or continuation of proceedings in a case or other relief permitted by subdivision (e).

(continued...)

-1-

(Ex. A-B, F Bankr. Docs. 1574, 1589, 1644). In the June 7, 2022 Order, the Bankruptcy Court held

[1] (...continued)
> (2) Time to File. The motion may be made either before or after the notice of appeal is filed.

(b) Motion in the District Court, the BAP, or the Court of Appeals on Direct Appeal.

> (1) Request for Relief. A motion for the relief specified in subdivision (a)(1)—or to vacate or modify a bankruptcy court's order granting such relief—may be made in the court where the appeal is pending.

> (2) Showing or Statement Required. The motion must:

>> (A) show that moving first in the bankruptcy court would be impracticable; or

>> (B) if a motion was made in the bankruptcy court, either state that the court has not yet ruled on the motion, or state that the court has ruled and set out any reasons given for the ruling.

> (3) Additional Content. The motion must also include:

>> (A) the reasons for granting the relief requested and the facts relied upon;

>> (B) affidavits or other sworn statements supporting facts subject to dispute; and

>> (C) relevant parts of the record.

> (4) Serving Notice. The movant must give reasonable notice of the motion to all parties.

. . .

(e) Continuation of Proceedings in the Bankruptcy Court. Despite Rule 7062 and subject to the authority of the district court, BAP, or court of appeals, the bankruptcy court may:

> (1) suspend or order the continuation of other proceedings in the case; or

> (2) issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest.

Mr. Trahant in contempt for alleged violations of a Protective Order, ordered the United States Trustee to remove Mr. Trahant's clients from the Official Committee of Unsecured Creditors in the bankruptcy proceeding, and disqualified him from participating in proceedings of the Committee. As shown herein, a stay of the sanctions hearing is warranted and necessary because this appeal divests the Bankruptcy Court of jurisdiction to award additional sanctions pursuant to the Order appealed. Additionally or in the alternative, this Court should exercise its judicial discretion to grant a stay of the sanctions hearing pending the appeal under the circumstances of this case.

## I. Facts

Mr. Trahant is counsel of record for sexual abuse claimants James Adams, Theodore Jackson, Jackie Berthelot, and Eric Johnson (the "Abuse Claimants") against debtor The Roman Catholic Church of the Archdiocese of New Orleans (the "Debtor") in the Chapter 11 bankruptcy proceeding entitled "In re The Roman Catholic Church of the Archdiocese of New Orleans," No. 20-10846, Sect. "A" on the docket of the U.S. Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Proceeding") (Ex. G Bankr. Doc. 37; Ex. T Trahant Decl. ¶ 5). In the Bankruptcy Proceeding, the U.S. Trustee appointed the Abuse Claimants to the Official Committee of Unsecured Creditors (the "Committee") "pursuant to 11 U.S.C. § 1102(a)(1) ... with the powers enumerated in 11 U.S.C. § 1103" on May 20, 2020 (Ex. H Bankr. Doc. 94-95, 151). One of the Abuse Claimants, James Adams, was elected Committee Chairperson (Ex. H Bankr. Doc. 151). As Committee members, the Abuse Claimants and their counsel, including Mr. Trahant, spent many hours reviewing and analyzing thousands of pages of documents produced in discovery in the Bankruptcy Proceeding, and have extensive knowledge of matters relevant to the case, the formulation of a plan,

and ongoing mediation on behalf of the Committee and the many sexual abuse claimants whose interests it represents (Ex. T Trahant Decl. ¶ 6).

On June 7, 2022, the Bankruptcy Court issued an Order (Ex. A Bankr. Doc. 1574) finding that Mr. Trahant allegedly "provided on multiple occasions confidential information he received to a third party and the media in direct violation of this Court's Protective Order," and that the alleged breach "disqualifies him from further receiving Protected Material in this case and participating in any confidential Committee proceedings, including meetings, deliberations, and mediation" (Ex. A Bankr. Doc. 1574 pp. 3-4). The Bankruptcy Court further found that "the Court is forced to impute Trahant's actions to those of his clients on the Committee ...," and ordered the U.S. Trustee to "immediately relieve [the Abuse Claimants] from service on the Committee ..." (Ex. A Bankr. Doc. 1574 pp. 4-5). The Bankruptcy Court further ordered that it "will issue a separate Order To Show Cause to determine appropriate sanctions for Trahant's disclosure of confidential information in violation of this Court's Protective Order" (Ex. A Bankr. Doc. 1574). The Bankruptcy Court cited 11 U.S.C. §§ 105(a) and 1102(a)(4) as authority for the Order.[2]

---

[2] The cited statutes provide in pertinent part:

§ 105. Power of Court

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process....

11 U.S.C. § 105(a).

§1102. Creditors' and equity security holders' committees

(continued...)

Contrary to the findings of the Bankruptcy Court in the June 7, 2022 Order, Mr. Trahant did not provide any document or information governed by the Protective Order to any third party or to the media at any time, and did not violate the Protective Order in any manner at any time (Ex. T Trahant Decl. ¶ 8).

The Bankruptcy Court issued the June 7, 2022 Order approximately one hour before mediation was set to begin in the Bankruptcy Proceeding, for which the Committee, including the Abuse Claimants and Mr. Trahant, had prepared extensively (Ex. T Trahant Decl. ¶ 9). Later the same day, the U.S. Trustee formally removed the Abuse Claimants from the Committee pursuant to the Order (Ex. N Bankr. Doc. 1575). The Abuse Claimants and their counsel, including Mr. Trahant, therefore were excluded from participation in mediation or in the formulation of a plan as members of the Committee, and they no longer have access to confidential documents and information produced in discovery in the Bankruptcy Proceeding (Ex. T Trahant Decl. ¶ 9).

In the June 7, 2022 Order, the Bankruptcy Court cited and relied upon a Trustee Report and accompanying documents created as part of an investigation ordered by the Bankruptcy Court, summarized as follows:

> The Court has reviewed the UST Report and the attachments thereto, which include 78 sworn declarations; 18 transcripts of sworn examinations provided under Rule 2004 of the Federal Rules of Bankruptcy Procedure; one transcript and one summary of two unsworn telephonic interviews; and numerous documents produced to the

---

[2](...continued)
(a) ...(4) On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders....

11 U.S.C. § 1102(a)(4).

UST pursuant to Rule 2004, including relevant telephone and text message logs, electronic transaction reports, and e-mail and letter correspondence.

(Ex. A Bankr. Doc. 1574 pp. 2-3; Ex. K Order Bankr. Doc. 1468; Ex. M Bankr. Doc. 1572 (SEALED)). However, the U.S. Trustee filed the Trustee Report and attachments under seal, and as the Bankruptcy Court observed in the Order, "The UST Report remains under seal at this time" (Ex. A Bankr. Doc. 1574 p. 2). As a result, Mr. Trahant does not know the factual or legal basis of the Bankruptcy Court's Order holding him in contempt, disqualifying him from participating in proceedings of the Committee, and ordering the U.S. Trustee to remove the Abuse Claimants from the Committee (Ex. T. Trahant Decl. ¶ 10).

In contrast to the secrecy of the factual and legal basis of the Bankruptcy Court's June 7, 2022 Order, and the sealing of the Trustee Report and accompanying documents that the Bankruptcy Court reportedly relied on in the Order, the Debtor very publicly disseminated copies of the Order by First Class U.S. Mail to 16,387 recipients on June 16, 2022, including 11,655 recipients whose names and addresses are "INTENTIONALLY OMITTED" from the 586-page mailing matrix (Ex. R Bankr. Doc. 1623; Ex. T Trahant Decl. ¶ 11). Likewise, the news media reported on the issuance of the Order, but the reports are hamstrung by the secrecy of the Order's factual and legal basis and by the sealing of the record (Ex. T Trahant Decl. ¶ 11). Many people have since contacted Mr. Trahant and his family and friends with questions and concerns about the unfounded allegations against him in the Order, and the Order has caused some of his clients and other lawyers to question his good name, reputation, honor, and integrity (Ex. T Trahant Decl. ¶ 11). And at least one Court has already cited the Order in a disparaging manner (U.S.D.C., E.D. La., No. 21-215, Sect. "E"(1), Doc. 69 p. 10) ("One of the attorneys representing Doe in this case has, according to an investigation

ordered by the bankruptcy judge, improperly disclosed to the press certain information produced by the Archdiocese as confidential pursuant to the protective order in place in the bankruptcy proceeding. There is, thus, a real risk that sensitive information could be used in a manner that harasses the defendants") (Ex. T Trahant Decl. ¶ 11).

Prior to the issuance of the Bankruptcy Court's June 7, 2022 Order, Mr. Trahant received no notice of any alleged charge against him; no notice of any scheduled public trial or hearing on any alleged charge against him; no opportunity to prepare a defense against any alleged charge against him; no opportunity to testify, call other witnesses to testify, or submit documentary evidence in opposition to any alleged charge against him; and no opportunity to confront or examine any witness, or review any document, that the Bankruptcy Court relied on to hold him in contempt, disqualify him from participation in Committee proceedings, and order the U.S. Trustee to remove the Abuse Claimants from the Committee (Ex. T Trahant Decl. ¶ 12). Although the Order mentions the "Debtor's Motion for Entry of an Order: (A) Compelling the Tort Committee and/or Its Counsel to Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanctions for Violation of Protective Order" filed by the Debtor under seal on January 20, 2022 and provided to him around that time, Mr. Trahant was not named in the motion, and the Debtor withdrew the motion on April 26, 2022 in any event  (Ex. A Bankr. Doc. 1574 p. 2; Ex. J Bankr. Doc. 1256; Ex. L Bankr. Doc. 1473; Ex. T Trahant Decl. ¶ 12).

On June 10, 2022, the Abuse Claimants and Mr. Trahant filed notices of appeals of the June 7, 2022 Order to this Court (Ex. P Bankr. Doc. 1580; Ex. Q Bankr. Doc. 1582), which docketed the appeals as Case Nos. 22-1738 and 22-1740, respectively, on June 13, 2022. Despite the pending appeal, the Bankruptcy Court issued an Order to Show Cause dated June 13, 2022 setting a sanctions

hearing against Mr. Trahant on July 25, 2022, and setting prior deadlines for the Debtor and Committee's submissions of "invoices identifying attorney and paralegal time spent on services related to the Debtor's Motion for Entry of an Order: (A) Compelling the Tort Committee and/or Its Counsel to Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanctions for Violation of Protective Order," and for Mr. Trahant to file a written response "regarding impositions of sanctions against him" (Ex. B Bankr. Doc. 1589).

Also on June 13, 2022, the Bankruptcy Court held a status conference in which the Court discussed the removal of Mr. Trahant, his co-counsel, and the Abuse Claimants from the Committee, stating, "It makes me nervous, but we have to, you know, there are a few bad, bad actors, but, on the whole, the committee members have signed the protective order" (Ex. P Bankr. Doc. 1602 p. 12). The Court and counsel also discussed limitations on service of the June 7, 2022 Order without any mention that it would be served on more than 16,000 recipients (Ex. P Bankr. Doc. 1602 pp. 13-18).

On June 21, 2022, Mr. Trahant filed an "Expedited Motion to Stay Sanction Hearing and Associated Deadlines Pending Appeal of Contempt Order" in the Bankruptcy Proceeding (Ex. C Bankr. Doc. 1615). The Debtor opposed the motion (Ex. D Bankr. Doc. 1638), and following a hearing on the motion on July 1, 2022, the Bankruptcy Court denied the motion for oral reasons given in open court as fully set forth in the attached transcript of the hearing (Ex. E Bankr. Doc. 1642), and in pertinent part as follows:

> In this case, the Court's order of June 7, 2022 is not a final order because no assessment of sanctions has occurred. In fact, the order specifically states that the Court will issue a separate order to show cause to determine appropriate sanction for Trahant's disclosure of confidential information in violation of this Court's protective order. Like the order examined by the Fifth Circuit in In re United States Abatement Corporation [39 F.3d 563, 567 (5th Cir. 1989)], , "This language clearly contemplates

an assessment of damages in the future, and without an assessment of damages, the contempt order is merely interlocutory."...

28 U.S.C. 158(a)(3) governs the appeal of interlocutory orders here and Bankruptcy Rule 8004 provides the mechanics of such an appeal. No motion for leave to seek an interlocutory appeal has been filed by the movant in this Court or in the district court and "as there is no right to appeal an interlocutory order, unauthorized appeals from interlocutory orders are simply premature and of no effect." [*Id.* at 568.] ...

Accordingly, a stay of this Court's June 7, 2022 order is inappropriate here and the movant's request to do so is denied. But even if the Court's order of June 7, 2022 were a final order, a stay pending appeal under Federal Rule of Bankruptcy Procedure 8007 is an extraordinary remedy and not a matter of right....

To be entitled to a stay pending appeal, a party must establish four elements:

"(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

Nken v. Holder, 556 U.S. 418 at 26, from 2009.

. . .

Other than referencing Rules 8007(a) and (e), the movant's motion makes no mention of the four-factor test and the inquiry that must be made by this Court in ruling on a motion for stay or suspension of proceedings. Upon reading the motion generously, the movant makes an attempt to demonstrate a strong showing that he is likely to succeed on the merits, but the movant simply argues the result. If successful on appeal, the Court's order of June 7, 2022 would be moot, but that is true for any successful appeal. The movant here sets forth no fact, law, or argument sufficient to meets its burden on the first factor and makes no argument whatsoever regarding the other three factors.

Movant further misstates the law in arguing that the pending and here, premature appeal, deprives this Court of jurisdiction to continue with the hearing set pursuant to this Court's order to show cause issued on June 13, 2022. "The most important aspect of a bankruptcy appeal is what issues the appeal leaves behind for the lower courts to resolve." [In re M&C Partnership, LLC, 2021 WL 1679058, p. 2

(Bankr. E.D. La. 2021) (quoting In re Ahmed, 420 B.R. 518, 523 (C.D. Cal. 2009).]
...

> In addition to its remaining jurisdiction on matters unrelated to the appeal, a bankruptcy court retains substantial jurisdiction as to the order that is the subject of the interlocutory appeal. The appeal only deprives the bankruptcy court of the power to alter, expand, or vacate the order at issue. The lower court retains jurisdiction over all other matters that it must undertake to implement or to enforce the judgment or order that is on appeal.

> Therefore, for those reasons the Court finds that the movant has failed to meet his burden for justifying a stay or suspension of proceedings pending appeal and the motion is denied.

(Ex. E Bankr. Doc. 1642 pp. 17-21).

The Bankruptcy Court continued and reset the sanctions hearing from July 25, 2022 to August 22, 2022 to accommodate a scheduling conflict, and extended the deadline for the Debtor and Committee to submit attorney and paralegal fee invoices from July 1, 2022 to August 1, 2022 based on the Debtor's suggestion that "there will be additional fees that will be incurred, I believe, by all the parties pursuing the appeals, pursuing whatever, whatever they want to report to your Honor ..." (Ex. E Bankr. Doc. 1642 pp. 22-23; Ex. F Bankr. Doc. 1644). "And that goes ... for the other Committees as well," the Bankruptcy Court added (Ex. E Bankr. Doc. 1642 p. 23). Meanwhile, pursuant to the June 13, 2022 Order to Show Cause, certain counsel for the Committee submitted fee invoices totaling $57,001 through May 31, 2022 (Ex. S Bankr. Doc. 1627).

## II. Law and Argument

A.  **A stay of the sanctions hearing is warranted and necessary because the appeal divests the Bankruptcy Court of jurisdiction to award additional sanctions pursuant to the Order appealed.**

"[T]he Bankruptcy Code requires finality for appeals from bankruptcy court decisions to the district court, unless the district court grants leave to pursue an interlocutory appeal," under 28

U.S.C. § 158(a).[3] *Matter of U.S. Abatement Corp.*, 39 F.3d 563, 566 (5th Cir. 1994) (citations omitted). Likewise, "While it is generally true that a timely filing of a notice of appeal will divest a court of jurisdiction, this rule presupposes that there is a final judgment from which to appeal." *Id.* at p. 568. In that event, "The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). "[A]n issue in the district court is only an 'aspect[ ] of the case involved in the appeal' if the appeal and the claims before the district court address the same legal question." *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 909 (5th Cir. 2011).

In this case, the June 7, 2022 Order is final and appealable, and the appeal raises the same legal question that would be before the Bankruptcy Court at the scheduled sanctions hearing – specifically, whether the Bankruptcy Court's denial of Mr. Trahant's right to procedural due process renders the June 7, 2022 Order, the finding of contempt, and any contempt sanctions, including the contemplated assessment of additional, monetary sanctions at the sanctions hearing, invalid. "The key is that both courts would be simultaneously trying to answer the same question: whether the judgment was valid." *Id.* The Bankruptcy Court therefore is divested of jurisdiction to adjudicate or

---

[3] 28 U.S.C. § 158 provides in pertinent part: "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; ... and (3) with leave of the court, from other interlocutory orders and decrees; of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." *See also* Fed. R. Bankr. P. 8004(d) ("Failure to File a Motion With a Notice of Appeal. If an appellant timely files a notice of appeal under this rule but does not include a motion for leave, the district court or BAP may order the appellant to file a motion for leave, or treat the notice of appeal as a motion for leave and either grant or deny it").

award additional sanctions pending the appeal, and a stay of the sanctions hearing is warranted and necessary.

"It is well-settled that a civil contempt order is not 'final' for purposes of appeal unless two actions occur: (1) a finding of contempt is issued, and (2) an appropriate sanction is imposed." *U.S. Abatement*, 39 F.3d at 567 (citations omitted). Here, the Bankruptcy Court's June 7, 2022 Order holds Mr. Trahant in contempt and immediately imposes at least two separate sanctions against him: it disqualifies him from participating in Committee proceedings, and it orders the U.S. Trustee to remove his clients, the Abuse Claimants, from the Committee (Ex. A Bankr. Doc. 1574). Under the standard governing finality of civil contempt orders, *id*., these portions of the June 7, 2022 Order are final and appealable.

The June 7, 2022 Order also imposes a third, unquantified sanction against Mr. Trahant: it provides for the issuance of "a separate Order to Show Cause to determine appropriate sanctions ...," which the Order to Show Cause dated June 13, 2022 confirms would be a sanctions hearing to assess additional, monetary sanctions against him (Ex. A Bankr. Doc. 1574; Ex. B Bankr. Doc. 1589). This case thus presents a situation similar to that presented in *Thornton v. General Motors Corp.*, 136 F.3d 450 (5th Cir. 1998).

In *Thornton*, the Court applied "pendant appellate jurisdiction" to hold that a contempt order imposing two separate sanctions on an attorney -- "one sanction suspending him from practice before the Western District effective immediately and the other a monetary sanction of unquantified attorney's fees" -- was final and appealable. *Id.* at 453-54. "Normally, an unquantified award of attorney's fees does not constitute a final appealable order ...," the Court observed. "However, the

portion of the district court's order suspending the appellant is final and appealable." *Id.* at 453

(citation omitted). The Court further reasoned:

> Considering the finality of at least one aspect of the district court's sanction order, both parties urge this court to exert pendant appellate jurisdiction over the normally unappealable attorney's fees liability order. Pendant appellate jurisdiction is only proper in rare and unique circumstances where a final appealable order is "inextricably intertwined" with an unappealable order or where review of the unappealable order is necessary to ensure meaningful review of the appealable order. In this case, the propriety of the district court's attorney's fees sanction is "inextricably intertwined" with the suspension sanction as to make pendant appellate jurisdiction appropriate over the attorney's fees sanction.

*Id.* at 453-54 (citations omitted). *See also Whole Woman's Health v. Jackson*, 13 F.4th 434, 447-48

(5th Cir. 2021) (finding State Defendants' appeal "divested the district court of jurisdiction over

Dickson as well as the State Defendants," and granting Dickson's motion for a stay of district court

proceedings against him pending State Defendants' appeal, where "the claims as to Dickson

implicate 'aspects of the case involved in the [State Defendants'] appeal,'" and "jurisdictional issues

in Dickson's appeal are 'inextricably intertwined' with the same issues in the State Defendants'

appeal, over which we indisputably have appellate jurisdiction").

Similarly in this case, the portions of the June 7, 2022 Order finding Mr. Trahant in

contempt, disqualifying him from participating in Committee proceedings, and ordering the removal

of the Abuse Claimants from the Committee, are final and appealable. At the same time, the validity

of the Bankruptcy Court's unquantified monetary sanction is inextricably intertwined with the

validity of the Court's contempt finding and disqualification and removal sanctions as to make

pendant appellate jurisdiction appropriate over the contemplated monetary sanction.

So whether because Mr. Trahant's appeal of the portions of the June 7, 2022 Order that are

final and appealable raises the same legal question (*i.e.*, whether the denial of Mr. Trahant's right

to procedural due process renders the entire June 7, 2022 Order invalid) that would be before the Bankruptcy Court at the scheduled sanctions hearing, or because the validity of the unquantified monetary sanction is inextricably intertwined with the validity of the contempt finding and disqualification and removal sanctions, the appeal divests the Bankruptcy Court of jurisdiction over the scheduled sanctions hearing, and a stay of the sanctions hearing is warranted, appropriate, and necessary.

**B.      Additionally or in the alternative, this Court should exercise its judicial discretion to grant a stay of the sanctions hearing pending the appeal under the circumstances of this case.**

Even if the Bankruptcy Court were not divested of jurisdiction over the scheduled sanctions hearing, or the validity of the unquantified monetary sanction were not inextricably intertwined with the validity of the final and appealable portions of the June 7, 2022 Order, this Court nevertheless should exercise its judicial discretion to grant a stay of the sanctions hearing pending this appeal under the circumstances of this case.

In an appeal of a bankruptcy court order to a district court, "the district court's decision to grant or deny a stay pending appeal rests in the discretion of that court." *In re First South Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987). "However, the exercise of that discretion is not unbridled but rather, the court must exercise its discretion in light of what this court has recognized as the four criteria for a stay pending appeal." *Id.* (citation omitted). The Supreme Court has listed and described the four criteria for a stay pending appeal as follows:

> As noted earlier, those legal principles have been distilled into consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." There is

substantial overlap between these and the factors governing preliminary injunctions, not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined.

The first two factors of the traditional standard are the most critical. It is not enough that the chance of success on the merits be "better than negligible." ... By the same token, simply showing some "possibility of irreparable injury," fails to satisfy the second factor.

*Nken v. Holder*, 556 U.S. 418, 434-35, 129 S.Ct. 1749, 1761, 173 L.Ed.2d 550 (2009) (citations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34, 129 S.Ct. at 1761 (citation omitted).

All four criteria justify an exercise of discretion to stay the sanctions hearing pending the appeal under the circumstances of this case.

**1.      Mr. Trahant is extremely likely to succeed on the merits.**

Rule 9020 of the Federal Rules of Bankruptcy Procedure provides that "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest." Fed. R. Bankr. P. 9020. Rule 9014 provides in pertinent part that "relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a). But Rules 9014 and 9020 do not apply in this case because neither the U.S. Trustee nor any party in interest made a motion for an order of contempt against Mr. Trahant. Instead, the Bankruptcy Court acted *sua sponte* pursuant to 11 U.S.C. § 105(a), which provides in pertinent part: "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." But although § 105(a) authorizes the Bankruptcy Court to act *sua sponte* in

certain circumstances, it does not authorize the Bankruptcy Court to punish a person for contempt without due process of law in violation of the Fifth Amendment to the U.S. Constitution.[4]

"In general, due process requires 'that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses.'" *Waste Management of Wash., Inc. v. Kattler*, 776 F.3d 336, 339-40 (5th Cir. 2015) (citation omitted). "Adequate notice typically takes the form of a show-cause order and a notice of hearing identifying each litigant who might be held in contempt." *Id.* at 340 (footnote omitted). Absent adequate notice or any of the other requirements of due process, a "contempt finding cannot stand ...." *Id.*

In this case, contrary to the Bankruptcy Court's findings in its June 7, 2022 Order, Mr. Trahant did not provide any document or information governed by the Protective Order to any third party or to the media at any time, and he did not violate the Protective Order in any manner at any time (Ex. T Trahant Decl. ¶ 8). In addition, Mr. Trahant was not afforded any of the requirements of due process before being held in contempt in the June 7, 2022 Order. He was not served with a show-cause order, notice of hearing, or other form of notice identifying him as a person who might be held in contempt at any time (Ex. T Trahant Decl. ¶ 12). The "Motion for Entry of an Order ... Setting an Evidentiary Hearing on Sanctions for Violation of Protective Order" that the Debtor filed under seal on January 20, 2022 does not identify Mr. Trahant as an alleged contemnor, and was withdrawn on April 26, 2022 before any ruling (Ex. J Bankr. Doc. 1256; Ex. L Bankr. Doc. 1473;

---

[4] The Fifth Amendment provides in pertinent part: "No person shall be ... deprived of life, liberty, or property, without due process of law ...." U.S. Const. Amend. V. *See also* U.S. Const. Amend. XIV ("nor shall any State deprive any person of life, liberty, or property, without due process of law ...").

Ex. T Trahant Decl. ¶ 12). The Bankruptcy Court's Order dated April 25, 2022 ordering the U.S. Trustee to investigate alleged Protective Order violations did not identify Mr. Trahant as a target of the investigation (Ex. K Bankr. Doc. 1468). Mr. Trahant had no opportunity to review the sealed Trustee Report or its apparently voluminous sealed attachments that the Bankruptcy Court inventoried in the June 7, 2022 Order (Ex. A Bankr. Doc. 1574 pp. 2-3; Ex. T Trahant Decl. ¶ 10). Mr. Trahant received no notice of any public trial or hearing; no opportunity to prepare a defense; no opportunity to testify, call other witnesses to testify, or submit documentary evidence; and no opportunity to confront or examine any witness, or review any document, that the Bankruptcy Court relied on to hold him in contempt (Ex. T Trahant Decl. ¶ 12).

In these circumstances, the June 7, 2022 Order finding him in contempt without due process of law "cannot stand," *id.*, and Mr. Trahant is extremely likely to succeed on the merits of his appeal as a result.

## 2. The sanctions hearing based on the invalid June 7, 2022 Order will cause irreparable injury to Mr. Trahant if the stay is not granted.

The sole alleged grounds for the contemplated monetary sanctions against Mr. Trahant pursuant to the June 13, 2022 Order to Show Cause that is currently set for hearing on August 22, 2022 are those set forth in the June 7, 2022 Order holding Mr. Trahant in contempt without due process of law (Ex. A Bankr. Doc. 1574; Ex. B Bankr. Doc. 1589). The denial of procedural due process that fatally infects the June 7, 2022 Order thus infects the June 13, 2022 Order to Show Cause and the scheduled sanctions hearing. Therefore, absent a valid basis for an award of sanctions for alleged contempt, the sanctions hearing will further deprive Mr. Trahant of protected property

and liberty interests without due process of law, and will cause irreparable injury to Mr. Trahant if a stay is not granted.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972) (footnote omitted). Among the liberty interests protected is "a person's good name, reputation, honor, or integrity ...." *Id.* at 573, 92 S.Ct. at 2707 (citations omitted). *See Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 510, 27 L. Ed. 2d 515 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential").

Here, the sanctions hearing contemplates an award of monetary sanctions against Mr. Trahant based solely on the invalid June 7, 2022 Order and would cause irreparable injury to Mr. Trahant by depriving him of a protected property interest in the form of monetary sanctions without due process of law. The sanctions hearing also would cause irreparable injury to Mr. Trahant by depriving him of a protected liberty interest without due process of law. The public dissemination of the June 7, 2022 Order to tens of thousands of recipients and in media reports, without public access to any of the sealed declarations, transcripts, or documents establishing the factual and legal basis for the alleged contempt, has caused many people to contact Mr. Trahant and his family and friends with questions and concerns about the unfounded allegations against him in the Order, and has caused some of Mr. Trahant's clients and other lawyers to question his good name, reputation, honor, and integrity (Ex. T Trahant Decl. ¶ 11). The sanctions hearing similarly would cause further irreparable

injury to Mr. Trahant's good name, reputation, honor, and integrity based solely on the invalid June 7, 2022 Order and hence, again, without due process of law.

Mr. Trahant also has significant concerns that the Bankruptcy Court is intent on going forward with the sanctions hearing out of some animus against him, his co-counsel, and his clients. During the status conference on June 13, 2022, in reference to the removal of Mr. Trahant, his co-counsel, and their clients, the Bankruptcy Court stated, "It makes me nervous, but we have to, you know, there are a few, **a few bad, bad actors**, but, on the whole, the committee members have signed the protective order"(Ex O Bankr. Doc. 1602 p. 12 *ll.* 20-23) (emphasis added). Referring to a lawyer as a "bad, bad actor" does not reflect fairness to Mr. Trahant, his co-counsel, or their clients, especially in a bankruptcy proceeding arising out of liability for damages caused by men sexually abusing children.

Additionally, later in the day on June 13, 2022, the Bankruptcy Court entered the Order to Show Cause setting the sanctions hearing against Mr. Trahant in the record (Ex. B Bankr. Doc. 1589). Curiously, the Order included the exclamatory statement "Yes!" in the caption (Ex. B Bankr. Doc. 1589 v.1). The next day, without any explanation, the Bankruptcy Court replaced the June 13, 2022 Order to Show Cause to remove the exclamatory statement from the caption (Ex. B Bankr. Doc. 1589 v.2).This second version of the Order, although entered on June 14, 2022, bears the same docket number and date as version one of the June 13, 2022 Order (Ex. B Bankr. Doc. 1589 v.1 and v.2).

In *Bufford v. Rowan Companies, Inc.*, 994 F.2d 155 (5th Cir. 1993), the Court reversed and remanded a defense-favorable jury verdict based on the manner in which the District Judge treated counsel for the plaintiff. In doing so, Chief Judge Politz wrote, "The power and influence of the

bench is so pervasive that even a strong display of displeasure with counsel may create prejudice for the client's cause." *Id.* at p. 159. The *Bufford* Court went on to note, "The trial court, however, cut counsel off, announcing in front of the jury that it was shortening his allotted time to avoid 'the risk of any more intemperance.' In this the trial court erred for not affording plaintiffs' attorneys a meaningful opportunity to defend their professional reputations." *Id.*

Certainly, referring to Mr. Trahant as a "bad, bad actor" during a status conference, and exclaiming "Yes!" in an Order to Show Cause why additional sanctions should not be ordered against Mr. Trahant, amounts to significantly more than "a strong display of displeasure" with Mr. Trahant. Moreover, because Mr. Trahant was publicly excoriated by the bankruptcy court while the "evidence" remained under seal, he has had no meaningful opportunity to defend his professional reputation at any time, and it is too late to attempt to do so in a sanctions hearing based on a contempt finding rendered without due process of law.

As the sanctions hearing is fatally infected by the invalid June 7, 2022 Order and would further deprive Mr. Trahant of protected property and liberty interests without due process of law, it will cause irreparable injury to Mr. Trahant if the stay is not granted.

**3.    The granting of a stay of the sanctions hearing would not harm any party.**

The granting of a stay of the sanctions hearing would not harm any party to the Bankruptcy Proceeding, but only would suspend the complex, fact-intensive adjudication of additional sanctions against Mr. Trahant while the validity of the June 7, 2022 Order ordering the sanctions is finally determined in the appeal (*see*, *e.g.*, Ex. S Bankr. Doc. 1628). The stay would not apply to the sanctions that the Court previously ordered in the June 7, 2022 Order – the disqualification of Mr.

Trahant from participation in Committee proceedings, and the removal of the Abuse Claimants from the Committee – and would not impede the Bankruptcy Proceeding in any way. This factor therefore weighs in favor of granting a stay.

**4. The public interest lies in upholding Mr. Trahant's right to procedural due process.**

Proceedings in which a person is held in contempt without notice, without a hearing, without an opportunity to present a defense, and based on a sealed record and a secret factual and legal basis, are not in the public interest. As explained in *In re Oliver*, 333 U.S. 257, 269-71, 68 S.Ct. 499, 505-06 92 L.Ed. 682 (1948):

> Whatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.... 'Without publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account. Recordation, appeal, whatever other institutions might present themselves in the character of checks, would be found to operate rather as cloaks than checks; as cloaks in reality, as checks only in appearance.'

(Footnotes omitted).

The June 7, 2022 Order adjudged Mr. Trahant in contempt not only without due process of law, but also without any opportunity for "contemporaneous review in the forum of public opinion ...." *Id.* The public interest therefore lies in removing the cloak of secrecy surrounding the June 7, 2022 Order, not in perpetuating the denial of due process in a sanctions hearing based solely on the invalid Order. This factor therefore weighs in favor of granting a stay as well.

### III. Conclusion

For these reasons, Mr. Trahant respectfully prays that the Court issue an Order granting an emergency stay of the sanctions hearing against him currently set for August 22, 2022 in the Bankruptcy Proceeding, pending his appeal herein from the June 7, 2022 Order of the Bankruptcy Court finding him in contempt and sanctioning him without due process of law, pursuant to Fed. R. Bankr. P. 8007.

**RESPECTFULLY SUBMITTED,**

**RICHARD C. TRAHANT (# 22653)**
**ATTORNEY AT LAW**
**2908 Hessmer Avenue**
**Metairie, LA 70002**
**Telephone: (504) 780-9891**
**FAX: (504) 780-9891**
**Email: trahant@trahantlawoffice.com**

**- and -**

**PAUL M. STERBCOW (#17817)**
**Lewis, Kullman, Sterbcow & Abramson**
**601 Poydras Street, Suite 2615**
**New Orleans, Louisiana 70130**
**(504) 588-1500 Telephone**
**(504) 588-1514 Facsimile**
**sterbcow@lksalaw.com**

**- and -**

*/s/ Jack E. Morris*
_____
**JACK E. MORRIS (La. Bar No. 22539)**
**JACK E. MORRIS, ATTORNEY AT LAW, LLC**
**4051 Veterans Boulevard, Suite 208**
**Metairie, Louisiana 70002**
**(504) 454-2769**
**jem@jemorrislaw.com**