**CASE NO. 22-1740, SECT. "T"(3)**
**consolidated with CASE NO. 22-4101**

———————————

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

———————————

**IN RE ROMAN CATHOLIC CHURCH**
**OF THE ARCHDIOCESE OF NEW ORLEANS**

———————————

**CIVIL APPEAL FROM ORDERS**
**OF THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**
**CASE NO. 20-10846, SECT. "A"**
**HON. MEREDITH S. GRABILL, BANKRUPTCY JUDGE**

———————————

**CONSOLIDATED PRINCIPAL BRIEF**
**ON BEHALF OF APPELLANT RICHARD C. TRAHANT**

# UNDER SEAL

*FILED UNDER SEAL PURSUANT TO SEALING MOTION*
*AND PROPOSED ORDER FILED ON FEBRUARY 24, 2023*

**RESPECTFULLY SUBMITTED,**

**RICHARD C. TRAHANT (#22653)**
**ATTORNEY AT LAW**
**2908 Hessmer Avenue**
**Metairie, Louisiana 70002**
**(504) 780-9891**
**trahant@trahantlawoffice.com**

**- and -**

**PAUL M. STERBCOW (#17817)**
**Lewis, Kullman, Sterbcow &**
      **Abramson**
**601 Poydras Street, Suite 2615**
**New Orleans, Louisiana 70130**
**(504) 588-1500**
**sterbcow@lksalaw.com**

**- and -**

**JACK E. MORRIS (Bar No. 22539)**
**JACK E. MORRIS, ATTORNEY**
      **AT LAW, LLC**
**4051 Veterans Boulevard, Suite 208**
**Metairie, Louisiana 70002**
**(504) 454-2769**
**jem@jemorrislaw.com**

*Attorneys for Appellant*
*Richard C. Trahant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW . . . . . . . . . . 13

    Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    The Bankruptcy Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    The Protective Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    The Archdiocese Motion for Evidentiary Hearing . . . . . . . . . . . . . . . . . . . 20

    The Sealed Proceedings and Attempts to Participate . . . . . . . . . . . . . . . . . 21

    The UST Investigation and Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    The June 7, 2022 Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    The October 11, 2022 Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    1.     The June 6, 2022 Order is invalid and erroneous . . . . . . . . . . . . . . 32

    2.     The October 11, 2022 Order is likewise invalid and erroneous . . . . 39

a.    The Bankruptcy Court lacked jurisdiction to re-adjudicate or otherwise address the issue of contempt. . . . . . . . . . . . . . . 39

b.    The August 22, 2022 "show cause" hearing is fraught with errors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

c.    The $400,000 sanction is fraught with errors . . . . . . . . . . . . . 52

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

APPENDIX (filed separately)

Volume 1 of 2: Public Record

Table of Contents

*Case No. 22-1740 (R1)*

1    Relevant Bankruptcy Court Docket Entries (R1 Doc. 33-2 pp. 1-18)

2    Notice of Appointment of Unsecured Creditors' Committee (R1 Doc. 33-2 p. 19)

3    Statement Pursuant to Rule 2019 filed July 28, 2020 (R1 Doc. 33-6 pp. 103-08)

4    Protective Order entered August 3, 2020 (R1 Doc. 33-2 pp. 23-43)

5    Notice of Appointment of Reconstituted Unsecured Creditors' Committee filed October 8, 2020 (R1 Doc. 33-2 pp. 44-45)

6        Amended Protective Order entered January 25, 2021 (R1 Doc. 33-2 pp. 51-94)

7        Supplemental and Amended Protective Order entered May 24, 2021 (R1 Doc. 33-2 pp. 110-14)

8        Second Supplemental and Amended Protective Order entered October 18, 2021 (R1 Doc. 33-2 pp. 127-31)

9        Order entered January 20, 2022 (R1 Doc. 33-2 p. 147-48)

10       Order entered February 4, 2022 (R1 Doc. 33-2 p. 150)

11       Order entered February 9, 2022 (R1 Doc. 33-2 p. 153-54)

12       Order entered February 14, 2022 (R1 Doc. 33-2 p. 223-24)

13       Order entered April 7, 2022 (R1 Doc. 33-2 p. 265-66)

14       Notice of the Official Committee of Unsecured Creditors' Submission Regarding Sealed Motion filed April 13, 2022 (R1 Doc. 33-2 p. 320-35)

15       Order entered April 25, 2022 (R1 Doc. 33-2 pp. 344-46)

16       Notice of Withdrawal of Debtor's Motion for Entry of an Order: (A) Compelling the Tort Committee And/or its Counsel To Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanctions for Violation of Protective Order filed April 26, 2022 (R1 Doc. 33-2 pp. 347-48)

17       Acting United States Trustee's Statement of Position Concerning Violations of the Protective Order filed June 3, 2022 (R1 Doc. 33-2 p. 543)

18       Order entered June 7, 2022 (R1 Doc. 33-2 pp. 544-48)

19      Notice of Appointment of Reconstituted Official Committee of Unsecured Creditors filed June 7, 2022 (R1 Doc. 33-2 p. 549)

20      Notice of Emergency Appeal on Behalf of Richard Trahant filed June 10, 2022 (R1 Doc. 33-2 pp. 569-71)

21      Order to Show Cause entered June 13, 2022 (R1 Doc. 33-2 pp. 586-88)

22      Record Designations and Statement of Issues filed June 21, 2022 (R1 Doc. 33-1 pp. 2-22)

23      Designation of Additional Items to Be Included in the Record on Appeal filed July 20, 2022 (R1 Doc. 33-5 pp. 1-5)

24      First Supplemental Record Designations by Appellant Richard C. Trahant filed August 3, 2022 (R1 Doc. 33-4 pp. 1-6)

        *Case No. 22-4101(R2)*

25      Relevant Bankruptcy Court Docket Entries (R2 Doc. 2-1 pp. 1-31)

26      Richard C. Trahant's Objections to Order to Show Cause and to Impositions of Additional Sanctions filed on August 8, 2022 (R2 Doc. 2-11 pp. 27-36)

27      Memorandum Opinion and Order entered October 11, 2022 (R2 Doc. 2-11 pp. 400-29)

28      Notice of Appeal on Behalf of Richard Trahant filed on October 21, 2022 (R2 Doc. 2-11 pp. 430-32)

29      Richard Trahant's Unopposed Expedited Motion for Approval of Appeal Bond and Request for Stay Pending Appeal filed on October 25, 2022 (R2 Doc. 2-11 p. 433-41)

30      Order entered November 2, 2022 (R2 Doc. 2-11 p. 460)

31      Record Designations and Statement of Issues filed on November 3, 2022 (R2 Doc. 2-12 pp. 1-41)

Volume 2 of 2: Sealed Record

Table of Contents

*Case No. 22-1470 (SR1)*

1       Debtor's Motion for Entry of an Order: (A) Compelling the Tort Committee and/or Its Counsel to Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanctions for Violation of Protective Order filed on January 20, 2022 (SR1 34 pp. 10-37)

2       Emails dated February 1-4, 2022 between Soren Gisleson and Mark Mintz (SR1 34 pp. 159-63)

3       Email dated February 9, 2022 from Soren Gisleson to Judge Grabill's Chambers (SR1 41 p. 1)

4       Committee Members of the Official Committee of Unsecured Creditors and Their State Court Counsel's Motion to Participate in Discovery filed February 22, 2022 (SR1 34 pp. 148-64)

*Case No. 22-4101(SR2)*

5       Transcript of Proceedings held on August 22, 2022 (SR2 2-16 pp. 390-507)

# TABLE OF AUTHORITIES

**_Statutes_**

U.S. Const. Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 27, 29, 33, 34

U.S. Const. Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

11 U.S.C. § 105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 28, 33

11 U.S.C. § 1102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 25, 28, 29

11 U.S.C. § 1103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11 U.S.C. § 1104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

18 U.S.C. § 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

28 U.S.C. § 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 1334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Bankr. P. 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed. R. Bankr. P. 8001 _et seq._ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Bankr. P. 8015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

Fed. R. Bankr. P. 9014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

Fed. R. Bankr. P. 9020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 57

Fed. R. Crim. P. 42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 57

Fed. R. Evid. 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

LR 83.4.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

LR 83.4.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## *Cases*

*AA Doe v. The Roman Catholic Church of the Archdiocese of New Orleans*, 2022 WL 16712878 (E.D. La. 2022) . . . . . . . . . . . . . . . . . . . . . . . 19

*Akin v. Q-L Investments, Inc.*, 959 F.2d 521 (5th Cir.1992) . . . . . . . . . . . . 56

*Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410 (5th Cir. 2021) . . . . . . . . 17

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Boazman v. Economics Laboratory, Inc.*, 537 F.2d 210 (5th Cir.1976) . . . 56

*Bode v. United States*, 919 F.2d 1044 (5th Cir. 1990). . . . . . . . . . . . . . . . 58

*Boland Marine & Mfg. v. Rihner*, 41 F.3d 997 (5th Cir.1995) . . . . . . . . . . 53

*Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n*, 710 F.2d 1165 (6th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bunner v. Dearborn Nat'l Life Ins. Co.*, 37 F.4th 267 (5th Cir. 2022) . . . . 50

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676 (5th Cir.1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86 (D.N.J. 1986) . . . . . . . . . 19

*Commercial Credit Corp. v. Reed*, 154 B.R. 471 (E.D. Tex. 1993) . . . . . . 42

*Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Daly-Murphy v. Winston*, 820 F2d 1470 (9th Cir. 1987) . . . . . . . . . . . . . 42

*Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125
(E.D. Tex. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999) . . . . . . . . . . . 15, 36, 53

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct.
400, 74 L.Ed.2d 225 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 40

*In re Auclair*, 961 F.2d 65 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . 50

*In re Bartlett*, 9 B.R. 14 (E.D.N.C. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 42

*In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 26 F.4th 285 (5th
Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*In re Davis*, 169 B.R. 285 (E.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . 42

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson &
Casey*, 194 B.R. 728 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*In re Mirzai*, 236 B.R. 8 (B.A.P. 9th Cir.1999) . . . . . . . . . . . . . . . . . . . . . 40

*In re Moore*, 739 F.3d 724 (5th Cir.2014). . . . . . . . . . . . . . . . . . . . . . . . . 55

*In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). . . . . . . 18, 35

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Joy v. North*, 692 F.2d 880 (2d Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . 19

*June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512 (5th Cir. 2022) . . . . . . . 15

*Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730 (9th Cir.1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Lamar Financial Corp. v. Adams*, 918 F.2d 564 (5th Cir.1990). . . . . . . . . 57

*Matter of Glenn*, 900 F.3d 187 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . 14

*Matter of Hipp, Inc.*, 895 F.2d 1503 (5th Cir.1990) . . . . . . . . . . . . . . . 57, 58

*McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731 (9th Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902 (5th Cir. 1995) . . . . . . . . . 36

*Metro North State Bank v. Barrick Group, Inc.*, 100 B.R. 152 (Bankr. D. Conn. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Natural Resources Defense Council, Inc. v. Southwest Marine, Inc.*, 242 F.3d 1163 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Pamlab, LLC v. Brookstone Pharm., L.L.C.*, 2010 WL 4363870 (E.D. La. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Pyrodyne Corp. v. Pyrotronics Corp.*, 847 F.2d 1398 (9th Cir.1988) . . . . 40

*Ravago Americas L.L.C. v. Vinmar Int'l Ltd.*, 832 Fed.Appx. 249 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*S.E.C. v. Van Waeyenberghe*, 990 F.2d 845 (5th Cir. 1993). . . . . . . . . . . . 18

*Test Masters Ed. Serv., Inc. v. Robin Singh Ed. Serv., Inc.*, 799 F.3d 437 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Thomas v. Capital Security Serv.*, 836 F.2d 866 (5th Cir.1988) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55, 56

-11-

*Thornton v. General Motors Corp.*, 136 F.3d 450 (5th Cir. 1998) . . . . . . . 15

*Topalian v. Ehrman*, 3 F3d. 931 (5th Cir. 1993) . . . . . . . . . . . . 53, 55, 56, 57

*Union Oil Co. of California v. Leavell*, 220 F.3d 562 (7th Cir. 2000) . . . . 19

*United States v. El Paso Co.*, 682 F.2d 530 (5th Cir.1982) . . . . . . . . . . . . 51

*United States v. Garrett*, 238 F.3d 293 (5th Cir. 2000). . . . . . . . . . . . . . . 54

*United States v. George*, 2020 WL 6392580 (E.D. La. 2020) . . . . . . . . . 54

*United States v. Holy Land Foundation*, 624 F.3d 685 (5th Cir. 2010) . . . 19

*United States v. Sealed Search Warrants*, 868 F.3d 385 (5th Cir. 2017)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Swenson*, 894 F.3d 677 (5th Cir.2018) . . . . . . . . . . . . . . 54

*Waste Mgt. of Wash., Inc. v. Kattler*, 776 F.3d 336 (5th Cir. 2015)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 35, 38

*Weingarten Realty Investors v. Miller*, 661 F.3d 904, Cir. 2011) . . . . . . . . 40

*Willy v. Coastal Corp.*, 855 F.2d 1160 (5th Cir.1988), *appeal after
remand*, 915 F.2d 965 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515
(1971)        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*WM High Yield Fund v. O'Hanlon*, 964 F.Supp.2d 368 (E.D. Pa. 2013)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107
S.Ct. 2124, 95 L.Ed.2d 740 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

## STATEMENT OF JURISDICTION

The Bankruptcy Court exercised jurisdiction over this Chapter 11 bankruptcy proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and LR 83.4.1, and this is a core proceeding pursuant to 28 U.S.C. § 157(b).

This Court has appellate jurisdiction of these appeals pursuant to 28 U.S.C. § 158(a), LR 83.4.2, and Fed. R. Bankr. p. 8001 *et seq.* because the Bankruptcy Court issued final orders finding contempt and imposing sanctions against appellant, a nonparty, on June 7, 2022 (R1 Doc. 33-2 p. 544-48) and October 11, 2022 (R2 Doc. 2-11 pp. 400-29), and appellant timely filed notices of appeal within 14 days thereafter on June 10, 2022 (R1 Doc. 33-2 pp. 569-71) and October 21, 2022( R2 Doc. 2-11 pp. 430-32).

## STATEMENT OF THE ISSUES
## AND STANDARD OF REVIEW

### Issues

The Due Process Clause of the Fifth Amendment to the U.S. Constitution requires that a person charged with contempt of court receive, at a minimum, notice of the alleged charges against them, a reasonable opportunity to meet the charges by way of defense or explanation, and the opportunity to testify and call witnesses.  In this case, the Bankruptcy Court held appellant in contempt and imposed sanctions

without affording him notice, a hearing, properly admitted evidence, or even access to pertinent portions of the record. Does the Bankruptcy Court's order finding appellant in contempt and imposing sanctions against him violate the Due Process Clause?

Moreover, because Mr. Trahant's initial appeal of the June 7, 2022 Order was pending in this Court on October 11, 2022, the Bankruptcy Court was divested of jurisdiction to re-adjudicate or otherwise address or change the status of the issue of contempt in the October 11, 2022 Order, rendering it a nullity.

Additionally and in the alternative, the Bankruptcy Court erred in awarding additional sanctions against Mr. Trahant in the October 11, 2022 Order because there is no clear and convincing evidence that Mr. Trahant violated any protective order, much less willfully or in bad faith.  The $400,000 sanction leveled against Mr. Trahant (and effectively against his wife and children) is grossly excessive and does not comport with the law in the United States Fifth Circuit Court of Appeals.

**Standard of Review**

In a bankruptcy appeal, the applicable standard of review by a district court is the same as when the court of appeals reviews a district court proceeding.  *Matter of Glenn*, 900 F.3d 187, 189 (5th Cir. 2018).  A district court thus reviews findings of contempt and impositions of sanctions for abuse of discretion.  *Waste Mgt. of Wash.,*

*Inc. v. Kattler*, 776 F.3d 336, 339 (5th Cir. 2015); *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022) (internal quotes and citation omitted). "Whether an alleged contemnor was afforded due process is a question of law we review de novo." *Waste Mgt.*, 776 F.3d at 339 (citations omitted). A finding of contempt without notice or a reasonable opportunity to be heard is an abuse of discretion. *See, e.g., id.* at 340-41; *Goldin*, 166 F.3d at 722-23; *Thornton v. General Motors Corp.*, 136 F.3d 450, 455 (5th Cir. 1998).

## STATEMENT OF THE CASE

### The Bankruptcy Proceeding

Appellant Richard C. Trahant is state court co-counsel of record for sexual abuse claimants James Adams, Theodore Jackson, Jackie Berthelot, and Eric Johnson (the "Abuse Claimants") appearing as creditors against the debtor in bankruptcy, The Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese"), in this Chapter 11 bankruptcy proceeding (the "Bankruptcy Proceeding") (R1 Doc. 33-2

p. 3; R1 Doc. 33-6 p. 103).[1]  In the Bankruptcy Proceeding, the U.S. Trustee (the "UST") appointed the Abuse Claimants to the Official Committee of Unsecured Creditors (the "Committee") "pursuant to 11 U.S.C. § 1102(a)(1) ... with the powers enumerated in 11 U.S.C. § 1103" in 2020 (R1 Doc. 33-2 pp. 19, 44).

**The Protective Order**

On August 3, 2020, the Bankruptcy Court entered a Protective Order governing the use and disclosure of discovery materials (R1 Doc. 33-2 p. 23).  The Court subsequently amended and supplemented the Protective Order on January 25, 2021, May 24, 2021, and October 18, 2021 (R1 Doc. 33-2 pp. 51, 110, 127).  The Protective Order as amended applies to the Archdiocese, the Committee, the Official Committee of Unsecured Commercial Creditors, certain "creditors or other constituents" of the Archdiocese, and "any other persons or entities who become bound by this Protective Order" by signing a confidentiality statement (R1 Doc. 33-2 pp. 51, 127).  The

---

[1] The record on appeal in these consolidated cases consists of Rec. Docs. 33-41 and 55 filed in the public record in Case No. 22-1470; Rec. Doc. 2 filed in the public record in Case No. 22-4101; Rec. Docs. 34-41 filed under seal in Case No. 22-1470; and Rec. Docs. 2-15, 2-16, and 2-17 filed under seal in Case No. 22-4101. Accordingly, as used herein, references to "R1 ___" and "R2 ___" refer to designated documents in the public portions of the records on appeal in Case Nos. 22-1470 and 22-4101, respectively (R1 Doc. 33, 55; R2 Docs. 2-1 through 2-14), and references to "SR1 ___" and "SR2 ___" refer to designated documents in the sealed portions of the records on appeal in Case Nos. 22-1470 and 22-4101, respectively (SR1 Docs. 34-41; SR2 Docs. 2-15, 2-16, 2-17).

-16-

Protective Order provides in pertinent part that "information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Protective Order ... shall not be governed by this Protective Order even in the event that it is produced during discovery in this matter" (R1 Doc. 33-2 p. 63).  The Protective Order further provides in pertinent part:

> A Receiving Party shall not be obligated to challenge the propriety of a confidentiality designation at the time of its receipt of Discovery Material, and a failure to do so shall not preclude or be deemed to preclude a subsequent challenge thereto. The failure of any Party to challenge the designation by a Producing Party of Discovery Material as "CONFIDENTIAL," or "CONFIDENTIAL - ATTORNEYS' EYES ONLY" shall not constitute a waiver of that Party's right to object to the designation at a later time, including at trial.

(R1 Doc. 33-2 pp. 57-58).[2]

---

[2] Based on the Protective Order, the Archdiocese designated as "Confidential" 99.08% of the documents produced (SR2 Doc. 2-16 p. 428).  This necessitated the indiscriminate filing of thousands of pages of documents under seal in the Bankruptcy Court (SR1 Docs. 34-41; SR2 Docs. 2-16, 2-16, 2-17), notwithstanding the Bankruptcy Court's duty to conduct a "case-by-case, document-by-document, line-by-line" examination of such documents to determine whether their mere designation as "Confidential" by the Archdiocese justified depriving the public of access to them. *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021) (internal quotes and citations omitted)(Emphasis added).

As further discussed herein, among the documents filed under seal pursuant to the Protective Order and the Bankruptcy Court's sealing orders are all of the documents on which the Bankruptcy Court relied in finding Mr. Trahant in contempt
(continued...)

The Bankruptcy Court failed to engage in any analysis before ordering thousands of pages of documents to be placed, or maintained on appeal, under seal.[3] *See United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017) ("the Fifth Circuit has consistently required the district court to explain its decisions to seal or unseal."); *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) ("We

---

[2](...continued)
in the June 7, 2022 Order appealed herein (R1 Doc. 33-2 pp. 544-48). The Bankruptcy Court even went so far as to deny Mr. Trahant, his co-counsel, and their clients, the Abuse Claimants, access to any of those sealed documents. Mr. Trahant thus had no access to or knowledge of the contents of any of the documents on which the Bankruptcy Court based its finding of contempt and imposition of sanctions against him in the June 7, 2022 Order with the exception of his own deposition for which he was denied a copy of the transcript.

As a result of the sealing of the record and the denial of Mr. Trahant's access to large portions of it in the Bankruptcy Proceeding, Mr. Trahant does not discuss herein the contents of any portion of the sealed record that he had no access to or knowledge of prior to the June 7, 2022 Order. Moreover, other than Mr. Trahant's testimony at the August 22, 2022 hearing in the Bankruptcy Court (SR2 Doc. 2-16 pp. 390-434), nothing contained in either the public records or the sealed records, whether known or unknown to Mr. Trahant, was offered, introduced, or admitted in evidence at any time, so Mr. Trahant expressly objects to the consideration of such documents or information in these consolidated appeals or otherwise.

[3] Courts of the United States should abhor secretive proceedings. *See In re Oliver*, 333 U.S. 257, 271, 68 S.Ct. 499, 506, 92 L.Ed. 682 (1948) ("'Without publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account. Recordation, appeal, whatever other institutions might present themselves in the character of checks, would be found to operate rather as cloaks than checks; as cloaks in reality, as checks only in appearance'") (quoting Jeremy Bentham, *Rationale of Judicial Evidence* 524).

-18-

find no evidence in the record that the district court balanced the competing interests prior to sealing the final order.  First, the district court made no mention of the presumption in favor of the public's access to judicial records.  Second, the district court did not articulate any reasons that would support sealing the final order."); *United States v. Holy Land Foundation*, 624 F.3d 685, 690 (5th Cir. 2010).[4]

---

[4] *See also Estate of Warner by Norton v. Wellpath*, 2021 WL 2042446, p. 4 (S.D. Ind. 2021) ("For example, a party could label a lunch menu 'CONFIDENTIAL.' Such a designation would not magically transform an innocuous document into one that warrants the protection of the court, however, and justify keeping it out of the public record. Simply designating information as confidential is insufficient to permit under-seal filing") (citing *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000) (noting that requests to seal proceedings that are based on confidentiality orders have been uniformly rejected, unless another good cause exists)).

Recently, in *AA Doe v. The Roman Catholic Church of the Archdiocese of New Orleans*, 2022 WL 16712878, p. 3 (E.D. La. 2022), Judge Susie Morgan wrote:

First, the Archdiocese's generic argument that the Carr Riggs report should be designated as confidential because it is "embarrassing" does not outweigh the "public's  interest in an open and honest judicial process." Courts have consistently held that a party's embarrassment or incrimination, absent something more, is not a basis for documents to be held confidential under Rule 26. The Court, exercising its discretion, finds good cause does not exist merely because the Report may bring, as a general matter, embarrassment to the Archdiocese. Citing *See, e.g., Pamlab, LLC* [*v. Brookstone Pharm., L.L.C.*, 2010 WL 4363870, at *3 (E.D. La. 2010)]; *Brown & Williamson Tobacco Corp. v. Federal Trade Commission*, 710 F.2d 1165, 1179-80 (6th Cir. 1983); *Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86, 90 (D.N.J. 1986); *Joy v. North*, 692 F.2d 880 (2d Cir. 1982).

Consequently, this Court should unseal the sealed records in their entirety (SR1 Docs. 34-41; SR2 Docs. 2-15, 2-16, 2-17).[5]

### The Archdiocese Motion for Evidentiary Hearing

On January 20, 2022, the Archdiocese filed a "Motion for Entry of an Order: (A) Compelling the Tort Committee and/or Its Counsel to Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanctions for Violation of Protective Order" under seal (R1 Doc. 33-2 p. 145; SR1 Doc. 34 p. 10). In the motion, the Archdiocese alleged that "At the same time the January 4 letter [from Committee counsel] was received by the Archdiocese, ███████ was contacted about the priest in question by someone as yet unidentified by the Debtor," and that "On January 18, 2022, an article appeared on Nola.com that provides details about the priest in question, the individual making the allegation, the allegation itself, and the resolution of the investigation that could only have been learned from the additional confidential information in documents produced by the Debtor to the Tort Committee subject to the Protective Order between January 11 and 13" (SR1 Doc. 34 pp. 16-17, 19). The Archdiocese prayed in pertinent part for "an Order: (A) Compelling the Tort Committee and/or Its Counsel to Answer Identified Questions, and (B) Setting an

---

[5] The sealed records in these consolidated appeals comprise a total of 5,884 pages (SR1 Docs. 34-41; SR2 Docs. 2-15, 2-16, 2-17).

Evidentiary Hearing on Sanctions for Violation of Protective Order" (SR1 Doc. 34 p. 19).

### The Sealed Proceedings and Attempts to Participate

The Bankruptcy Court held *in camera* status conferences on the Archdiocese's motion for an evidentiary hearing on January 27, 2022, February 11, 2022, March 11, 2022, and April 14, 2022 (R1 Doc. 33-2 pp. 147, 150, 223, 265; R1 Doc. 33-4 p. 5; R. 55 p. 1; SR1 Docs. 41-1, 41-2). The Bankruptcy Court prohibited Mr. Trahant and his co-counsel for the Abuse Claimants from attending all but the first of those status conferences, and although Brittany Wolf-Freedman, counsel for one of the Committee members, attended the first status conference on January 27, 2022, no transcript is available for that conference (R1 Doc. 33-2 pp. 147, 150, 223, 265; R1 Doc. 33-4 p. 5; R. 55 p. 1; SR1 Docs. 41-1, 41-2).[6]

During this time, Mr. Trahant made every attempt to participate in the proceedings, and to inform the Bankruptcy Court and Archdiocese of his limited

---

[6] Mr. Trahant was first granted access to the sealed transcripts of the Bankruptcy Court's sealed *in camera* status conferences held on February 11, 2022 and March 11, 2022 on October 7, 2022 (Rec. Doc. 50), and to the sealed transcript of the April 14, 2022 *in camera* status conference on October 11, 2022 (R2 Doc. 2-11 pp. 166, 254). Most importantly, Mr. Trahant had no access to the transcripts of the February 11, 2022, March 11, 2022, or April 14, 2022 *in camera* status conferences at the time of his testimony in the Bankruptcy Court on August 22, 2022 (SR2 Doc. 2-16 pp. 419-34).

communications with ████████ and ████████. Mr. Trahant, through his co-counsel, repeatedly requested meetings with counsel for the Archdiocese to discuss the alleged Protective Order violation (SR1 Doc. 34 pp. 159-64), who flatly refused, stating that they "do not believe that there is anything for us to discuss with you and your group at this time" (SR1 Doc. 34 p. 160). Mr. Trahant requested the opportunity to participate in the February 11, 2022 scheduled status conference with the Bankruptcy Court specifically to discuss "who communicated with any ████ ████ representative or proxy about Fr. ███" (SR1 Doc. 41 p. 1), to which the Court responded two hours later by ordering that "only counsel for the Parties and the United States Trustee may attend the in-person, in camera status conference ..." (R1 Doc. 33-2 p. 153). And Mr. Trahant and his co-counsel for the Committee members filed a "Motion to Participate in Discovery" on February 22, 2022 (SR1 Doc. 34 pp. 148-64) seeking "to participate in discovery activities (and any evidentiary hearing) related to Debtor's motion," on the grounds that they "have a right to defend themselves" and "would be prejudiced" otherwise (SR1 Doc. 34 p. 156), but the Bankruptcy Court never ruled on the merits of the motion (R1 Doc. 33-3 pp. 17, 71).

**The UST Investigation and Report**

On April 25, 2022, the Bankruptcy Court issued an Order directing the UST "to file under seal and hand-deliver to the Court a Statement of Position on or before

-22-

Friday, June 3, 2022 as to the allegations made by the Debtor in the Motion regarding the dissemination of highly confidential information governed by the Protective Order in this case made between December 2021 and January 2022 to third parties and the media" (R1 Doc. 33-2 pp. 344-46). The next day, the Archdiocese filed a "Notice of Withdrawal" of its motion for an evidentiary hearing, without explanation (R1 Doc. 33-2 p. 347).

Critically, within that Order, the Bankruptcy Court wrote, "Upon reviewing the United States Trustee's Statement of Position, the Court will schedule a further hearing to determine what action, if any, should be taken." (Emphasis added). This hearing never occurred before the June 7, 2022 Order, but the Bankruptcy Court and all involved knew that it should have. Failure to hold a hearing in this regard is fatal to the June 7, 2022 Order and consequently to the October 11, 2022 Order.

On June 3, 2022, the UST filed a "Statement of Position Concerning Violations of the Protective Order" (the "UST Report") and selected attachments under seal without service on Mr. Trahant, his co-counsel, or their clients the Abuse Claimants (R1 Doc. 33-2 p. 543). As will be discussed herein, this document was not entered into evidence and cannot be considered on appeal.[7]

---

[7] Even if the UST Report had been admitted into evidence, it would not have been competent evidence. As one District Court noted:

(continued...)

**The June 7, 2022 Order**

The next thing Mr. Trahant knew, the Bankruptcy Court, acting *sua sponte* without notice or a hearing, issued an "Order" dated June 7, 2022 (R1 Doc. 33-2 p. 544) finding that he allegedly "provided on multiple occasions confidential information he received to a third party and the media in direct violation of this Court's Protective Order," and that the alleged breach "disqualifies him from further receiving Protected Material in this case and participating in any confidential Committee proceedings, including meetings, deliberations, and mediation" (R1 Doc. 33-2 pp. 546-47).  The Bankruptcy Court further found that "the Court is forced to impute Trahant's actions to those of his clients on the Committee ...," and ordered the

───────────────────

[7](...continued)

> Here, the Examiner's Report in its entirety is not trustworthy. The Report reflects what Judge Becker referred to as an 'institutional bias' – it was prepared at the request an interested party, the U.S. Trustee, largely to determine whether there were bona fide reasons to pursue claims on behalf of the estate for the benefit of the creditors.  Pertinent here, it was prepared in contemplation of litigation against DVI's directors – namely, Cohn.  Importantly, the Report is not the product of fair adversarial discovery with appropriate safeguards for defendants in this action.  Moreover, the Report and its contents are based on interviews and materials supplied by many persons with competing interests in the outcome of the bankruptcy case.  It was issued and docketed without a hearing on its contents.

*WM High Yield Fund v. O'Hanlon*, 964 F.Supp.2d 368, 397 (E.D. Pa. 2013) (Emphasis added).

UST to "immediately relieve [the Abuse Claimants] from service on the Committee ..." (R1 Doc. 33-2 pp. 547-48). "The Court will issue a separate Order To Show Cause," the Court announced, "to determine appropriate sanctions for Trahant's disclosure of confidential information in violation of this Court's Protective Order" (R1 Doc. 33-2 p. 548).[8] The Bankruptcy Court cited 11 U.S.C. §§ 105(a) and 1102(a)(4) as authority for the Order (R1 Doc. 33-2 p. 548).[9]

In the June 7, 2022 Order, the Bankruptcy Court identified and relied upon the UST Report and accompanying documents, summarized as follows:

> The Court has reviewed the UST Report and the attachments thereto, which include 78 sworn declarations; 18 transcripts of sworn examinations provided under Rule 2004 of the Federal Rules of Bankruptcy Procedure; one transcript and one summary of two unsworn telephonic interviews; and numerous documents produced to the UST pursuant to Rule 2004, including relevant telephone and text message logs, electronic transaction reports, and e-mail and letter correspondence.

(R1 Doc. 33-2 pp. 545-46). However, the UST Report and attachments were filed under seal without service on Mr. Trahant, his co-counsel, or their clients the Abuse

---

[8] *Whether* Mr. Trahant was going to be sanctioned was never at issue. The Bankruptcy Court already made the decision that he would be.

[9] It should be noted that the appeal of the June 7, 2022 Order and this Court's dismissal of a companion appeal by Mr. Trahant's clients is currently pending before the U.S. Fifth Circuit Court of Appeals in "James Adams, et al v. The Roman Catholic church of the Archdiocese of New Orleans," 5th Cir. No. 22-30539.

Claimants, and as the Bankruptcy Court observed in the Order, "The UST Report remains under seal at this time" (R1 Doc. 33-2 pp. 543, 545). As a result, neither Mr. Trahant, his co-counsel, the Abuse Claimants, nor the public had access to the factual or legal bases of the Bankruptcy Court's Order holding Mr. Trahant in contempt, disqualifying him from participating in proceedings of the Committee, imputing his alleged conduct to the Abuse Claimants, and ordering the UST to remove the Abuse Claimants from the Committee (R1 Doc. 33-2 pp. 543-48).[10]

In contrast to the secrecy of the factual and legal basis of the Bankruptcy Court's June 7, 2022 Order, and the sealing of the UST Report and accompanying documents that the Bankruptcy Court reportedly relied on in the Order, the Archdiocese very publicly disseminated copies of the Order by First Class U.S. Mail to 16,387 recipients on June 16, 2022, including 11,655 recipients whose names and addresses are "INTENTIONALLY OMITTED" from the 586-page mailing matrix (R2 Doc. 2-8 pp. 144, 152-300; R2 Doc. 2-9 pp. 1-437).

**The October 11, 2022 Order**

On June 13, 2023, the Bankruptcy Court issued an Order to "show cause" setting a sanctions hearing against Mr. Trahant (R1 Doc. 33-2 pp. 586-88). As of that

---

[10] Mr. Trahant and his counsel were denied access to the UST Report and attachments until June 13, 2022 at the earliest (R1 Doc. 33-2 p. 588).

date, Mr. Trahant had already appealed the June 7, 2022 Order to this Court on June

10, 2022, so the Bankruptcy Court was divested of jurisdiction over the issue of Mr.

Trahant's alleged contempt that was previously adjudicated in the June 7, 2022 Order

(R1 Doc. 33-2 pp. 569-71). The June 13, 2023 Order therefore ordered Mr. Trahant

to appear and show cause "as to why he should not be sanctioned" for his alleged

"willful violation of this Court's Protective Order" (R1 Doc. 33-2 p. 587).

On August 8, 2022, Mr. Trahant filed "Objections to Order to Show Cause and

to Impositions of Additional Sanctions" in the Bankruptcy Court (R2 Doc. 2-11 pp.

27-36), objecting in pertinent part as follows:

> 10.    The sole alleged grounds for impositions of additional
> sanctions against Mr. Trahant pursuant to the Order to Show Cause are
> those set forth in the June 7, 2022 Order holding him in contempt
> without due process of law (Bankr. Docs. 1574, 1589). Like the June 7,
> 2022 Order, the Order to Show Cause deprives Mr. Trahant of the right
> to due process of law by subjecting him to sanctions for alleged conduct
> that was adjudged to be contempt in the June 7, 2022 Order without
> notice, without a hearing, without an opportunity to present a defense,
> and based on a sealed record and secret factual and legal bases (Bankr.
> Docs. 1574, 1589). The denial of procedural due process that fatally
> infects the June 7, 2022 Order thus fatally infects the Order to Show
> Cause, and any imposition of additional sanctions will further deprive
> Mr. Trahant of protected property and liberty interests without due
> process of law in violation of the Fifth Amendment (Bankr. Docs. 1574,
> 1589).

(R2 Doc. 2-11 p. 34-35).

Over Mr. Trahant's objection, the Bankruptcy Court held the "show cause" hearing on August 22, 2022 (SR2 Doc. 2-16 pp. 390-507). At that hearing, neither the U.S. Trustee nor the Archdiocese introduced any evidence into the record. The only competent record evidence adduced at the August 22, 2022 "show cause" hearing was the testimony of Mr. Trahant (SR2 Doc. 2-16 pp. 419-34).

On October 11, 2022, the Bankruptcy Court rendered a 30-page Order (R2 Doc. 2-11 pp. 400-29) concluding in pertinent part:

> IT IS ORDERED that monetary sanctions are assessed against Richard C. Trahant in the amount of $400,000.00 and shall be payable to the Debtor within thirty days of this Order by mailing via commercial courier or hand-delivering certified funds to the Debtor's bankruptcy counsel, Jones Walker LLP, 201 St. Charles Avenue, Ste. 4900, New Orleans, Louisiana 70170.

(SR 2 Doc. 2-11 p. 428).

Mr. Trahant appealed from this Order to this Court on October 21, 2022 (R2 2-11 pp. 430-32).

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court cited and relied on 11 U.S.C. §§ 105(a) and 1102(a)(4) to act *sua sponte* in the June 7, 2022 Order finding Mr. Trahant in contempt, disqualifying him from participating in proceedings of the Committee, imputing his alleged conduct to the Abuse Claimants, and ordering the UST to remove his clients

from the Committee (R1 Doc. 33-2 pp. 544-48). However, Sections 105(a) and 1102(a)(4) did not authorize the Bankruptcy Court to punish Mr. Trahant for contempt without due process of law in violation of the Fifth Amendment.

Prior to the June 7, 2022 Order, Mr. Trahant was not served with any order to show cause, notice of hearing, or other form of notice identifying him as a person who might be held in contempt. He had no access to the contents of the sealed UST Report or its sealed attachments that the UST submitted to the Bankruptcy Court just days before the entry of the June 7, 2022 Order. He had no opportunity to prepare a defense against any alleged charge against him; no trial or hearing on any alleged charge against him; no opportunity to testify, call other witnesses to testify, or submit documentary evidence in opposition to any alleged charge against him; and no opportunity to confront or examine any witness, review any document, or challenge the trustworthiness, reliability, admissibility, or sufficiency of any material that the Bankruptcy Court relied on. As a direct result of the denial of Mr. Trahant's right to due process, the Bankruptcy Court made clearly and plainly erroneous factual findings based entirely on a secret record and without admitting any competent evidence offered or introduced by any party at any time. Critically, there is no evidence in the record that Mr. Trahant violated the protective order, or that the UST,

-29-

the Bankruptcy Court, or the Archdiocese so much as questioned him about any particular section of the protective order.

The Bankruptcy Court should not have sealed any of the materials it has sealed relative to this issue. By doing so, it violated clear precedent from the United States Fifth Circuit Court of Appeals. This Court should not do the same.

The Bankruptcy Court thus failed to comply with any of the requirements of due process before finding Mr. Trahant in contempt and imposing sanctions in the June 7, 2022 Order, and this Court should reverse or vacate the June 7, 2022 Order accordingly. The October 11, 2022 Order could not retroactively fix these fatal flaws, and this Order and the draconian $400,000 sanction cannot stand as a result.

In both Orders, the Bankruptcy Court failed to identify the document(s) from which Mr. Trahant supposedly disclosed so-called "confidential" information, nor did the Bankruptcy Court make any finding that this unidentified document(s) was truly "confidential" in the first instance.

The issue of alleged violations of the protective order was decided in the June 7, 2022 Order, which Mr. Trahant already had appealed well before the August 22, 2022 "show cause" hearing, so the bankruptcy court had no jurisdiction to "address" or "change the status" of that same issue in the October 11, 2022 Order. Lack of jurisdiction is fatal to the October 11, 2022 Order.

-30-

The reversible errors committed by the Bankruptcy Court in assessing a $400,000 sanction against Mr. Trahant are many.  Mr. Trahant always has maintained steadfastly that he did not violate the protective order, so he makes these arguments solely in the alternative.   Importantly, the Bankruptcy Court did not make the necessary finding of "bad faith" against Mr. Trahant.  The Bankruptcy Court did not properly apply the factors necessary to hold Mr. Trahant in contempt, and it utterly failed to apply the law on "mitigating circumstances." Next, the Bankruptcy Court eschewed the factors for determining the amount of sanctions, most notably whether the expenses were reasonable, as opposed to self-imposed, and mitigatable.  The Bankruptcy Court also engaged in no analysis of whether the sanction it issued was the least severe sanction adequate to achieve its purpose.  Next, the Bankruptcy Court articulated no harm or prejudice to the Archdiocese which was caused by the alleged breach.  Next, in spite of the fact that no attorneys' fees or costs were introduced into evidence, or even authenticated by way of affidavit or declaration, the Bankruptcy Court wholly failed to explain where the 53% number came from -- clearly the Bankruptcy Court picked the number $400,000, and then backed its way into this astounding amount of money.  Finally, this sanction, which is unprecedented in this context, constitutes a criminal sanction, but Mr. Trahant was not afforded the procedural safeguards for the imposition of criminal sanctions.

## ARGUMENT

### 1.  The June 6, 2022 Order is invalid and erroneous.

Rule 9020 of the Federal Rules of Bankruptcy Procedure provides that "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest." Fed. R. Bankr. P. 9020. Rule 9014 provides in pertinent part that "relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a). But Rules 9014 and 9020 do not apply to the Bankruptcy Court's finding of contempt and impositions of sanctions in the June 7, 2022 Order because neither the Archdiocese, the UST, nor any party in interest made a motion for an order of contempt or sanctions against Mr. Trahant.

Similarly, 11 U.S.C. § 1104(a)(4) provides in pertinent part: "On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders." Again, however, no "party in interest" requested any change in the membership of the Committee, so § 1104(a)(4), standing alone, does not apply to the June 7, 2022 Order.

-32-

Instead, the Bankruptcy Court acted *sua sponte* pursuant to 11 U.S.C. § 105(a), which provides in pertinent part: "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process" (R1 Doc. 33-2 p. 548). Nevertheless, although § 105(a) authorizes the Bankruptcy Court to act *sua sponte* in certain circumstances, it does not authorize the Bankruptcy Court to punish a person for contempt or impose sanctions without "reasonable notice and opportunity for hearing" under Fed. R. Bankr. P. 9014(a), "notice and a hearing" under 11 U.S.C. § 1104(a)(4), or due process of law under the Fifth Amendment to the U.S. Constitution.[11]

---

[11] To the extent that both Orders punish Mr. Trahant for criminal contempt, Fed. R. Crim. P. 42(a) also would apply and provides in pertinent part:

Rule 42. Criminal Contempt

(a)  Disposition After Notice.  Any person who commits criminal contempt may be punished for that contempt after prosecution on notice.

(1)  Notice.  The court must give the person notice in open court, in an order to show cause, or in an arrest order.  The notice must:

(A)  state the time and place of the trial;
(B)  allow the defendant a reasonable time to prepare a defense; and

(continued...)

-33-

The Fifth Amendment provides in pertinent part:  "No person shall be ... deprived of life, liberty, or property, without due process of law ...."  U.S. Const. Amend. V.[12]  "In general, due process requires 'that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet

---

[11](...continued)

> (C)  state the essential facts constituting the charged criminal contempt and describe it as such.
>
> (2)  Appointing a Prosecutor.  The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney.  If the government declines the request, the court must appoint another attorney to prosecute the contempt.
>
> (3)  Trial and Disposition.  A person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides and must be released or detained as Rule 46 provides.  If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents.  Upon a finding or verdict of guilty, the court must impose the punishment....

*See Ravago Americas L.L.C. v. Vinmar Int'l Ltd.*, 832 Fed.Appx. 249, 256 (5th Cir. 2020) ("A variety of procedural safeguards must be in place before a district court may impose criminal sanctions. These range from sufficient notice that the proceedings are of a criminal nature to proof of guilt beyond a reasonable doubt, and the involvement of an independent prosecutor") (citations omitted).

[12] *See also* U.S. Const. Amend. XIV ("nor shall any State deprive any person of life, liberty, or property, without due process of law ...").

them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses.'" *Waste Mgt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 339-40 (5th Cir. 2015) (citation omitted).  "Adequate notice typically takes the form of a show-cause order and a notice of hearing identifying each litigant who might be held in contempt." *Id.* at 340 (footnote omitted).  Absent adequate notice or any of the other requirements of due process, a "contempt finding cannot stand ...." *Id.*[13]

In *Waste Management*, 776 F.3d at 338, the district court ordered the defendant, Kattler, to produce certain items, which Kattler failed to produce based in

---

[13] *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 2136, 115 L.Ed.2d 27 (1991) ("A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees") (citation omitted); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property," including liberty interests in "a person's good name, reputation, honor, or integrity ..."); *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential"); *In re Oliver*, 333 U.S. 257, 276, 68 S.Ct. 499, 509, 92 L.Ed. 682 (1948) ("The facts shown by this record put this case outside the narrow category of cases that can be punished as contempt without notice, hearing and counsel"); *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925) ("Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation") (citations omitted).

part on assertions of attorney-client privilege by his attorney, Moore.  The plaintiff

filed a motion for contempt, listing Kattler "as the sole potential contemnor whose

liability was to be addressed at the hearing," and the district court issued a notice

setting an evidentiary hearing on the motion as written.  *Id.* at 339.  "Following this

hearing, the district court found both Kattler and Moore in contempt ...."  *Id.*  On

appeal, Moore argued that "while he was aware he might be the subject of a future

contempt hearing, he was not provided with adequate notice that a contempt finding

could be entered against him after the show-cause hearing."  *Id.*  The court of appeals

vacated "the contempt order as it pertains to Moore," reasoning that the district

court's notice of an evidentiary hearing "did not signal to Moore that he could be

found in contempt because it identified Kattler alone as the party whose contempt

liability was to be adjudicated."  *Id.* 340-41.[14]

---

[14] *See also Test Masters Ed. Serv., Inc. v. Robin Singh Ed. Serv., Inc.*, 799 F.3d
437, 451, 456 (5th Cir. 2015) (vacating contempt order against attorney for alleged
contemnor where order to show cause gave him "no notice that he may potentially be
held in contempt"); *Goldin v. Bartholow*, 166 F.3d 710, 722-23 (5th Cir. 1999)
(reversing district court order imposing sanctions where there was "nothing in the
record which would give any notice to Goldin that he might be held personally liable
as a sanction for his conduct") (emphasis in original); *McGuire v. Sigma Coatings,
Inc.*, 48 F.3d 902, 903, 907 (5th Cir. 1995) (vacating district court order imposing
sanctions on in-house counsel for defendant where the district court "had not issued
a show cause or similar order or process that would have put [the attorney] on notice
that sanctions were being considered against him personally").

Similarly in this case, Mr. Trahant was not afforded any of the requirements of due process before being held in contempt in the June 7, 2022 Order.  He was not served with a show-cause order, notice of hearing, or other form of notice identifying him as a person who might be held in contempt at any time.  The "Motion for Entry of an Order ... Setting an Evidentiary Hearing on Sanctions for Violation of Protective Order" that the Archdiocese filed under seal on January 20, 2022 did not identify Mr. Trahant as an alleged contemnor, and was withdrawn on April 26, 2022 before any ruling on it (R1 Doc. 33-2 pp. 347-48; SR1 Doc. 34 pp. 10-37).  The Bankruptcy Court's Order dated April 25, 2022 ordering the UST to investigate alleged Protective Order violations did not identify Mr. Trahant as a target of the investigation (R1 Doc. 33-2 pp. 344-46).  Mr. Trahant had no access to the contents of the sealed UST Report or its voluminous sealed attachments that the UST submitted to the Bankruptcy Court just days before the entry of the June 7, 2022 Order (R1 Doc. 33-2 pp. 543, 546).  He had no opportunity to prepare a defense against any alleged charge against him; no trial or hearing on any alleged charge against him; no opportunity to testify, call other witnesses to testify, or submit documentary evidence in opposition to any alleged charge against him; and no opportunity to confront or examine any witness, review any document, or challenge the trustworthiness, reliability,

admissibility, or sufficiency of any material that the Bankruptcy Court relied on to hold him in contempt.

As a direct result of the denial of Mr. Trahant's right to due process in the Bankruptcy Proceeding, Mr. Trahant suffered a cascade of prejudicial consequences. The Bankruptcy Court erroneously found -- without admitting any competent, accessible evidence offered or introduced by any party at any time -- that Mr. Trahant allegedly "provided on multiple occasions confidential information he received to a third party and the media in direct violation of this Court's Protective Order," and that his alleged "disclosures and violation of the Protective Order was knowing and willful" (R1 Doc. 33-2 p. 546). In addition, the denial of a public trial or hearing, and the complete secrecy of the UST Report and its attachments, have hamstrung Mr. Trahant's ability to mitigate the damage to his reputation caused by the Bankruptcy Court's vague and erroneous -- but very public -- findings incriminating him in the June 7, 2022 Order, which the Archdiocese immediately disseminated to 16,387 recipients (R2 Doc. 2-8 pp. 144, 152-300; R2 Doc. 2-9 pp. 1-437).

In sum, the denial of a hearing, properly admitted evidence, notice of the false charges against him, and access to the factual and legal basis for such charges deprived Mr. Trahant of any opportunity whatsoever "to meet them by way of defense or explanation," *Waste Management*, 776 F.3d at 339, directly resulting in the clearly

and plainly erroneous findings of the Bankruptcy Court and unmitigated damage to Mr. Trahant's reputation.  In these circumstances, the Bankruptcy Court's June 7, 2022 Order deprived Mr. Trahant of the right to due process of law, and as a matter of law, it "cannot stand" for this reason alone.  *Id.* at 339-40.  And because the June 7, 2022 Order falls, so does the October 11, 2022 Order.

**2.      The October 11, 2022 Order is likewise invalid and erroneous.**

*a.      The Bankruptcy Court lacked jurisdiction to re-adjudicate or otherwise address the issue of contempt.*

Jurisdiction is paramount. The issue of alleged violations of the protective order was decided without due process in the June 7, 2022 Order that Mr. Trahant appealed on June 10, 2022, so the bankruptcy court had no jurisdiction to "address" or otherwise "change the status" of that same issue in the October 11, 2022 Order (R1 Doc. 33-2 pp. 544-48, 569-71; R2 Doc. 2-11 pp. 400-29).

"The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). "[A]n issue in the district court is only an 'aspect[ ] of the case involved in the appeal' if the appeal and

the claims before the district court address the same legal question." *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 909 (5th Cir. 2011).

In *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734-35 (9th Cir.1982), the court held that, during the pendency of an appeal, a district court lacked jurisdiction to amend its judgment by adding additional directives because that would alter the status of the issues on appeal. *See also, Natural Resources Defense Council, Inc. v. Southwest Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir.2001) (relying on *Griggs* and *McClatchy* to hold district court did have jurisdiction to modify injunctions on appeal where the modifications did not change the status of the case on appeal); *Pyrodyne Corp. v. Pyrotronics Corp.*, 847 F.2d 1398, 1403 (9th Cir.1988) (holding district court lacked jurisdiction to rule on a motion for preliminary injunction filed during the pendency of the appeal because it was an attempt to re-adjudicate the issues on appeal); *In re Mirzai*, 236 B.R. 8, 9-10 (B.A.P. 9th Cir.1999) (holding bankruptcy court lacked jurisdiction to enter second judgment in a case on appeal because it changed the status of issues on appeal); *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 733 (9th Cir.1988).

There can be no doubt that the issue of contempt that the Bankruptcy Court adjudicated without due process in the June 7, 2022 Order is "an aspect of the case" involved in Mr. Trahant's appeal of that Order, and that therefore the Bankruptcy

Court lacked jurisdiction to address or otherwise"change the status" of that issue in the October 11, 2022 Order. *Id.*; *Weingaten*, 661 F.3d at 909. The invalidity of the June 7, 2022 Order therefore is fatal to the October 11, 2022 Order because without a valid finding of contempt, there can be no valid award of sanctions for contempt. On this basis alone, this Court should reverse or vacate the October 11, 2022 Order.

### b. *The August 22, 2022 "show cause" hearing is fraught with errors.*

The only competent record evidence that exists with respect to the October 11, 2022 Order is the testimony of Mr. Trahant contained at pages 30-45 of the transcript of the August 22, 2022 "show cause" hearing (SR2 Doc. 2-16 pp. 419-34).[15] Stunningly, the Archdiocese, the U.S. Trustee, The Official Committee of Unsecured Creditors, and The Official Committee of Unsecured Commercial Creditors offered no evidence, and all waived any cross-examination of Mr. Trahant (SR2 Doc. 2-16 p. 433). No party other than Mr. Trahant offered a scintilla of evidence into the record. Therefore, even if the June 7, 2022 Order were valid or the Bankruptcy Court somehow had jurisdiction to re-adjudicate or change the status of the finding of contempt in the October 11, 2022 Order, the only competent evidence that can be

---

[15] *See* Fed. R. Evid. 102 ("These rules should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination").

considered on appeal of the October 11, 2022 Order is the testimony of Mr. Trahant

at the August 22, 2022 "show cause" hearing (SR2 Doc. 2-16 pp. 419-34).[16]

In the October 11, 2022 Order, the Bankruptcy Court characterized Mr.

Trahant's testimony as follows:  "The Court heard equivocation, deflection, and

inconsistency in Trahant's answers. See Hr'g Tr. 31:10-16, 34:16-36:3" (R2 Doc. 2-

11 p. 421). But such finding is clearly erroneous where Mr. Trahant's testimony

established the opposite.

This is the testimony the Bankruptcy Court cited:

A     And the answer to the question, your Honor, is that I never hid
anything from anybody. In, in fact, your Honor, as the Court will recall,
my intention was to come in and speak to your Honor and we sent an
e-mail on February 9th talking about doing just that. That was, from my
perspective, the best way to have handled this so it didn't spin out of
control, which, unfortunately, it has.

---

[16] *See In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson &
Casey*, 194 B.R. 728, 733 (S.D.N.Y. 1995) (Affidavits not available to bankruptcy
court below are not appropriate for consideration on appeal of propriety of
bankruptcy court orders); In re Davis, 169 B.R. 285, 293 (E.D.N.Y. 1994) (On appeal
from an order of the bankruptcy court, the district court should not consider any
evidence not before the bankruptcy court at the original hearing); *Commercial Credit
Corp. v. Reed*, 154 B.R. 471, 474 (E.D. Tex. 1993) (A district court, acting as an
appellate court in a bankruptcy case, may only consider evidence which was
presented before the bankruptcy court and made part of the record) (Emphasis added);
*In re Bartlett*, 9 B.R. 14 (E.D.N.C. 1988) (same); *Metro North State Bank v. Barrick
Group, Inc.*, 100 B.R. 152, 154 (Bankr. D. Conn. 1989) (An item that was not
considered by the trial court in reaching its decision should be stricken from the
record on appeal); *Daly-Murphy v. Winston*, 820 F2d 1470, 1473 (9th Cir. 1987)
(same).

(SR2 Doc. 2-16 p. 479 *ll.* 10-16). During the hearing, the Bankruptcy Court said

nothing to challenge the veracity of this answer, nor is it in any way what was

described in the Order.  In short, Mr. Trahant, through his co-counsel, sent an e-mail

to the Bankruptcy Court and filed a motion to participate, but was rebuffed in both

attempts, and this is undisputed.

And then, the second exchange the Bankruptcy Court cited is this one:

Q        ... So once Committee counsel had met with the debtor, had read
the debtor's motion, came in for a status conference and was instructed
and volunteered to go back and say, you know, they said, "Let, we'll
take care of this. We'll find out what happened," why didn't you just
raise your hand and say, "Yeah, I called my cousin" --

A        Oh.

Q        – "and I, I texted Mr.███████ "?

A        After the fact, I did tell them that, Judge. I absolutely did.

Q        When? Because they, they racked up a lot of attorney time.
There's a lot of hours investigating this breach.

A        I, I understand that, your Honor. And, and also, I think the, the
Committee  counsel well understood why I wanted to attend, <u>I know it
was February 10th or 11th, or whatever it was, and I think the Court had
four sealed status conferences.  I, I wanted to do -- everybody knew it,
Judge. I wanted to do then what I'm doing now.</u>

Q        Uh-huh (indicating an affirmative response).

A        Now –

Q      But did, but did Mr. Kuebel and Mr. Knapp or anybody from Pachulski know that you had made contact with your cousin and with Mr. █████ ?

A      By that point I believe they did.

Q      When?

MR. KNAPP:      Your Honor, I'm going to object to the extent he's going to talk about the knowledge of other people.  I mean, he can talk about his actions --

THE COURT:  Okay.

MR. KNAPP:  -- but --

THE COURT:  Well, I guess that's my question.

BY THE COURT:

Q      When did you inform them? When could they have come to the Court and said, "Yeah. We figured this out. There's no more mystery here"?

TRAHANT – DIRECT

A      I don't know the exact date, your Honor. I, I don't think I've been asked that and I probably, I probably could pinpoint that date....

(Emphasis added) (SR2 Doc. 2-16 pp. 482 *l.* 16 - 484 *l.*1 3).

However, the Bankruptcy Court truncated this quote and omitted an important

part of Mr. Trahant's answer:

A      ... But what, what was compounding the problem, your Honor, is that my cousin, ████████████, had told me where the information

-44-

came from and what I repeated to Mr. Knapp and Mr. Kuebel and Mr. Stang and Mr. Caine was that they did not get the details from me. They didn't get any details from me and, you know, at some point I absolutely said that it was █████ and ████████████. Why does ███████ know details of sexual abuse, your Honor? That, that to me was a very, very important issue and, and I desperately wanted to come do what I'm doing now and speak to you about it.

Q       Uh-huh (indicating an affirmative response).

A       But I wasn't given that opportunity and that, that's all I can say in answer to the, the Court's question.

Q       Uh-huh (indicating an affirmative response).

(SR2 Doc. 2-16 p. 484 *ll.* 3-16).

The objection from Bradley Knapp, counsel for the Official Committee of Unsecured Creditors, to Mr. Trahant's testimony about what he told counsel for the Committee and when he told them, is significant here, but the Bankruptcy Court made no mention of it in its Order (SR2 Doc. 2-16 p. 424).  Conversely, Mr. Trahant and his counsel did not object to any question asked by the Bankruptcy Court, nor did Mr. Trahant refuse to answer any question.  More important, the Bankruptcy Court never stated that Mr. Trahant was not answering the questions as posed.  As seen in these exchanges, which the Bankruptcy Court mischaracterized as "equivocation, deflection, and inconsistency," Mr. Trahant answered the Bankruptcy Court's questions clearly and definitively -- even offering more information than the

-45-

Bankruptcy Court asked for.  The only question Mr. Trahant did not answer (because he could not) was the exact date on which he apprised Committee counsel of his <u>full</u> actions regarding ███████ and ██████ other than to indicate that Committee counsel knew by February 11, 2022, at the latest (SR2 Doc. 2-16 p. 424).  There is no evidence to the contrary.  Certainly, if any of what Mr. Trahant testified to was inaccurate, Mr. Knapp would have contradicted it.

Also glaringly inconsistent with the Bankruptcy Court's October 11, 2022 Order is the following statement the Court made directly to Mr. Trahant:

> Q      ... And I also read in your deposition that (1) it became clear that you didn't think that you had violated the protective order and I would, I would just invite you -- and I think it came through that in the, in your deposition and in the text messages and all of the exhibits that I reviewed, it came, it came through that you didn't take physical documents and hand them over, but I would invite you to consider the fact that you took name and the information that you had about him --and you said you were very concerned. <u>You had a good reason</u>.

(Emphasis added) (SR2 Doc. 2-16 p. 484 *ll.* 17-25). Whether the Bankruptcy Court was stating that Mr. Trahant actually had a good reason for doing what he did, or acknowledging that he believed he did, <u>this acknowledgment negates any finding of bad faith or willfulness</u>.

The Bankruptcy Court's closing comments are hardly consistent with the unfavorable description of Mr. Trahant's testimony.  "All right.  I appreciate the, the

statements of all counsel here <u>and I particularly appreciate the statements and the</u> <u>conversation that Mr. Trahant and I were able to have today.  I'll take what you said</u> <u>to heart</u> and like I said, I'll, I'll review this thing one more time and I just want to think about it, all right?" the Court stated (Emphasis added) (SR2 Doc. 2-16 p. 505 *ll.* 19-24).  "So I, I appreciate the statements of everyone.  And again, thank you, Mr. Trahant, for, for coming and I appreciated our conversation" (SR2 Doc. 2-16 p. 506 *ll.* 15-17).    These statements by the Bankruptcy Court are a far cry from the descriptions in its Order describing Mr. Trahant's testimony as "equivocation, deflection, and inconsistency" and "disingenuous" (R2 Doc. 2-11 pp. 421, 426).  A plain reading of Mr. Trahant's testimony establishes just the opposite.

Just as the Bankruptcy Court ignored Mr. Trahant's testimony about the e-mail to the Court and his desire to come speak with the Court in early February of 2022 during the August 22, 2022 hearing, the Court makes no mention of this important testimony in its October 11, 2022 Order. Without any evidentiary support whatsoever, the Bankruptcy Court wrote:

> The Court also heard statements from counsel for the Debtor regarding the harm that has been caused by the breach of the Protective Order and wrongful disclosure of confidential information, including the hurt and trauma revisited upon the survivor of the priest's alleged abuse, the harm to the level of trust among parties with already-strained relations as they entered the mediation process, and the financial harm

to the estate for professional fees incurred needlessly due to Trahant's delay in admitting his communications with his cousin and the reporter.

(R2 2-11 p. 421).

This is the problem with not requiring evidence and merely accepting and relying upon wild speculation by counsel as support for a ruling, especially one that decimates a lawyer's reputation and seeks to cripple him and his family financially. Logically, it is much more likely that the "survivor" blames ███ and the Archdiocese for revisiting her trauma than she does Mr. Trahant.   The Bankruptcy Court's reliance on these unsupported statements of counsel evinces a fundamental misunderstanding about the sacrosanct need for evidence and testimony.  The rest of this quote (alleged harm to the level of trust and alleged financial harm to the estate) is likewise wholly unsupported by any competent evidence or testimony.  Mr. Trahant fully explained what caused the delay, and his testimony was uncontradicted.

Likewise, the Bankruptcy Court wrote, "Further, his [Mr. Trahant's] answers do not comport with the record and the timeline of events in this case or the actions taken by Committee counsel in investigating the breach" (R2 Doc. 2-11 p. 421). Frankly, Mr. Trahant has absolutely no idea what part of the "record," what "timeline of events," or what "actions taken by Committee counsel in investigating the breach" the Bankruptcy Court is referring to.  But this is why evidentiary hearings are

-48-

necessary -- to assess the credibility of witnesses, especially if the Court perceives there to be a conflict in testimony.   Unfortunately, Mr. Trahant is at a loss to specifically refute these statements by the Bankruptcy Court because there is no citation, and certainly no evidence, to support them.   Moreover, it appears as if whatever conflict the Bankruptcy Court perceived, it automatically resolved against Mr. Trahant, which is telling.   Mr. Trahant is not the only witness who could have testified that he promptly told Committee counsel about these communications with ███████████ .   And again, Mr. Knapp was there to dispute anything with which he or his Committee co-counsel disagreed.

Mr. Trahant's testimony established the following uncontradicted facts:

- He had nothing to hide and his intention was to come talk to the court about the issue, and an e-mail to that effect was sent on February 9, 2022 so that it did not spin out of control. (SR2 Doc. 2-16 p. 479 *ll.* 10-16);

- Mr. Trahant did not believe that his e-mail to reporter ████████ to "keep this guy (███) on your radar" was a protective order violation. Nor did he believe that his text message to his cousin ███████████ asking, "Is ████████ still the Chaplain at ████████████████" was a violation of the protective order because "That's all public information." (Emphasis added) (SR2 Doc. 2-16 p. 479 *l.* 21 thru p. 480 *l.* 4);

- He gave no documents to anyone, he read no documents to anyone, and he did not set it up so that somebody could provide documents.  He does not believe that he ran afoul of the protective order. (SR2 Doc. 2-16 p. 480 *ll.* 8-11);

-49-

- The first thing he told ███████████, his cousin (and Principal of ███████████) was "I have to be very careful here because we're operating under a protective order." (SR2 Doc. 2-16 p. 480 *ll.* 15-18);

- Mr. ██████ told the US Trustee that Mr. Trahant was not a source for his story. (SR2 Doc. 2-16 p. 480 *ll.* 23-25);

- Based on the letter that Mr. Kuebel sent to the Archdiocese, Mr. Trahant felt that he could give Mr. ████████ minimal information. (SR2 Doc. 2-16 p. 481 *ll.* 1-9);

- ███████████ got way more information from ████████, who is not employed by the Archdiocese, and the depositions of the representatives at ████████████ (████████████, ████████████ and ████████████) resoundingly demonstrated that they were more concerned about why ████████ was at ████████████ to begin with, not with what Mr. Trahant did. (SR2 Doc. 2-16 p. 481 *ll.* 10-15).[16]

- And then, ten (10) days later, ████████████ got the documents from the Archdiocese. (SR2 Doc. 2-16 p. 481 *ll.* 15-19);[17]

---

[16] "Waiver is the voluntary or intentional relinquishment of a known right." *Bunner v. Dearborn Nat'l Life Ins. Co.*, 37 F.4th 267, 273 (5th Cir. 2022) (Internal quotes and citation omitted). The Archdiocese undoubtedly waived any purported confidentiality when it (1) provided information about ████ sexual abuse to ████████, a third party not bound by the Protective Order; (2) provided information about ████ sexual abuse to various individuals at ████████████, none of whom were bound by the Protective Order at the time of these communications; and (3) voluntarily provided documents detailing ████ sexual abuse to ████████████. (R33-2 pp. 23-43, 51-94, 110-14; SR2 Doc. 2-16 p. 481 *ll.* 10-19).

[17] "Disclosure of attorney-client communications to a third party who lacks a common legal interest waives the attorney-client privilege." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. 2003) (citing *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992)). As such, "a client's disclosure of confidential documents directly to a third party destroys confidentiality and (continued...)

- He was shocked when he spoke to ███████ on January 18th. (SR2 Doc. 2-16 p. 481 *ll.* 20-22);

- The UST did not find that Mr. Trahant knowingly and willfully violated the protective order. (SR2 Doc. 2-16 p. 481 *ll.* 24-25);

- Mr. Trahant conceded that he absolutely "planted a seed" with ████████. He did so because he did not "want that guy ████) back on campus." (SR2 Doc. 2-16 p. 485 *l.* 10 thru p. 486 *l.* 7);

- Mr. Trahant had no idea what ████████' article was going to contain and he was gobsmacked when ████████ told him on January 18th. (SR2 Doc. 2-16 p. 486 *ll.* 8-20);

- Mr. Trahant believes clergy sexual abuse of minors needs to be exposed and that Catholics and the public in general have the right to know what is going on. He testified that he was "personally offended that I'm the bad, bad actor. I'm the bad guy here when there are pedophiles walking around who have never been arrested, convicted, nothing has happened to them." (SR2 Doc. 2-16 p. 487 *ll.* 1-7);

- Mr. Trahant rhetorically asked how the Archdiocese lawyers could stamp documents "confidential" that contain felonies against children whether it was ████████ or anybody else. He stated that 99.08% of the documents produced in the bankruptcy were stamped "confidential," and he stated that is anathema to him. (SR2 Doc. 2-16 p. 487 *ll.* 9-25);

- The only document Mr. Trahant possessed at the time was the ████ IRB/ARB report, and similar reports had been produced in state court litigation as being non-confidential, but he did not act any differently than he would have if he truly believed that document was confidential. (SR2 Doc. 2-16 p. 429 *l.* 6 thru p. 489 *l.* 2);

---

[17](...continued)
attorney-client privilege protection for those documents." *Id.* (Emphasis added) (citing *United States v. El Paso Co.*, 682 F.2d 530, 540 (5th Cir.1982)).

- Mr. Trahant pointed out the "overstamping" of documents, and testified that 25 people knew about this (████ sexual abuse of a minor) between 2011 and 2013, but the Archdiocese refused to let the UST speak to those people. (SR2 Doc. 2-16 p. 490 *ll.* 7-11);

- For the court to come to the conclusion that Mr. Trahant "knowingly and willfully" violated the protective order, and that (Order) goes out to 16,000 people, most of whom have nothing to do with this case, is absolutely devastating. (SR2 Doc. 2-16 p. 490 *l.* 23 thru p. 432 *l.* 2);

- Mr. Trahant testified how his clients' removal from the Committee was a "gut punch," and that some of them stayed up all night the night before the Order was rendered preparing to give statements to the Archbishop, and that there were "a lot of tears." (SR2 Doc. 2-16 p. 491 *ll.* 3-9);

- He testified that the removal of him and his clients "devastated the institutional wealth of knowledge" of the Committee, and he singled out ████████, the former Chair of the Committee, who put in a lot of work. (SR2 Doc. 2-16 p. 491 *ll.* 11-14);

- Mr. Trahant testified that because of the sealing of documents and the protective order, he cannot defend himself to friends, family, siblings, and even his own kids when they ask about this very public Order. (SR2 Doc. 2-16 p. 432 *l.* 14 thru p. 492 *l.* 1);

- Mr. Trahant pointed out that even counsel for the Archdiocese testified in his deposition that the protective order is very complex, and Mr. Trahant noted that the US Trustee has had to file motions for clarification of the protective order.  He testified that it the protective order said that "You can't mention a name," he never would have mentioned a name. (SR2 Doc. 2-16 p. 492 *ll.* 6-14).

### c.   *The $400,000 sanction is fraught with errors.*

This sanction both dramatically impacts Mr. Trahant and shocks the conscience, especially under these circumstances.  As stated above, there is no clear

and convincing evidence that Mr. Trahant violated the protective order, and certainly

there is no evidence of bad faith or willfulness -- the Bankruptcy Court indicated just

the opposite during the hearing (SR2 Doc. 2-16 p. 505 *ll.* 19-24; SR2 Doc. 2-16 p.

506 *ll.* 15-17).  As the Fifth Circuit has held:

> The imposition of sanctions using inherent powers must be accompanied
> by a specific finding of bad faith.... Moreover, the <u>standard for the
> imposition of sanctions using the court's inherent powers is extremely
> high</u>.  The court must find that the "very temple of justice has been
> defiled" by the sanctioned party's conduct.  *See Boland Marine & Mfg.
> v. Rihner*, 41 F.3d 997, 1005 (5th Cir.1995).  Nothing in the record
> reflects conduct that reaches this level.  We find that the imposition of
> sanctions using the court's inherent powers <u>when no bad faith is
> specifically found and the record does not support the required high
> level of culpability constitutes an abuse of discretion</u>.

*Goldin v. Bartholow*, 166 F.3d 710, 722-23 (5th Cir. 1995) (Emphasis added).[18]

---

[18] *See also Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir.1993) ("One of the problems we face in reviewing the sanctions on appeal here is the district court's failure to differentiate between the rules under which it imposed the sanctions. In its order, the court merely said that it imposed the sanctions 'pursuant to 28 U.S.C. § 1927 and Rules 11, 26(g), 34(b) and 37, Fed.R.Civ.P.' As a result, we cannot determine what portions of the sanctions award are attributable to what rule violations.") (Citations omitted). The same is true of the Bankruptcy Court's October 11, 2023 Order in this case, where the Court invoked Fed. R. Civ. P. 37(b) for the first time, in addition to the "inherent authority" under 11 U.S.C. § 105(a) that it first invoked in the June 7, 2023 Order (R1 Doc. 33-2 p. 548; R2 Doc. 2-11 pp. 422-26), without specifying which portions of the sanctions award are attributable to what alleged rule violations.

-53-

In the Fifth Circuit, a district court must consider four factors in exercising its "broad discretion when deciding whether to impose sanctions for discovery violations": "(1) why disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances." *United States v. Swenson*, 894 F.3d 677, 684 (5th Cir.2018) (quoting *United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000)). If, upon "carefully weigh[ing]" these factors, the district court decides sanctions would be appropriate, it "should impose the <u>least severe sanction that will accomplish the desired result</u> -- prompt and full compliance with the court's discovery orders." *Id.* (reversing and remanding a district court's dismissal of an indictment upon an alleged *Brady* violation because "[t]he district court failed to impose the least severe sanction, and the government's violations of the discovery deadlines do not warrant dismissing the indictment with prejudice") (quoting *Garrett*, 238 F.3d at 298). *United States v. George*, 2020 WL 6392580, p. 18 (E.D. La. 2020) (Africk, J.).

It is undisputed that Mr. Trahant attempted to disclose what he had done, both by requesting to attend status conferences on this issue and by filing a motion, but the Bankruptcy Court would not permit it (SR1 Doc. 34 pp. 148-64; SR1 Doc. 41 p. 1). The Archdiocese introduced no evidence of prejudice. And although factor number

-54-

3 does not apply, the "other relevant circumstances" in factor 4 is the fact that it is not disputed that Mr. Trahant did what he did in order to have a child predator removed from a school campus. Therefore, these factors weigh against the imposition of any sanctions.

The Fifth Circuit also held recently, "When the bankruptcy court sanctions a party using its inherent authority, our review is closer. We uphold those sanctions only if (1) the bankruptcy court finds that the party acted in bad faith or willfully abused the judicial process and (2) its finding is supported by clear and convincing evidence." *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 26 F.4th 285, 292 (5th Cir. 2022) (citing *In re Moore*, 739 F.3d 724 (5th Cir.2014)).

In *Topalian v. Ehrman*, 3 F3d. 931, 937 (5th Cir. 1993), the Fifth Circuit set forth the following criteria for assessing sanctions:

> (1) *What conduct is being punished or is sought to be deterred by the sanction?* It is axiomatic that the court must announce the sanctionable conduct giving rise to its order.

> (2) *What expenses or costs were caused by the violation of the rule?* The district court must demonstrate some connection between the amount of monetary sanctions it imposes and the sanctionable conduct by the violating party. *See Thomas* [*v. Capital Security Serv.*, 836 F.2d 866, 879 (5th Cir.1988) (*en banc*)]; *Willy v. Coastal Corp.*, 855 F.2d 1160, 1173 (5th Cir.1988), *appeal after remand*, 915 F.2d 965 (1990); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir.1974).

(3) *Were the costs or expenses "reasonable," as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention?* "A party seeking [costs and fees for defending against frivolous claims] has a duty to mitigate those expenses, by correlating his response, in hours and funds expended, to the merit of the claims," *Thomas*, 836 F.2d at 879, as well as by giving notice to the court and the offending party promptly upon discovering the sanctionable conduct. *See Chapman & Cole v. Itel Container International B.V.*, 865 F.2d 676, 684 (5th Cir.1989). The Court's findings must reflect some consideration of the reasonableness of the nonviolating party's actions in connection with the sanctionable conduct.[19]

(4) *Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed?* In *Boazman v. Economics Laboratory, Inc.*, 537 F.2d 210, 212-213 (5th Cir.1976), followed in *Thomas*, 836 F.2d at 878, we ruled that district courts must demonstrate that sanctions are not vindictive or overly harsh reactions to objectionable conduct, and that the amount and type of sanction was necessary to carry out the purpose of the sanctioning provision. *See also, Akin v. Q-L Investments, Inc.*, 959 F.2d 521, 534-535 (5th Cir.1992).

*Topalian*, 3 F3d. at 937.

In *Thomas*, the Fifth Circuit said that the sanction should be tailored to fit the particular wrong, reasoning that "the district court should carefully choose sanctions that foster the appropriate purpose of the rule, depending on the parties, the violation, and the nature of the case." *Thomas*, 836 F.2d at 877. Put simply, how in any

---

[19] The record is devoid of any evidence that the Archdiocese met its duty to mitigate its expenses (fees) by correlating its response with the merits of its claim (which later became the Bankruptcy Court's claim *sua sponte*). The court's finding did not reflect any consideration of the reasonableness of the Archdiocese's actions. Billing in excess of $700,000 in fees in connection with a lawyer having an admitted child predator removed from a school campus shocks the conscience.

reasonable world can an attorney be sanctioned $400,000 for his swift efforts to keep a child predator away from children?

A sanction of this size, which is clearly intended to punish Mr. Trahant, is a criminal sanction.[20] However, the Bankruptcy Court afforded Mr. Trahant none of the heightened protections necessary for the imposition of criminal contempt.

Bankruptcy courts lack the power to impose sanctions so punitive that they amount to a finding of criminal contempt. *Matter of Hipp, Inc.*, 895 F.2d 1503, 1509 (5th Cir.1990). "Because this criminal contempt was prosecuted by the bankruptcy trustee (and his attorney), rather than a disinterested representative of the United States, we reverse Oles' conviction and sentence and remand to the district court for further proceedings. *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). We further hold that the trial and determination of criminal contempt, at least one such as this which is of the kind

---

[20] A contempt order is characterized as either civil or criminal depending on its primary purpose. *Lamar Financial Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir.1990). If the primary purpose is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If the primary purpose of the sanction is to coerce another party for the contemnor's violation, the order is considered purely civil. A key determinant is whether the penalty imposed is absolute or conditional on the contemnor's conduct. When a contempt order contains both a punitive and a coercive dimension, for purposes of appellate review it will be classified as a criminal contempt order. *Lamar*, 918 F.2d at 566–67.

governed by U.S.C. § 401(3) and Fed.R.Crim.P. 42(b), must be before and by the district court and not the bankruptcy court." *Hipp,* 895 F.2d at 1504-05.[21]

When attorneys' fees are to be awarded, the fee applicant has the burden of "presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement." *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990). Here, there was no "fee applicant," as no party filed a motion for attorney's fees. Moreover, no such evidence was introduced at the "show cause" hearing, nor was Mr. Trahant given the opportunity to traverse billing records that merely were submitted by filing them on PACER at the invitation of the Bankruptcy Court. An item is not offered, introduced, or admitted into evidence or even authenticated merely by filing it on PACER. So none of the billing records that the Bankruptcy Court considered were offered, introduced, or admitted in evidence at any time, much less subject to cross-examination by Mr. Trahant or otherwise authenticated in any manner.

---

[21] "Finally, we are unsure even that today's bankruptcy courts are 'courts' in a generic sense not defined strictly by Article III." *Hipp*, 895 F.2d at 1514. "Nor is our conclusion in this respect altered by Rule 9020 or the fact that the district court here purported to itself convict Oles of criminal contempt and sentence him for that offense. We do not construe Rule 9020 as a purported grant of criminal contempt power to bankruptcy courts. The advisory committee note to the rule's current version, promulgated in 1987, states that the rule 'recognizes that bankruptcy judges may not have the power to punish for contempt.' Moreover, the bankruptcy rules are intended to be procedural, rather than substantive, in character." *Id.* at 1518-19.

Finally, if the devastation to Mr. Trahant and his family caused by these Orders were not enough, the Bankruptcy Court went so far as to help the Archdiocese execute on this excessive sanction:

> IT IS FURTHER ORDERED that the Court will hold a hearing on Monday, November 21, at 4:00 p.m. at the United States Bankruptcy Court, 500 Poydras Street, Courtroom B-709, New Orleans, Louisiana 70130 to assess compliance with this Order and, in the event of non-compliance, to assess whether additional action should be taken by the Court to ensure compliance with this Order.

(R2 2-11 p. 428). Of course, Mr. Trahant was forced to post an expensive appeal bond in order to halt this sustained attack by the Bankruptcy Court (R2 2-11 pp. 433-41, 460), which gives the appearance of continued animus against him, his co-counsel, and his clients. When a Federal judge turns his/her ire on an attorney, there is a power differential that is impossible to overcome. The appellate process is all that Mr. Trahant, and indeed his family, have left to seek justice.

## CONCLUSION

For the foregoing reasons, Mr. Trahant respectfully prays that the Court reverse or vacate both the June 7, 2022 Order and the October 11, 2022 Order.

**RESPECTFULLY SUBMITTED,**

/s/ Richard C. Trahant

_____

**RICHARD C. TRAHANT (#22653)**
**ATTORNEY AT LAW**
**2908 Hessmer Avenue**
**Metairie, Louisiana 70002**
**(504) 780-9891**
**trahant@trahantlawoffice.com**

**- and -**

**PAUL M. STERBCOW (#17817)**
**Lewis, Kullman, Sterbcow &**
**       Abramson**
**601 Poydras Street, Suite 2615**
**New Orleans, Louisiana 70130**
**(504) 588-1500**
**sterbcow@lksalaw.com**

**- and -**

_/s/ Jack E. Morris_

_____

**JACK E. MORRIS (Bar No. 22539)**
**JACK E. MORRIS, ATTORNEY**
**       AT LAW, LLC**
**4051 Veterans Boulevard, Suite 208**
**Metairie, Louisiana 70002**
**(504) 454-2769**
**jem@jemorrislaw.com**

***Attorneys for Appellant***
***Richard C. Trahant***

-60-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that unredacted copies of the above and foregoing "Consolidated Principal Brief on Behalf of Appellant Richard C. Trahant," including its accompanying "Appendix Volume 2 of 2: Sealed Record," filed under seal pursuant to a sealing motion and proposed order filed on February 24, 2023, have been served on counsel of record for all interested parties, securely sealed with the container clearly labeled "UNDER SEAL," by hand delivery this __24th__ day of __ February __, 2023 to:

> *Counsel for the U.S. Trustee:*
>
> Amanda Burnette George, Esq.
> Trial Attorney, Office of the U.S. Trustee
> 400 Poydras St., Ste. 2110
> New Orleans, LA 70130
>
> *Counsel for Debtor, The Roman Catholic Church of the Archdiocese of New Orleans:*
>
> R. Patrick Vance, Esq.
> Elizabeth J. Futrell, Esq.
> Mark A. Mintz, Esq.
> Laura F. Ashley, Esq.
> Jones Walker LLP
> 201 St. Charles Ave., 51st Fl.
> New Orleans, LA 70170

*/s/ Jack E. Morris*

**JACK E. MORRIS**

-61-

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION,
## <u>TYPEFACE REQUIREMENT, AND TYPE STYLE REQUIREMENT</u>

       1.      This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B) because it contains 12,705 words *excluding* the parts of the brief exempted by Fed. R. Bankr. 8015(g).

       2.      This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5), and the type style requirements of Fed. R. Bankr. P. 8015(a)(6), because it has been prepared in a proportionally spaced typeface using WordPerfect 2020 in 14-point font and Times New Roman type style.

February 24, 2023                   */s/ Jack E. Morris*

_____     _____

**Date**                                   **JACK E. MORRIS (Bar No. 22539)**
                                          **JACK E. MORRIS, ATTORNEY**
                                              **AT LAW, LLC**
                                          **4051 Veterans Boulevard, Suite 208**
                                        **Metairie, Louisiana 70002**
                                        **(504) 454-2769**
                                        **jem@jemorrislaw.com**

                                        ***Attorney for Appellant***
                                        ***Richard C. Trahant***