**CIVIL ACTION NO. 22-1740 c/w 22-4101, SECT. "T"(2)**

---

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

---

**IN RE ROMAN CATHOLIC CHURCH OF
THE ARCHDIOCESE OF NEW ORLEANS**

---

**Richard C. Trahant,**

*Appellant*,

v.

**Roman Catholic Church of the Archdiocese of New Orleans, et al.,**

*Appellees*.

---

**Consolidated Appeals from Orders of the United States Bankruptcy Court for
the Eastern District of Louisiana, Case No. 20-10846, Sect. "A,"
Honorable Meredith S. Grabill**

---

**PRINCIPAL BRIEF OF APPELLEE,
THE ROMAN CATHOLIC CHURCH OF
THE ARCHDIOCESE OF NEW ORLEANS**

---

MARK A. MINTZ (#31878)
R. PATRICK VANCE (#13008)
ELIZABETH J. FUTRELL (#05863)
EDWARD D. WEGMANN (#13315)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA 70170
Telephone: (504) 582-8368
Email: mmintz@joneswalker.com
Email: pvance@joneswalker.com
Email: efutrell@joneswalker.com
Email: dwegmann@joneswalker.com

*Counsel for Appellee, The Roman Catholic
Church of the Archdiocese of New Orleans*

## DISCLOSURE STATEMENT

The undersigned counsel of record certifies, pursuant to Fed. R. Bankr. P. 8012(b) and 8014(b), that The Roman Catholic Church of the Archdiocese of New Orleans is a non-profit religious corporation incorporated under the laws of the State of Louisiana.  It has no parent corporation, and it issues no stock.  As such, no publicly held corporation owns 10% or more of its stock.

Dated: March 6, 2023

/s/ Mark A. Mintz
_____
MARK A. MINTZ (#31878)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA 70170
Telephone: (504) 582-8368

**Counsel for Appellee, The Roman Catholic Church of the Archdiocese of New Orleans**

#101013190v7

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ........................................................................ ii

TABLE OF CONTENTS........................................................................ iii

TABLE OF AUTHORITIES ..................................................................v

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................3

STATEMENT OF THE CASE........................................................................5

    A.    The Petition Date and Appointment of the Committee........................5

    B.    The Protective Order. ........................................................................6

    C.    Disclosure of Protected Material in Violation of the Protective Order........................................................................8

    D.    The UST Investigation. .....................................................................10

    E.    The Bankruptcy Court's June 7, 2022 Order. ....................................12

    F.    The Show-Cause Order and the Show-Cause Hearing. ......................14

    G.    The October 11, 2022 Order and October 11, 2022 Opinion. ............15

    H.    Mr. Trahant's Second Appeal. ..........................................................18

SUMMARY OF THE ARGUMENT ....................................................................18

ARGUMENT ........................................................................20

    A.    Legal Standards. ..............................................................................20

    B.    The Bankruptcy Court Did Not Violate the Due Process Clause in Finding that Mr. Trahant Violated the Protective Order, Nor Did it Abuse its Discretion in Making that Finding...........................23

        a.    The Bankruptcy Court Issued the Show-Cause Order and Held the Show-Cause Hearing Before Imposing Sanctions; the June 7, 2022 Order Is Not a Sanction. ..............23

#101013190v7

b.    Alternatively, Mr. Trahant Received Notice and an Opportunity to Defend Himself Before the June 7, 2022 Order Was Entered...................................................26

c.    The Evidence Presented at the Show-Cause Hearing "Reconfirmed" the Bankruptcy Court's Finding—and Established by Clear and Convincing Evidence—that Mr. Trahant Violated the Protective Order.....................................28

C.    The Bankruptcy Court Did Not Abuse its Discretion in Sanctioning Mr. Trahant for Approximately 53% of the Attorneys' Fees and Expenses Incurred By Debtor and Committee Professionals in Investigating the Protective Order Violation. ...............................................................................34

CONCLUSION ...........................................................................42

CERTIFICATE OF SERVICE ................................................42

CERTIFICATE OF COMPLIANCE .......................................43

#101013190v7

# TABLE OF AUTHORITIES

## Cases

*Akzo Nobel, Inc. v. United States*, 478 F. App'x 126 (5th Cir. 2012) ......................5

*Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574 (5th Cir. 2000) ...................5

*Barnes v. BP Expl. & Prod. Inc.*, No. 17-3036, 2022 U.S. Dist. LEXIS 156896
(E.D. La. Aug. 30, 2022) ..................................................................................2

*Bode v. United States*, 919 F.2d 1044 (5th Cir. 1990)............................................39

*Cargill, Inc. v. United States*, 173 F.3d 323 (5th Cir. 1999) ...................................5

*Carroll v. Abide (In re Carroll)*, 850 F.3d 811 (5th Cir. 2017).............................21

*Chilcutt v. United States*, 4 F.3d 1313 (5th Cir. 1993) ...........................................22

*Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770 (9th Cir. 1983)........21

*Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop of
Portland)*, 661 F.3d 417 (9th Cir. 2011) ..............................................................16

*Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999) ..................................... 4, 21, 25

*Grannis v. Ordean*, 234 U.S. 385 (1914).................................................................22

*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982) .................................2

*Hutto v. Finney*, 437 U.S. 678 (1978)......................................................................35

*In re Blake*, 452 B.R. 1 (Bankr. D. Mass. 2011) .....................................................16

*In re Bradley*, 495 B.R. 747 (Bankr. S.D. Tex. 2013).....................................21, 35

*In re Fibermark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005)......................................16

*In re Gilchrist*, 891 F.2d 559 (5th Cir. 1990) .........................................................38

*In re Morrell,* 880 F.2d 855 (5th Cir. 1987) .............................................................2

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April
20, 2010*, MDL No. 2179, 2021 U.S. Dist. LEXIS 175207 (E.D. La. Sept. 15,
2021) ............................................................................................................. 35, 39

#101013190v7

*In re Paige*, 365 B.R. 632 (Bankr. N.D. Tex. 2007)..................................................21

*In re Rodriguez*, No. 06-323, 2007 U.S. Dist. LEXIS 11858 (W.D. Tex. Feb. 20, 2007)..................................................................................................................40

*In re Victory Mkts., Inc.*, 195 B.R. 9 (N.D.N.Y. 1996) ...........................................24

*In re Wilson*, 413 B.R. 330 (Bankr. E.D. La. 2009) ...............................................11

*Knight v. Luedtke (In re Yorkshire, LLC)*, 540 F.3d 328 (5th Cir. 2008)...............21

*Lamar Fin. Corp. v. Adams*, 918 F.2d 564 (5th Cir. 1990) ....................................40

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282 (5th Cir. 2002) .............22

*McCullough v. Pa. Bd. of Prob. & Parole*, 831 F. App'x 50 (3d Cir. 2020) ...........2

*McGuire v. Sigma Coatings, Inc.,* 48 F.3d 902 (5th Cir. 1995) ..............................25

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950)...........................22

*Musslewhite v. O'Quinn (In re Musslewhite)*, 270 B.R. 72 (S.D. Tex. 2000).........40

*Perry v. Dearing (In re Perry)*, 345 F.3d 303 (5th Cir. 2003) ..................................4

*Placid Refin. Co. v. Terrebonne Fuel & Lube (In re Terrebonne Fuel & Lube)*, 108 F.3d 609 (5th Cir. 1997).......................................................................... 5, 20, 22

*Pressey v. Patterson*, 898 F.2d 1018 (5th Cir. 1990) .............................................22

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ...........................................22

*Ruby v. Sec'y of U.S. Navy*, 365 F.2d 385 (9th Cir. 1966) .......................................2

*Shaw v. Ciox Health LLC*, No. 19-14778, 2021 U.S. Dist. LEXIS 213328 (E.D. La. Nov. 4, 2021) ............................................................................................. 22, 35

*Skidmore Energy v. KPMG,* 455 F.3d 564 (5th Cir. 2006) ....................................39

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486 (5th Cir. 2012) ................................................................................................................ 21, 22

*Test Masters Educ. Servs. v. Robin Singh Educ. Servs.*, 799 F.3d 437 (5th Cir. 2015)..................................................................................................................25

#101013190v7

*Topalian v. Ehrman*, 3 F.3d 931 (5th Cir. 1993) ............................................... 40, 41

*U.S. Abatement Corp. v. Mobil Expl. & Producing U.S. (In re U.S. Abatement Corp.)*, 39 F.3d 563 (5th Cir. 1994) ....................................................................2

*United States v. Garrett,* 238 F.3d 293 (5th Cir. 2000) ..........................................37

*United States v. Swenson,* 894 F.3d 677 (5th Cir. 2018) .........................................37

*Vantage Health Plan v. Willis-Knighton Med. Ctr.*, 913 F.3d 443 (5th Cir. 2019) 16

*Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336 (5th Cir. 2015)............ 4, 5, 25

*Waste Mgmt. of Wash., Inc. v. Kattler*, No. 12-3454, 2013 U.S. Dist. LEXIS 190163 (S.D. Tex. Mar. 28, 2013), *vacated*, 76 F.3d 336 (5th Cir. 2015) ..........25

## **Statutes**

11 U.S.C. § 105(a) ........................................................................................ 11, 20

11 U.S.C. § 107 .....................................................................................................16

11 U.S.C. § 107(a) ................................................................................................16

11 U.S.C. § 107(b) ................................................................................................16

11 U.S.C. § 107(b)(2)....................................................................................... 15, 16

11 U.S.C. § 107(c) ................................................................................................15

11 U.S.C. § 330(a)(1).............................................................................................40

28 U.S.C. § 1291 .....................................................................................................2

28 U.S.C. § 1334 .....................................................................................................1

28 U.S.C. § 158 .......................................................................................................1

28 U.S.C. § 158(a)(1).............................................................................................3

28 U.S.C. § 158(a)(3).............................................................................................2

28 U.S.C. § 158(d) .................................................................................................2

## **Rules**

Fed. R. Bankr. P. 2004 ........................................................................................11

Fed. R. Bankr. P. 7026 ........................................................................................21

Fed. R. Bankr. P. 8001 *et seq*. ........................................................................1, 3

Fed. R. Bankr. P. 8012(b) ..................................................................................... ii

Fed. R. Bankr. P. 8014(b) ..................................................................................... ii

Fed. R. Bankr. P. 8015(a)(5) ...............................................................................43

Fed. R. Bankr. P. 8015(a)(6) ...............................................................................43

Fed. R. Bankr. P. 8015(a)(7)(B)(i) .......................................................................43

Fed. R. Bankr. P. 8015(g) ....................................................................................43

Fed. R. Bankr. P. 9014 .........................................................................................21

Fed. R. Civ. P. 37(b) ............................................................................................21

Fed. R. Civ. P. 37(b)(2) ........................................................................................21

Fed. R. Civ. P. 37(b)(2)(A) ...................................................................................21

Fed. R. Evid. 803(8)(A)(iii) ...................................................................................28

Fed. R. Evid. 803(8)(B) ........................................................................................29

## <u>Treatises</u>

7 Collier on Bankruptcy ¶ 1102.05[3] (16th ed. 2022)...........................................24

## JURISDICTIONAL STATEMENT

The Bankruptcy Court exercises jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. § 1334. On June 7, 2022, the Bankruptcy Court issued an interlocutory order finding that Mr. Trahant knowingly and willfully violated the Protective Order but did not sanction him at that time. [R2 2-7, pp. 264-68].[1] Mr. Trahant noticed his appeal of the June 7, 2022 Order to this Court on June 10, 2022 pursuant to Fed. R. Bankr. P. 8001 *et seq*. [R2 2-8, pp. 12-14]. However, this Court lacked jurisdiction over that appeal.

Appeals from bankruptcy court orders are governed by 28 U.S.C. § 158. Under § 158(a), district courts "have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; (2) from [certain] interlocutory orders and decrees issued under section 1121(d) of title 11 . . . ; and (3) with leave of the court, from other interlocutory orders and decrees." 28 U.S.C. § 158(a). The June 7, 2022 Order giving rise to Mr. Trahant's first appeal was interlocutory when entered because the

---

[1] With respect to Civil Action No. 22-1740, the record on appeal consists of Rec. Docs. 33 and 55 contained in the public record and Rec. Docs. 34 through 41 (Bates stamped pages 1-4796) under seal. As for Civil Action No. 22-4101, the record on appeal consists of Rec. Docs. 2-1 through 2-14 contained in the public record and Rec. Docs. 2-15 through 2-17 under seal.

As used herein, "R1 ___" and "R2 ___" refer to documents in the public portions of the record on appeal [R1 33 and 55 in Civil Action No. 22-1740; R2 2-1 through 2-14 in Civil Action No. 22-4101], and "SR1 ___" and "SR2 ___" refer to documents in the sealed portions of the record on appeal [SR1 pp. 1-4796 in Civil Action No. 22-1740; SR2 2-15 through 2-17 in Civil Action No. 22-4101].

Bankruptcy Court had not yet imposed sanctions.[2]  Because Mr. Trahant did not seek

leave to appeal the June 7, 2022 Order, this Court lacked jurisdiction over that

appeal,[3] and the Bankruptcy Court was not divested of jurisdiction concerning the

June 7, 2022 Order.[4]

Subsequently, on June 13, 2022, the Bankruptcy Court issued an Order to

Show Cause, directing Mr. Trahant to appear and show cause as to why he should

not be sanctioned.  [R2 2-8, pp. 29-31].  After conducting an evidentiary hearing on

---

[2] It is well-settled that a civil contempt order is not 'final' for purposes of appeal unless two actions occur: (1) a finding of contempt is issued, and (2) an appropriate sanction is imposed . . . . The requirement of finality is no different when it is the bankruptcy court (rather than the district court) which has failed to assess damages." *U.S. Abatement Corp. v. Mobil Expl. & Producing U.S. (In re U.S. Abatement Corp.),* 39 F.3d 563, 567 (5th Cir. 1994) (internal citations omitted). The Fifth Circuit has explained:

> Determinations of liability without an assessment of damages are as likely to cause duplicative litigation in bankruptcy as they are in civil litigation and because bankruptcy litigants may appeal to district as well as to appellate courts, the waste of judicial resources is likely to be greater. The rule for appeals from bankruptcy decisions determining liability but not damages under 28 U.S.C. § 158(d) must . . . be the same as the rule under  [28 U.S.C.] § 1291.

*Id.* (quoting *In re Morrell,* 880 F.2d 855, 856-57 (5th Cir. 1987)).

[3] *See* 28 U.S.C. § 158(a)(3).

[4] *See, e.g., Barnes v. BP Expl. & Prod. Inc.*, No. 17-3036, 2022 U.S. Dist. LEXIS 156896, *2 n.1 (E.D. La. Aug. 30, 2022) (Ashe, J.) ("The district court retains jurisdiction, however, when the notice of appeal relates to an order that is not immediately appealable.") (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)); *see also Ruby v. Sec'y of U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (holding that notice of appeal from unappealable order does not divest district court of jurisdiction); *McCullough v. Pa. Bd. of Prob. & Parole*, 831 F. App'x 50, 51 n.2 (3d Cir. 2020) (observing that "the jurisdiction of a district court is not lost by the taking of an appeal from an order or judgment which is not immediately appealable").

#101013190v7

August 22, 2022 and taking the matter under advisement [R2 2-11, pp. 81-141], the Bankruptcy Court imposed sanctions against Mr. Trahant on October 11, 2022 [R2 2-11, pp. 400-29], thereby rendering the June 7, 2022 Order "final" at that time for purposes of appeal.

Mr. Trahant appealed the October 11, 2022 Opinion to this Court on October 21, 2022 pursuant to Fed. R. Bankr. P. 8001 *et seq*. [R2 2-11, pp. 430-32]. The October 11, 2022 Opinion is "final" for purposes of appeal. Accordingly, this Court has jurisdiction over the consolidated appeals under 28 U.S.C. § 158(a)(1).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.       Did the Bankruptcy Court violate the Due Process Clause or err in finding that Mr. Trahant violated the Protective Order where: (a) the Bankruptcy Court did not impose any sanctions until after issuing an Order to Show Cause [R2 2-8, pp. 29-31] and conducting an evidentiary hearing, during which Mr. Trahant had the full opportunity to defend himself, offered sworn testimony, and was represented by counsel [R2 2-11, pp. 81-141]; and (b) the Bankruptcy Court's finding that Mr. Trahant knowingly violated the Protective Order was supported by detailed factual findings contained in the United States Trustee's Report following an extensive, independent investigation, as well as sworn statements of Mr. Trahant and documents he produced to the United States Trustee, and was "reconfirmed" by evidence submitted at the Show-Cause Hearing [R2 2-11, pp. 400-29]?

3

2.      Did the Bankruptcy Court abuse its discretion in sanctioning Mr.

Trahant for approximately 53% percent of the attorneys' fees and expenses incurred

by Debtor and Committee professionals in investigating Mr. Trahant's breach of the

Protective Order that he attempted to conceal where: (a) the Order to Show Cause

directed Mr. Trahant to appear and show cause as to why he should not be sanctioned

for his willful violation of the Protective Order and ordered counsel for the Debtor

and the Committee to submit invoices identifying time spent rendering services

related to the Protective Order violation [R2 2-8, pp. 29-31]; (b) Mr. Trahant did not

object to the reasonableness of the invoices [R2 2-11, p. 427]; and (c) the Bankruptcy

Court calculated the sanctions award using the lodestar analysis after making a

specific finding of bad faith and finding by clear and convincing evidence that Mr.

Trahant violated the Protective Order [R2 2-11, pp. 421-29]?

## **Standard of Review**

"A district court, in reviewing the findings of a bankruptcy court, acts in an

appellate capacity." *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 308 (5th Cir.

2003).  An appellate court reviews contempt findings,[5] as well as the imposition of

sanctions,[6] for abuse of discretion.  "[A] court abuses its discretion when it (1) relies

on clearly erroneous factual findings, (2) relies on erroneous conclusions of law, or

---

[5] *See Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 339 (5th Cir. 2015).

[6] *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999).

(3) misapplies its factual or legal conclusions." *Akzo Nobel, Inc. v. United States*, 478 F. App'x 126, 131-132 (5th Cir. 2012) (quoting *Cargill, Inc. v. United States*, 173 F.3d 323, 341 (5th Cir. 1999)).

"The district court's underlying findings of fact are reviewed for clear error and its underlying conclusions of law reviewed de novo." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000) (internal citations omitted). "Whether an alleged contemnor was afforded due process is a question of law . . . review[ed] de novo." *Waste Mgmt.*, 776 F.3d at 339. A civil contempt proceeding that provides "notice and an opportunity to be heard" is constitutional. *Am. Airlines*, 228 F.3d at 583 (quoting *Placid Refin. Co. v. Terrebonne Fuel & Lube (In re Terrebonne Fuel & Lube)*, 108 F.3d 609, 613-14 (5th Cir. 1997)).

## STATEMENT OF THE CASE

### A. The Petition Date and Appointment of the Committee.

On May 1, 2020 (the "**Petition Date**"), the Archdiocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Louisiana (the "**Bankruptcy Court**"), commencing a chapter 11 case (the "**Chapter 11 Case**"). [R2 2-11, p. 404].

The Office of the United States Trustee (the "**UST**") appointed the Official Committee of Unsecured Creditors (the "**Committee**") on May 20, 2020 [R2 2-1, p.

#101013190v7

40], which Committee was subsequently reconstituted several times.  As of October 8, 2020, the six-member Committee was comprised solely of tort claimants alleging abuse by clergy.  [R2 2-2, pp. 1-2].  Richard C. Trahant ("**Mr. Trahant**" or "**Appellant**") serves as personal counsel to four of the six claimants who served on the Committee at that time.  [R2 2-7, p. 266].

### B. The Protective Order.

On August 3, 2020, the Bankruptcy Court entered a Protective Order to protect confidential and sensitive information produced in discovery in the Chapter 11 Case. [R2 2-1, pp. 48-68].[7]  The Protective Order defines "Protected Material" as discovery produced and designated by the producing party as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS EYES ONLY."  [R2 2-2, p. 10].  Pursuant to Paragraph 7, any discovery material designated or marked "CONFIDENTIAL" may be disclosed by a recipient only to certain persons: (i) the Debtor, including its officers, employees, and agents; (ii) the Committee, including its members and their attorneys; (iii) other creditors and constituents, after they have signed a Confidentiality Statement; and (iv) the UST.  [R2 2-2, pp. 15-17].  Paragraph 8

---

[7] The Bankruptcy Court subsequently amended the Protective Order at various times throughout the Chapter 11 Case to add certain parties and provisions.  *See* Amended Protective Order [R2 2-2, pp. 8-28]; Supplemental and Amended Protective Order [R2 2-3, pp. 11-15]; Second Supplemental and Amended Protective Order [R2 2-3, pp. 28-32].

similarly restricts the disclosure of discovery material marked "CONFIDENTIAL –

ATTORNEYS' EYES ONLY." [R2 2-2, pp. 17-20].

Paragraph 9 of the Protective Order, in turn, identifies prohibited uses for

Protected Material obtained through discovery in the Chapter 11 Case:

> **Any Protected Material, <u>and all information derived from Protected Material</u>** (including, but not limited to, all testimony, deposition, or otherwise, that refers, reflects or otherwise discusses any information designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" under this Protective Order), **shall not be used, directly or indirectly, by any person** for any business, commercial or competitive purposes, or **for any purpose whatsoever other than for Authorized Uses**.

[R2 2-2, p. 20] (emphasis added).  Paragraph 10 makes clear that the Protective

Order prohibits disclosure of Protected Material outside of the methods set forth in

the Protective Order:

> Except with the prior written consent of the person asserting "CONFIDENTIAL" OR "CONFIDENTIAL – ATTORNEYS' EYES ONLY" treatment, or in accordance with a prior order of the Court after notice, **any Protected Material, <u>and any information contained in, or derived from Protected Material</u>** (including, but not limited to, all deposition, examination or hearing testimony that refers, reflects, or otherwise discusses any information designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY") **may not be disclosed other than in accordance with this Protective Order.**

[R2 2-2, p. 21] (emphasis added).

7

Importantly, Paragraph 6 of the Protective Order prescribes a simple procedure for challenging designations of "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY."  [R2 2-2, pp. 12-15].

**C. Disclosure of Protected Material in Violation of the Protective Order.**

In response to discovery requests, the Debtor produced to the Committee certain highly confidential documents that were marked "CONFIDENTIAL" pursuant to the Protective Order.  [R2 2-3, p. 51].  In January 2022, the Debtor discovered that sensitive and highly confidential information contained in documents designated as "CONFIDENTIAL" that recently had been produced to the Committee had been wrongfully disclosed by a then-unknown person to third parties and the media in violation of the Protective Order.  [R2 2-3, pp. 52-55].  As a result, on January 20, 2022, the Debtor filed a sealed motion with the Bankruptcy Court entitled *Debtor's Motion for Entry of an Order: (A) Compelling the Tort Committee and/or its Counsel to Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanctions for Violation of Protective Order* (the "**Sealed Motion to Compel**") [R2 2-3, pp. 46-58; SR2 2-15, pp. 1-11].[8]

The Bankruptcy Court, in its discretion, held sealed status conferences with counsel for the Debtor and the Committee on January 27, 2022 [R2 2-4, p. 4],

___

[8] As further explained below, pursuant to an Order dated October 11, 2022 [R2 2-11, pp. 166-67], the Bankruptcy Court *sua sponte* unsealed the Sealed Motion to Compel and entered a redacted copy in the record.  [R2 2-3, pp. 46-58].

February 11, 2022 [R2 2-11, pp. 168-220], March 11, 2022 [R2 2-11, pp. 221-53], and April 14, 2022 [R2 2-11, pp. 254-329] to discuss the apparent breach of the Protective Order raised in the Sealed Motion to Compel.[9]  Counsel for the Debtor and the Committee both indicated that they did not know who was responsible for the apparent breach[10] and agreed as an initial matter to issue discovery to confirm if there was a breach, and if so, who was responsible.  [R2 2-7, p. 23; R2 2-11, p. 220].

Discovery responses received from a local high school in April 2022 confirmed that there may have been a breach of the Protective Order, as the responses revealed that Mr. Trahant had contacted the principal of the school multiple times regarding Protected Material.  [R2 2-11, pp. 254-58; SR1 pp. 642-50].  Shortly thereafter, on April 13, 2022, the Committee filed under seal a submission regarding the Sealed Motion to Compel, purportedly to demonstrate that the Committee, its members, and their individual counsel (including Mr. Trahant) had no knowledge of a breach of the Protective Order.  [R2 2-6, pp. 142-44; R2 2-7, pp. 1-13].  That submission included the *Declaration of Richard C. Trahant* dated April 12, 2022 (the "**Trahant Declaration**"), wherein Mr. Trahant declared that, based on confidential information and documents produced by the Debtor to the

---

[9] On October 11, 2022, the Bankruptcy Court *sua sponte* unsealed the Transcripts of Status Conferences held on February 11, 2022, March 11, 2022, and April 14, 2022 and entered redacted copies in the record.  [R2 2-11, pp. 168-329].

[10] [R2 2-11, pp. 200:22-201:22, 236:19-237:6].

Committee in discovery, he contacted his cousin who is the principal of the local high school regarding a priest assigned to the school.  [R2 2-11, pp. 330-33].[11] However, Mr. Trahant also declared that he "did not provide any 'confidential' documents to or discuss the contents of any 'confidential' documents with" officials at the local high school and "did not disclose or disseminate any documents marked in any way confidential, the contents of documents, or any other information produced by the Debtor to" anyone affiliated with local newspapers.  [R2 2-11, pp. 332-33, ¶¶ 10 & 15].

### D. The UST Investigation.

On April 25, 2022, the Bankruptcy Court issued an Order (the "**April 25, 2022 Order**"), directing the UST to conduct an independent investigation.  [R2 2-7, pp. 22-24].  After reviewing the discovery responses and other information regarding the alleged Protective Order violation, the Bankruptcy Court was

> very concerned about the possibility of intentional dissemination of highly confidential information in violation of this Court's Protective Order, as well as the timing of any such breach, and the negative impact it has on the functioning of the Committee, the rights of parties in interest in the bankruptcy process, and the ability of the parties in this case to proceed in good-faith mediation of claims asserted against the estate.

---

[11] On October 11, 2022, the Bankruptcy Court *sua sponte* unsealed the Trahant Declaration and entered a redacted copy in the record.  [R2 2-11, pp. 330-33].

[*Id.*, p. 23].   The Bankruptcy Court ordered the UST to complete its investigation

and file "under seal" a Statement of Position on or before June 3, 2022.  [*Id.*].

On June 3, 2022, the UST submitted to the Bankruptcy Court a report under

seal, as ordered (the "**UST Report**").  [R2 2-7, p. 263; SR1 pp. 492-4587].[12]  The

UST Report included the following attachments:

> 78 sworn declarations; 18 transcripts of sworn examinations provided under Rule 2004 of the Federal Rules of Bankruptcy Procedure; one transcript and one summary of two unsworn telephonic interviews; and numerous documents produced to the UST pursuant to Rule 2004, including relevant telephone and text message logs, electronic transaction reports, and e-mail and letter correspondence.

[R2 2-7, p. 266].[13]  Among those attachments were Mr. Trahant's responses to the

UST's written discovery requests [R2 2-11, p. 413] and a transcript of Mr. Trahant's

sworn examination pursuant to Bankruptcy Rule 2004 [R2 2-11, pp. 334-99; SR1

---

[12] The UST Report and its attachments remain under seal because they are "voluminous and replete with Protected Material."  [R2 2-11, p. 412 n.8].

[13] A bankruptcy court may authorize the UST to conduct discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") or § 105(a) of the Bankruptcy Code to elicit information regarding potentially sanctionable conduct.  *See, e.g.*, *In re Wilson*, 413 B.R. 330, 336 (Bankr. E.D. La. 2009) (denying motions to quash the UST's discovery requests in connection with a *sua sponte* Order to Show Cause).  Here, the UST Report reflects the UST's factual findings based on discovery and examinations conducted pursuant to Bankruptcy Rule 2004.  The Bankruptcy Court, therefore, was entitled to rely upon that information in issuing both the June 7, 2022 Order and the October 11, 2022 Opinion, as defined below.  For a further discussion of the admissibility of the UST Report, *see infra* note 20.

pp. 3587-878].[14]   The UST Report found, among other things, that (i) Mr. Trahant had read and was bound by the Protective Order; (ii) he knew that he was bound by the Protective Order; and (iii) beginning on December 31, 2021, he directly violated the Protective Order by providing, on multiple occasions, confidential information he received to third parties and the media.  [R2 2-7, p. 266; SR1 pp. 493-532].

### E. The Bankruptcy Court's June 7, 2022 Order.

On June 7, 2022, after reviewing the UST Report and its attachments, the Bankruptcy Court entered an Order (the "**June 7, 2022 Order**"), concluding that Mr. Trahant's testimony and certain documents attached to the UST Report support the UST's findings that Mr. Trahant violated the Protective Order.  [R2 2-7, pp. 264-68].  The Bankruptcy Court also found that Mr. Trahant's breach of the Protective Order was "knowing and willful" and, therefore, "clearly disqualifies him from further receiving Protected Material in this case and participating in any confidential Committee proceedings, including meetings, deliberations, and mediation." [*Id.*, pp. 266-67].

As a result of those findings, the Bankruptcy Court explained, it was faced with a Hobson's choice:

> To be sure, Trahant has never served as a member of the Committee; yet, as personal counsel to individual

---

[14] On October 11, 2022, the Bankruptcy Court *sua sponte* unsealed Mr. Trahant's deposition transcript (the "**Trahant Deposition Transcript**") and entered a redacted copy in the record.  [R2 2-11, pp. 334-99].

> Committee members, Trahant and his team of co-counsel received confidential information from the Debtor. The Court acknowledges that individual Committee members may retain the attorney of their choosing to represent their personal interests in this chapter 11 case and have chosen Trahant and his group. This Court certainly has no intention of invading the attorney-client privilege to modulate the communications between those Committee members and their attorneys; indeed, any attempt to regulate or stop the flow of information or candor that must exist between a client and her attorney is not only a futile endeavor, but would offend a fundamental facet of effective legal representation. Thus, an impasse has been reached.

[*Id.*, p. 267].   Accordingly, rather than deprive Mr. Trahant's clients of counsel of their choice, the Bankruptcy Court directed the UST to relieve the four members of the Committee represented by Mr. Trahant from service on the Committee.  [*Id.*, p. 268].   That same day, the UST filed a *Notice of Appointment of Reconstituted Official Committee of Unsecured Creditors* [R2 2-7, p. 269], thereby removing the four members who are individually represented by Mr. Trahant, and leaving on the Committee the two members who are not individually represented by Mr. Trahant.[15]

On June 10, 2022, Mr. Trahant filed a Notice of Appeal of the June 7, 2022 Order [R1 33-2, pp. 569-71], thereby initiating Civil Action No. 22-1740 ("**Mr. Trahant's First Appeal**").  As discussed *supra*, Mr. Trahant's Notice of Appeal did

---

[15] On June 21, 2022, the UST filed another *Notice of Appointment of Reconstituted Official Committee of Unsecured Creditors* [R2 2-13, pp. 779-80], adding three new members to the Committee.

not divest the Bankruptcy Court of jurisdiction over issues concerning the Protective Order violation because the June 7, 2022 Order was not immediately appealable.

### F.  The Show-Cause Order and the Show-Cause Hearing.

On June 13, 2022, the Bankruptcy Court, on its own motion, issued an Order to Show Cause (the "**Show-Cause Order**") that directed Mr. Trahant to appear and show cause (the "**Show-Cause Hearing**") as to why he should not be sanctioned for his willful violation of the Protective Order and granted him access to the UST Report and all exhibits.  [R2 2-8, pp. 29-31].  The Show-Cause Order also instructed counsel for the Debtor and the Committee to submit invoices identifying professional time spent on services related to the Sealed Motion to Compel.  [R2 2-8, p. 31].  As ordered, professionals of the Debtor and the Committee submitted invoices identifying that a total of $760,884.73 in attorneys' fees and costs was incurred in rendering such services.  [R2 2-11, pp. 416-17].

On August 8, 2022, Mr. Trahant filed an objection to the Show-Cause Order, arguing that the June 7, 2022 Order violated his right to due process of law.  [R2 2-11, pp. 27-36].  Mr. Trahant did not object to the reasonableness of the invoices filed in response to the Show-Cause Order.  [*Id.*].

The Bankruptcy Court held the Show-Cause Hearing on August 22, 2022, during which Mr. Trahant was represented by counsel and offered sworn testimony. [R2 2-11, pp. 81-141].  Once again, Mr. Trahant lodged no objection to the invoices

14

submitted in response to the Show-Cause Order.  [*Id.*].  After receiving Mr. Trahant's

testimony and considering the record and the arguments of counsel, the Bankruptcy

Court took the matter under advisement.  [R2 2-11, p. 140].

### G. The October 11, 2022 Order and October 11, 2022 Opinion.

On October 11, 2022 (the "**October 11, 2022 Order**") [R2 2-11, pp. 166-67],

the Bankruptcy Court *sua sponte* unsealed and provided redacted copies of the

following documents:

i.  The Debtor's Sealed Motion to Compel [R2 2-3, pp. 46-58];

ii.  Transcripts of Status Conferences held on February 11, 2022, March 11, 2022, and April 14, 2022 [R2 2-11, pp. 168-220, 221-53, 254-329];

iii.  The Trahant Declaration [R2 2-11, pp. 330-33];

iv.  The Trahant Deposition Transcript [R2 2-11, pp. 334-99]; and

v.  Transcript of Show-Cause Hearing held on August 22, 2022 [R2 2-11, pp. 81-141].

The Bankruptcy Court explained that these documents had been filed under seal at

the request of the Debtor or the Committee or on the Bankruptcy Court's own motion

and that redacted copies were being provided "to shield Protected Material . . . and

to protect persons with respect to scandalous or defamatory matter or other unlawful

injury pursuant to 11 U.S.C. §§ 107(b)(2) and 107(c)."  [R2 2-11, p. 166].[16]

---

[16] In arguing that this Court should unseal the appellate record [Rec. Doc. 79, pp. 18-20], Mr. Trahant ignores that the Bankruptcy Court has unsealed and provided redacted copies of hundreds of pages of documents included in the appellate record.  Mr. Trahant also disregards the

That same day, based on the record evidence, including the UST Report and

Mr. Trahant's testimony at the Show-Cause Hearing, the Bankruptcy Court issued a

---

statutory framework applicable to document access in bankruptcy cases, as well as the Bankruptcy Court's factual finding regarding the documents at issue.

"In the bankruptcy context, the right of public access is codified in a specific statutory provision, 11 U.S.C. § 107." *In re Blake*, 452 B.R. 1, 7 (Bankr. D. Mass. 2011) (internal citations omitted). Section 107(a) provides: "Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). Section 107(b), in turn, recognizes exceptions to the right of access:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b). "Because § 107 speaks directly to the question of public access, . . . it supplants the common law for purposes of determining public access to papers filed in a bankruptcy case." *In re Blake*, 452 B.R. at 7 (internal citations omitted); *see also Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop of Portland)*, 661 F.3d 417, 431 (9th Cir. 2011) ("Because § 107 speaks directly to and conflicts with significant aspects of the common law right of access, we join our sister circuits in holding that § 107 preempts the common law right of access in bankruptcy proceedings."). "While sealing is the exception rather than the rule, the decision whether to seal bankruptcy court records ***lies within the discretion of the bankruptcy court***." *In re Fibermark, Inc.*, 330 B.R. 480, 506 (Bankr. D. Vt. 2005) (emphasis added).

The UST Report and its exhibits include, among other things, the names of sexual abuse claimants and details of their abuse. During the Show-Cause Hearing, *after having reviewed the UST Report and its exhibits*, the Bankruptcy Court made a specific finding that the UST Report is under seal because it contains "scandalous" and "defamatory" information pursuant to § 107(b)(2) of the Bankruptcy Code. [R2 2-11, pp. 98:19-99:2]. The Bankruptcy Court did not abuse its discretion in sealing the UST Report and its exhibits because it reasonably determined that they contain "scandalous or defamatory" material pursuant to the applicable legal framework—§ 107 of the Bankruptcy Code. *See Vantage Health Plan v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019) ("The deferential abuse-of-discretion standard is violated when [the court's] ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence.") (citations and quotations omitted).

#101013190v7

Memorandum Opinion and Order (the "**October 11, 2022 Opinion**"), for the first time imposing sanctions against Mr. Trahant in the form of attorneys' fees and costs. [R2 2-11, pp. 400-29].  The Bankruptcy Court explained that the evidence presented at the Show-Cause Hearing "reconfirmed" its initial finding based on the record and the UST Report and established by clear and convincing evidence that Mr. Trahant violated the Protective Order.  [R2 2-11, p. 425].  The evidence also revealed that Mr. Trahant's "subsequent evasion and failure to provide information timely to counsel for the Committee and the Debtor regarding his own conduct constitute bad-faith actions which caused the Debtor, the Committee, and the UST to divert and expend resources unnecessarily to uncover information that Trahant had all along." [R2 2-11, pp. 425-26].

Pointing to the "clear language of the Protective Order" and the fact that Mr. Trahant is a "seasoned attorney" who owed a fiduciary duty to the Committee's constituency that required him to hold information in confidence, the Bankruptcy Court imposed sanctions in the form of attorneys' fees and expenses

> pursuant to Rule 37, its inherent authority, and § 105 of the Bankruptcy Code . . . to serve as a deterrent for any attorney or law firm who might be tempted to violate the Court's discovery orders, but also to preserve the integrity of the bankruptcy process and protect it from abuse.

[R2 2-11, p. 426].  Specifically, the Bankruptcy Court assessed sanctions in the amount of $400,000.00, which is approximately 53% of $760,884.73, the total

amount of attorneys' fees and expenses incurred by professionals of the Debtor and the Committee in responding to the Sealed Motion to Compel and investigating the Protective Order violation that Mr. Trahant had attempted to conceal.  [R2 2-11, p. 428].

### H. Mr. Trahant's Second Appeal.

On October 21, 2022, Mr. Trahant filed a Notice of Appeal of the October 11, 2022 Opinion [R2 2-11, pp. 430-32], thereby initiating Civil Action No. 22-4101 ("**Mr. Trahant's Second Appeal**," and together with Mr. Trahant's First Appeal, the "**Appeals**").  The Bankruptcy Court subsequently approved Mr. Trahant's appeal bond and stayed the October 11, 2022 Opinion pending the resolution of Mr. Trahant's Second Appeal.  [R2 2-11, p. 460].

On February 10, 2023, this Court consolidated the Appeals, finding that they involve "identical parties and intertwined fundamental factual and legal issues." [Rec. Doc. 76].

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court did not violate Mr. Trahant's right to due process of law.  The June 7, 2022 Order did not impose a sanction and, therefore, did not implicate due process considerations.  Importantly, the Bankruptcy Court issued the Show-Cause Order naming Mr. Trahant [R2 2-8, pp. 29-31] and held the Show-Cause Hearing, during which Mr. Trahant offered sworn testimony and was

18

represented by counsel [R2 2-11, pp. 81-141], before imposing sanctions against him in the form of attorneys' fees and costs.  Although not required, Mr. Trahant also had notice and an opportunity to defend himself before the Bankruptcy Court issued the June 7, 2022 Order.  Mr. Trahant knew for several months that he was a potential target of an investigation seeking to determine who violated the Protective Order, and he participated in the UST's investigation, producing evidence in his defense.

Additionally, the Bankruptcy Court did not abuse its discretion or clearly err in finding that Mr. Trahant knowingly violated the Protective Order because that finding was supported by extensive factual findings contained in the UST Report, as well as admissions in Mr. Trahant's own sworn statements and documents produced to the UST, and was reconfirmed by Mr. Trahant's testimony at the Show-Cause Hearing.

The Bankruptcy Court also did not abuse its discretion in sanctioning Mr. Trahant for $400,000.00—approximately 53% percent of the attorneys' fees and expenses incurred by Debtor and Committee professionals in investigating the breach of the Protective Order that Mr. Trahant had attempted to conceal.  The Bankruptcy Court made a specific finding of bad faith and found by clear and convincing evidence that Mr. Trahant violated the Protective Order.  Weighing Mr. Trahant's untenable excuses for violating the Protective Order against the waste of time and resources caused by his failure to come forward, the Bankruptcy Court

#101013190v7

determined that sanctions in the form of attorneys' fees and expenses were necessary to serve as a deterrent and to protect the integrity of the bankruptcy process. The Bankruptcy Court, moreover, properly calculated the sanctions award by applying the lodestar analysis and independently reviewing for reasonableness the invoices submitted in response to the Show-Cause Order. Finally, a compensatory payment of roughly one-half of the attorneys' fees and expenses charged to the Debtor's estate as a result of Mr. Trahant's misconduct constitutes a reasonable, civil contempt sanction that the Bankruptcy Court was authorized to impose.

## ARGUMENT

### A. Legal Standards.

The Bankruptcy Court has a statutory grant of authority under § 105(a) of the Bankruptcy Code "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Pursuant to § 105(a), a bankruptcy court is not precluded "from, sua sponte, taking any action or making any determination necessary or appropriate **to enforce or implement court orders** or rules, **or to prevent an abuse of process**." *Id.* (emphasis added). The Fifth Circuit has held that § 105(a) empowers bankruptcy courts to issue civil contempt orders. *See Placid Refin. Co. v. Terrebonne Fuel & Lube (In re Terrebonne Fuel & Lube)*, 108 F.3d 609, 613 (5th Cir. 1997) (per curiam).

Additionally, "[f]ederal courts have inherent powers which include the authority to sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of their dockets." *Carroll v. Abide (In re Carroll)*, 850 F.3d 811, 815 (5th Cir. 2017) (citations omitted). "The Fifth Circuit has held that the imposition of sanctions using § 105 as well as the inherent power of the Court must be accompanied by a specific finding of bad faith." *In re Bradley*, 495 B.R. 747, 793 (Bankr. S.D. Tex. 2013) (citing *Knight v. Luedtke (In re Yorkshire, LLC)*, 540 F.3d 328, 332 (5th Cir. 2008); *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999); *In re Paige*, 365 B.R. 632, 638 (Bankr. N.D. Tex. 2007)).

Moreover, Federal Rule of Civil Procedure 37(b), made applicable to bankruptcy proceedings by Federal Rules of Bankruptcy Procedure 7026 and 9014, allows courts to impose sanctions for the failure to comply with discovery orders. The Fifth Circuit has held that violations of protective orders are sanctionable pursuant to Rule 37(b)(2)(A). *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486, 489-90 (5th Cir. 2012). Rule 37(b)(2) "authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Id.* at 488 (citing *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983)). Although district courts have "broad discretion under Rule 37(b) to fashion remedies suited to the misconduct," usually "a finding of bad faith or willful misconduct [is required] to

support the severest remedies under Rule 37(b) — striking pleadings or dismissal of a case." *Id.* (quoting *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990)). "Lesser sanctions," such as imposition of attorneys' fees and expenses, "do not require a finding of willfulness." *Id.* at 488-89 (citing *Chilcutt v. United States*, 4 F.3d 1313, 1320 n.17, 1323 n.23 (5th Cir. 1993)).

"Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980). "Sanctions are proper where clear and convincing evidence indicates '(1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court order.'" *Shaw v. Ciox Health LLC*, No. 19-14778, 2021 U.S. Dist. LEXIS 213328, *7 (E.D. La. Nov. 4, 2021) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir. 2002)).

"The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). In the context of a civil contempt proceeding, a party is not denied due process if he receives "the constitutionally required notice and an opportunity to be heard before being sanctioned." *See Placid Refin.*, 108 F.3d at 613-14.

**B. The Bankruptcy Court Did Not Violate the Due Process Clause in Finding that Mr. Trahant Violated the Protective Order, Nor Did it Abuse its Discretion in Making that Finding.**

Mr. Trahant is not entitled to a finding that the Bankruptcy Court deprived him of due process of law or abused its discretion in finding that he violated the Protective Order.

**a. The Bankruptcy Court Issued the Show-Cause Order and Held the Show-Cause Hearing Before Imposing Sanctions; the June 7, 2022 Order Is Not a Sanction.**

Here, Mr. Trahant was not deprived of due process of law because the Bankruptcy Court issued the Show-Cause Order and held the Show-Cause Hearing before imposing sanctions against him.[17]  Mr. Trahant appears to argue that the June 7, 2022 Order—(1) disqualifying him from participating in Committee proceedings, and (2) ordering the UST to remove his clients from the Committee—imposed sanctions against him and/or his clients.  [Rec. Doc. 79, pp. 28-29].  However, neither of these constitutes a sanction.  Mr. Trahant's clients did not have a right to

---

[17] At the beginning of the Show-Cause Hearing, the Bankruptcy Court summarized the procedural posture as follows:

> All right. So as everybody here knows, we're here today on an order to show cause. The Court issued it after, after I had read the independent report of the United States Trustee. I made some decisions, issued a couple of orders, and then issued this order to show cause. **Of course, no sanctions have been awarded yet.** That's what we're here to talk about today.

[R2 2-11, pp. 88:21-89:2] (emphasis added).

#101013190v7

serve on the Committee, as an unsecured creditor who is excluded from a creditors'

committee "can protect its pecuniary interests in a variety of other ways." *See In re*

*Victory Mkts., Inc.*, 195 B.R. 9, 17 (N.D.N.Y. 1996).   The Bankruptcy Code,

furthermore, permits the involuntary removal of members from a committee.  Such

a determination must be made on a case-by-case basis, and no hard and fast rules

apply.  *See* 7 Collier on Bankruptcy ¶ 1102.05[3] (16th ed. 2022) (citations omitted).

Even more tenuous is Mr. Trahant's nonexistent right to participate in Committee

proceedings as a non-member who only participated in Committee business at the

discretion of the Committee.  To say that Mr. Trahant was sanctioned by his clients'

removal from the Committee is a gross mischaracterization of the Committee

membership process under bankruptcy law.

Indeed, Mr. Trahant was not sanctioned ***in any way*** until the Bankruptcy Court

issued the October 11, 2022 Opinion, assessing attorneys' fees and costs against him.

[R2 2-11, p. 426].   The October 11, 2022 Opinion was issued only ***after*** the

Bankruptcy Court performed the following steps:

- issued the Show-Cause Order that, among other things, directed Mr. Trahant to appear and show cause as to why he should not be sanctioned for his willful violation of the Protective Order and granted him access to the UST Report and all exhibits [R2 2-8, pp. 29-31];

- afforded Mr. Trahant an opportunity to submit a written response to the Show-Cause Order [R2 2-11, pp. 27-36];

- held the Show-Cause Hearing, during which Mr. Trahant offered sworn testimony and was represented by counsel [R2 2-11, pp. 81-141]; and

- concluded that "[t]he evidence presented at the show-cause hearing reconfirmed" its finding that Mr. Trahant violated the Protective Order.  [R2 2-11, pp. 425-28].

Mr. Trahant's civil contempt proceeding, therefore, is readily distinguishable from the cases cited in his brief where district court orders imposing sanctions were vacated.  In *Goldin v. Bartholow*, the Fifth Circuit reversed a district court order requiring a trustee to personally pay certain trust expenses because there was "nothing in the record which would give any notice to [the trustee] that he might be held *personally* liable as a sanction for his conduct."  166 F.3d 710, 722-23 (5th Cir. 1999) (emphasis in original).

Similarly, in *Waste Management of Washington, Inc. v. Kattler,* the Fifth Circuit vacated a district court's contempt finding and imposition of sanctions as to an attorney where the court issued notice of a show-cause hearing that referred only to the attorney's client.  776 F.3d 336, 337-41 (5th Cir. 2015).  There, the district court's contempt finding was made contemporaneously with the imposition of monetary sanctions.  *See Waste Mgmt. of Wash., Inc. v. Kattler*, No. 12-3454, 2013 U.S. Dist. LEXIS 190163, *18 (S.D. Tex. Mar. 28, 2013), *vacated*, 76 F.3d 336 (5th Cir. 2015); *see also Test Masters Educ. Servs. v. Robin Singh Educ. Servs.*, 799 F.3d 437, 442, 451, 455-57 (5th Cir. 2015) (vacating district court's finding of contempt as to an attorney who was simultaneously found in contempt and ordered incarcerated); *McGuire v. Sigma Coatings, Inc.,* 48 F.3d 902, 906-08 (5th Cir. 1995)

(vacating for lack of personal jurisdiction district court order imposing sanctions on defendant's in-house counsel where the court "had not issued a show cause or similar order or process that would have put [the attorney] on notice that **sanctions** were being considered against him personally") (emphasis added).

Here, on the other hand, Mr. Trahant was not sanctioned until after the Bankruptcy Court issued the Show-Cause Order naming Mr. Trahant and held the Show-Cause Hearing, during which he was represented by counsel and offered additional evidence in the form of live testimony.[18]

### b. Alternatively, Mr. Trahant Received Notice and an Opportunity to Defend Himself Before the June 7, 2022 Order Was Entered.

Although not constitutionally required for the reasons discussed above, Mr. Trahant had notice and an opportunity to defend himself before the Bankruptcy Court made its initial finding that he violated the Protective Order.  As detailed below, as of June 7, 2022, Mr. Trahant had been on notice for more than three months that he was a potential target of an investigation seeking to determine who violated the Protective Order, and he participated in the UST's investigation, producing evidence in his defense.

- On January 20, 2022, the Debtor filed the Sealed Motion to Compel.  [R2 2-3, pp. 46-58].  Although it was sealed at that time, the title of the Sealed

---

[18] Notably, in denying Mr. Trahant's *Motion for Emergency Stay of Sanctions Hearing in Bankruptcy Court Pending Appeal of Contempt Order* [Rec. Doc. 12], this Court found that Mr. Trahant had not shown a likelihood of success because he would "be afforded due process by way of the hearing."  [Rec. Doc. 31, p. 5].

#101013190v7

Motion to Compel put Mr. Trahant on notice that the Debtor alleged a violation of the Protective Order and sought to compel the Committee and/or its counsel to answer questions.

- On February 22, 2022, a *Motion to Participate in Discovery* (the "**Motion to Participate**") was filed under seal on behalf of the Committee members and their attorneys, including Mr. Trahant. [R2 2-6, pp. 9-14; SR2 2-15, pp. 139-49]. Accordingly, as of February 22, 2022 at the latest, Mr. Trahant had notice that he was a potential target of the Sealed Motion to Compel.

- The Bankruptcy Court held a public hearing and a public status conference on the Motion to Participate on March 17, 2022 [R2 2-6, pp. 33-67] and April 14, 2022 [R2 2-7, pp. 25-66], respectively. Mr. Trahant attended both. [R2 2-6, pp. 33-67; R2 2-7, pp. 25-66].

- In the meantime, Mr. Trahant offered the Trahant Declaration dated April 12, 2022, in which he admitted certain contacts with his cousin, the principal of the local high school, regarding a priest assigned to the school. [R2 2-11, pp. 330-33].[19]

- The Bankruptcy Court's April 25, 2022 Order directing the UST to conduct an independent investigation further put Mr. Trahant on notice that the Bankruptcy Court was "very concerned about the possibility of intentional dissemination of highly confidential information in violation of th[e] Court's Protective Order." [R2 2-7, pp. 22-24].

- The Debtor withdrew the Sealed Motion to Compel the following day—not because the investigation of the Protective Order violation was complete, but rather, because the UST had taken over the investigation. [R2 2-7, pp. 67-68].

- Thereafter, Mr. Trahant participated in the UST's investigation, submitting written responses to the UST's discovery requests and sitting for a deposition pursuant to Bankruptcy Rule 2004. [R2 2-11, pp. 413-15; R2 2-11, pp. 334-99; SR1 pp. 3587-878].

---

[19] As established by the Bankruptcy Court's findings in the October 11, 2022 Opinion, the Trahant Declaration is misleading at best.

#101013190v7

Based in large part on a review of Mr. Trahant's own testimony offered in connection with the UST's investigation, the Bankruptcy Court issued the June 7, 2022 Order, finding that Mr. Trahant had knowingly and willfully violated the Protective Order.  [R2 2-7, p. 266].

### c. The Evidence Presented at the Show-Cause Hearing "Reconfirmed" the Bankruptcy Court's Finding—and Established by Clear and Convincing Evidence—that Mr. Trahant Violated the Protective Order.

After issuing the Show-Cause Order and affording Mr. Trahant an opportunity to object in writing, the Bankruptcy Court held the Show-Cause Hearing on August 22, 2022.  [R2 2-11, pp. 81-141].  Mr. Trahant argues that the evidentiary record in connection with the Show-Cause Order is limited to his testimony at the Show-Cause Hearing.  [Rec. Doc. 79, pp. 41-42].  Mr. Trahant is mistaken.

The evidentiary record also includes various other documents in the record concerning the Protective Order violation that the Bankruptcy Court considered in rendering the October 11, 2022 Opinion, including:

- the UST Report and its attachments [R2 2-11, pp. 411-15];[20]

---

[20] At the beginning of the Show-Cause Hearing, the Bankruptcy Court informed Mr. Trahant's counsel that it had copies of the UST Report and attachments, and offered to pull up electronic copies during counsel's presentation.  [R2 2-11, pp. 89:21-90:2].

Also during the hearing, Mr. Trahant's counsel objected to the UST Report and its attachments on evidentiary grounds, arguing that they are hearsay and lack trustworthiness and, therefore, should not be "admitted into evidence or relied upon in any manner."  [R2 2-11, pp. 101:5-103:14].  The Bankruptcy Court overruled Mr. Trahant's evidentiary objections, correctly finding that: (a) the UST Report is presumed admissible under Federal Rule of Evidence

28

- transcripts of status conferences held on February 11, 2022, March 11, 2022, and April 14, 2022 [R2 2-11, pp. 409-11]; and

- invoices submitted by professionals of the Debtor and the Committee in response to the Show-Cause Order [R2 2-11, pp. 416-17, 427-28].

In the October 11, 2022 Opinion, the Bankruptcy Court reiterated that its finding in the June 7, 2022 Order was based "primarily upon the factual findings contained in the UST Report—**and in no small part upon Trahant's own sworn statements and the e-mails and text messages that he himself produced to the UST**." [R2 2-11, p. 425] (emphasis added).

As the Bankruptcy Court explained, Mr. Trahant admitted in his deposition testimony that he exchanged "text messages and telephone calls with his cousin on December 31, 2021, and January 3–4, 2022, in which he disclosed the nature of allegations against the priest that he learned through his receipt of confidential documents produced by the Debtor;" the deposition testimony also conclusively demonstrated that Mr. Trahant contacted a reporter with the intent that an article

---

803(8)(A)(iii) because it contains factual findings from a legally authorized investigation; and (b) Mr. Trahant failed to "carry his burden to show that the UST Report is untrustworthy pursuant to Rule 803(8)(B)" because he "presented no evidence at the show-cause hearing to demonstrate the UST Report was biased or prejudiced against him." [R. 2-11, p. 418 n.23].

It is preposterous for Mr. Trahant to argue that the UST Report and its attachments are not part of the evidentiary record when he objected to the competence of such evidence at the Show-Cause Hearing, and the Bankruptcy Court specifically overruled his objections.

would be published about the priest and the Archdiocese.  [R2 2-11, pp. 414-15].

This evidence itself establishes that Mr. Trahant violated the Protective Order.

Mr. Trahant's testimony at the Show-Cause Hearing further "reconfirmed" the Bankruptcy Court's finding that he violated the Protective Order.  [R2 2-11, p. 425].  Significantly, in his testimony, Mr. Trahant conceded that he disclosed the priest's name and the alleged abuse allegations to his cousin and a reporter to "plant a seed" in the hopes that the information would "be exposed."  [R2 2-11, pp. 419-20].  Along the way, the Bankruptcy Court "heard equivocation, deflection, and inconsistency in Trahant's answers" and found that "his answers d[id] not comport with the record and the timeline of events in this case or the actions taken by Committee counsel in investigating the breach."  [R2 2-11, p. 421].

Mr. Trahant challenges the Bankruptcy Court's characterization of his testimony.  [Rec. Doc. 79, pp. 42-48].  But a review of the transcript of the Show-Cause Hearing reveals that the Bankruptcy Court did not clearly err in perceiving equivocation, deflection, and inconsistency in his answers.  When asked when he informed Committee counsel that he had made contact with the local high school, Mr. Trahant:

- equivocated ("I don't know the exact date, your Honor.") [R2 2-11, p. 118:1];

- deflected ("I, I don't think I've been asked that . . . .") [R2 2-11, p. 118:1-2];

- abruptly changed his position as to whether he could recall the exact date ("I probably, I probably could pinpoint that date.") [R2 2-11, p. 118:2-3]; and

- deflected further by changing the subject ("But what, what was compounding the problem . . . .") [R2 2-11, p. 118:3].

Additionally, when the Bankruptcy Court asked Mr. Trahant why he failed to ask for clarification or relief from the Protective Order if he was concerned about reporting a crime, further deflection ensued.  [R2 2-11, pp. 119:10-122:2].  Instead of answering the question, Mr. Trahant provided a non-responsive narrative, stating that he "planted a seed . . . because . . . this stuff needs to be exposed."  [R2 2-11, pp. 119:16-120:24].  Mr. Trahant also complained that he believes the Archdiocese has designated documents as "Confidential" that are not worthy of that designation. [R2 2-11, pp. 121:1-122:2].   Recognizing the circular nature of Mr. Trahant's response, the Bankruptcy Court reminded him that the Protective Order contains a mechanism by which confidentiality designations must be challenged *before* Protected Material is divulged:

> Q     But you understand that the protective order has a process for challenging confidentiality provisions.
>
> A     I, I do.
>
> Q     And you can always come to the Court and move for relief from a protective order if you feel the need to call law enforcement . . . .

[R2 2-11, p. 122:3-8].

The Bankruptcy Court also raised concerns about deflection, equivocation, and inconsistency in Mr. Trahant's deposition testimony.  Indeed, the Bankruptcy Court remarked during the Show-Cause Hearing that Mr. Trahant's deposition testimony was replete with conclusions follows by "buts," whereby he effectively admitted to violating the Protective Order and unsuccessfully attempted to justify his conduct with excuses.  The Bankruptcy Court stated:

> I have a duty and obligation to protect the process and when I read in your testimony, in your deposition testimony that, you know, I hear a lot of, "Yeah, but. Yeah, but. Yeah, I, I planted the seed, but these are bad people. Yeah, I planted the seed, but all of these documents are confidential and that's not the way it's supposed to be." I hear you, but we do have a process for a reason and it's not, it's not okay to take confidential information, even though you don't believe it's confidential, take confidential information and, and use it for a purpose that's outside the purpose to which it was intended.

[R2 2-11, pp. 122:18-123:3].[21]

---

[21] On his quest to deflect and blame-shift, Mr. Trahant makes the nonsensical argument that the Archdiocese waived its right to confidentiality in the information that Mr. Trahant disclosed.  [Rec. Doc. 79, p. 50 n.16].  Of course, the Archdiocese's sharing of certain of its own information with the local high school **_after_** and in response to Mr. Trahant's unauthorized disclosure does not change the fact that Mr. Trahant violated the Protective Order.  Moreover, the local high school signed and agreed to be bound by the Protective Order.  [R2 2-11, p. 409 n.5; R2 2-11, pp. 226:15-227:3].

Citing his own testimony, Mr. Trahant also misrepresents the contents of the UST Report, incorrectly suggesting that the UST did not find any wrongdoing.  [Rec. Doc. 79, p. 51].

Mr. Trahant's challenge to the Bankruptcy Court's finding that "his answers do not comport with the record and the timeline of events in this case or the actions taken by Committee counsel in investigating the breach" [Rec. Doc. 79, pp. 48-49] likewise rings hollow. The Bankruptcy Court, as the finder of fact, reasonably determined that Mr. Trahant's testimony was inconsistent with the timeline of events and the manner in which Committee counsel investigated the breach. In other words, the Bankruptcy Court concluded that if Mr. Trahant properly had informed Committee counsel about what had actually transpired, then there would have been no need for a costly, months-long investigation into the breach of the Protective Order.

Ultimately, the Bankruptcy Court: (a) found, by clear and convincing evidence, that Mr. Trahant violated the Protective Order; and (b) concluded that Mr. Trahant's violation of the Protective Order and subsequent choice to obfuscate his actions warranted a finding of bad faith:

> Trahant's testimony and the record in this case presents clear and convincing evidence that, even though a Protective Order was in place governing the confidential information produced by the Debtor and Trahant was bound by that Protective Order, he nevertheless took confidential information he received through his affiliation with the Committee and used it for his own purposes—not one for which it was intended or protected.

> But Trahant's testimony at the show-cause hearing and the record in this case further reveal that his actions created waste, disrupted the progress in this case, and delayed

33

> resolution of this particular matter for months. Trahant not only disobeyed this Court's Protective Order, but his subsequent evasion and failure to provide information timely to counsel for the Committee and the Debtor regarding his own conduct constitute bad-faith actions which caused the Debtor, the Committee, and the UST to divert and expend resources unnecessarily to uncover information that Trahant had all along.

[R2 2-11, pp. 425-26].

Under these circumstances, the Bankruptcy Court did not violate the Due Process Clause in finding that Mr. Trahant violated the Protective Order, nor did it abuse its discretion or clearly err in making that finding.

### C. The Bankruptcy Court Did Not Abuse its Discretion in Sanctioning Mr. Trahant for Approximately 53% of the Attorneys' Fees and Expenses Incurred By Debtor and Committee Professionals in Investigating the Protective Order Violation.

The Bankruptcy Court imposed sanctions against Mr. Trahant in the form of attorneys' fees and expenses

> pursuant to Rule 37, its inherent authority, and § 105 of the Bankruptcy Code . . . to serve as a deterrent for any attorney or law firm who might be tempted to violate the Court's discovery orders, but also to preserve the integrity of the bankruptcy process and protect it from abuse.

[R2 2-11, p. 426]. At no time during the course of the sanctions proceedings did Mr. Trahant object to the invoices submitted in response to the Show-Cause Order. Although Mr. Trahant now lodges various challenges to the Bankruptcy Court's imposition of sanctions, all of those arguments lack merit.

#101013190v7

As an initial matter, the Bankruptcy Court's imposition of sanctions under Rule 37, its inherent authority, and § 105 of the Bankruptcy Code was appropriate because, as discussed above, the Bankruptcy Court made a specific finding of bad faith and found by clear and convincing evidence that Mr. Trahant violated the Protective Order. *See supra*, pp. 33-34.[22]

"A party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2021 U.S. Dist. LEXIS 175207, *3 (E.D. La. Sept. 15, 2021) (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)).  Here, the Bankruptcy Court reasonably found that Mr. Trahant's "subsequent evasion and failure to provide information timely to counsel for the Committee and the Debtor regarding his own conduct constitute ***bad-faith actions*** which caused the Debtor, the Committee, and the UST to divert and expend resources unnecessarily to uncover information that Trahant had all along." [R2 2-11, pp. 425-26] (emphasis added).

---

[22] *See also In re Bradley*, 495 B.R. 747, 793 (Bankr. S.D. Tex. 2013) ("The Fifth Circuit has held that the imposition of sanctions using § 105 as well as the inherent power of the Court must be accompanied by a specific finding of bad faith.") (citations omitted); *Shaw v. Ciox Health LLC*, No. 19-14778, 2021 U.S. Dist. LEXIS 213328, *7 (E.D. La. Nov. 4, 2021) ("Sanctions [under Rule 37] are proper where clear and convincing evidence indicates (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court order.") (internal citations and quotations omitted).

#101013190v7

Adhering to his pattern of deflection and blame-shifting, Mr. Trahant argues, disingenuously, that he "attempted to disclose what he had done, both by requesting to attend status conferences on this issue and by filing a motion, but the Bankruptcy Court would not permit it." [Rec. Doc. 79, p. 54; *see also* pp. 21-22]. Of course, Mr. Trahant did not need an invitation from the Bankruptcy Court to disclose what he had done. As detailed below, the record reflects that Mr. Trahant had countless opportunities to come forward but, instead, made the deliberate decision to withhold information concerning his conduct and point the finger elsewhere in an effort to conceal his actions.

- Mr. Trahant, through his co-counsel, contacted the Bankruptcy Court's chambers via email to request permission to attend a status conference to be held on February 11, 2022. Rather than disclosing Mr. Trahant's conduct, the email stated that discovery should be pursued against the *Debtor*. [R2 2-11, p. 133:1-5; SR1 p. 4588].

- On February 22, 2022, the Motion to Participate was filed on behalf of the Committee members and their attorneys, including Mr. Trahant. The Motion to Participate, likewise, did not disclose Mr. Trahant's conduct. [R2 2-6, pp. 9-14; SR2 2-15, pp. 139-49].

- On March 17, 2022, the Bankruptcy Court held a public hearing on the Motion to Participate. [R2 2-6, pp. 33-67]. Mr. Trahant made an appearance at that hearing but remained silent while counsel for the Committee members and their attorneys argued that they did not "think it's appropriate to have a deposition or -- excuse me -- discovery propounded upon committee members and, potentially, their state court counsel as well without any reciprocal discovery going the other way." [R2 2-6, p. 42:25-43:3].[23]

---

[23] Although the Bankruptcy Court did not rule on the Motion to Participate or otherwise authorize the Committee members and their individual attorneys to propound discovery upon the

- A month later, Mr. Trahant offered the Trahant Declaration dated April 12, 2022, in which he admitted certain contacts with his cousin, the principal of the local high school, regarding a priest assigned to the school.  [R2 2-11, pp. 330-33].  But Mr. Trahant falsely insisted that he "did not provide any 'confidential' documents to or discuss the contents of any 'confidential' documents with" officials at the local high school and "did not disclose or disseminate any documents marked in any way confidential, the contents of documents, or any other information produced by the Debtor to" anyone affiliated with local newspapers.  [R2 2-11, pp. 332-33, ¶¶ 10 & 15].

- On April 14, 2022, the Bankruptcy Court conducted a public status conference on the Motion to Participate.  [R2 2-7, pp. 25-66].  Once again, Mr. Trahant made an appearance but otherwise remained silent.  [*Id.*].

Invoking Fifth Circuit opinions decided under Federal Rule of Criminal Procedure 16, Mr. Trahant next asserts that

> a district court must consider four factors in exercising its "broad discretion when deciding whether to impose sanctions for discovery violations:" "(1) why disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances."

[Rec. Doc. 79, p. 54] (quoting *United States v. Swenson,* 894 F.3d 677, 684 (5th Cir. 2018) (quoting *United States v. Garrett,* 238 F.3d 293, 298 (5th Cir. 2000)).  The Archdiocese questions the applicability of such factors to a civil, bankruptcy proceeding.  Nevertheless, insofar as it was required to do so, the Bankruptcy Court

---

Debtor, the UST propounded discovery upon and deposed Debtor representatives during the course of its independent investigation.  [R2 2-11, pp. 411-12].

appropriately weighed Mr. Trahant's proffered excuses for violating the Protective Order against the harm caused by his misconduct.  [R2 2-11, pp. 425-26].

As for prejudice, the Bankruptcy Court found that Mr. Trahant's failure to come forward "created waste, disrupted the progress in this case, and delayed resolution of this particular matter for months," as he caused the Debtor, the Committee, and the UST to embark on a quest for information that he had all along. [*Id.*].  With respect to the reason for the violation, the Bankruptcy Court rejected as "disingenuous and difficult to accept" Mr. Trahant's assertions that he did not breach the Protective Order.  [R2 2-11, p. 426].  In light of the "clear language of the Protective Order" and the fact that Mr. Trahant is a "seasoned attorney" who owed a fiduciary duty to the Committee's constituency, the Bankruptcy Court determined that sanctions in the form of attorneys' fees and expenses were necessary to serve as a deterrent and to preserve the integrity of the process.  [*Id.*].

After deciding to impose sanctions, the Bankruptcy Court properly calculated the amount of the sanctions award.[24]  "Once a court orders that a party must pay reasonable fees and expenses as a sanction, the lodestar analysis is then used to determine the proper amount of fees 'by multiplying the reasonable number of hours

---

[24] To the extent that Mr. Trahant challenges the reasonableness of the sanctions award, he has waived that argument by failing to raise it before the Bankruptcy Court. *See In re Gilchrist*, 891 F.2d 559, 561 (5th Cir. 1990) ("It is well established that [appellate courts] do not consider arguments or claims not presented to the bankruptcy court.").  In any event, as detailed herein, the Bankruptcy Court did not abuse its discretion in assessing sanctions.

#101013190v7

expended in defending the suit by the reasonable hourly rates for the participating lawyers.'" *In re Oil Spill*, 2021 U.S. Dist. LEXIS 175207, at *4 (quoting *Skidmore Energy v. KPMG,* 455 F.3d 564, 568 (5th Cir. 2006)).  In fashioning the sanctions award here, the Bankruptcy Court correctly applied the lodestar analysis, multiplying the reasonable number of hours expended by Debtor and Committee professionals in investigating the Protective Order violation by the reasonable hourly rates for those professionals.  [R2 2-11, pp. 426-27].

In connection with that process, the Bankruptcy Court independently reviewed the invoices submitted in response to the Show-Cause Order.  [R2 2-11, p. 427].[25]  "Considering the complexities of this matter, including the seriousness of the breach of the Protective Order, as well as the number of attorneys and law firms involved, and the prevailing rates in the home markets of those law firms," the Bankruptcy Court found that the amounts incurred were reasonable.  [R2 2-11, p. 427].

Recognizing that courts in the Eastern District tend to reduce fee awards by 50% as a "substitute for the exercise of proper billing judgment," the Bankruptcy

---

[25] "In determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for non-compensable hours." *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990).  Here, the Bankruptcy Court fulfilled such duty by examining the invoices filed by professionals of the Debtor and the Committee.  [R2 2-11, pp. 416-17, 427-28].

#101013190v7

Court applied a similar reduction.  [*Id.*].  To that end, the Bankruptcy Court imposed sanctions in the amount of $400,000.00, which is approximately 53% of $760,884.73—the total amount of attorneys' fees and expenses incurred by professionals of the Debtor and the Committee in responding to the Sealed Motion to Compel and investigating the Protective Order violation.  [R2 2-11, p. 428].[26]  The Bankruptcy Court explained that, under the circumstances, the sanctions award was narrowly tailored to the particular wrong, as "an award of a percentage of the fees and costs incurred will serve the desired purpose of deterring Trahant and others from engaging in similar misconduct."  [R2 2-11, p. 428].[27]

In *Topalian v. Ehrman*, the Fifth Circuit held that a trial court's findings in ordering sanctions must reflect the following four factors:

---

[26] As the Bankruptcy Court observed, "the figure of $760,884.73 does not reflect the time and resources spent by the UST in completing its very thorough and comprehensive investigation." [R2 2-11, p. 428 n.27].  This figure also does not reflect the devastating impacts on the Chapter 11 Case itself, including the massive disruption in the progress of the Debtor's reorganization.

[27] The law is well-settled that bankruptcy courts have the authority to enter civil contempt orders.  *Musslewhite v. O'Quinn (In re Musslewhite)*, 270 B.R. 72, 78 (S.D. Tex. 2000) (citations omitted).  An "order requiring a contemnor to make a compensatory payment to the other party has consistently been categorized as civil contempt."  *In re Rodriguez*, No. 06-323, 2007 U.S. Dist. LEXIS 11858, *31 (W.D. Tex. Feb. 20, 2007) (citing *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990)).  "Where a civil contempt fine exceeds the actual loss suffered by the complainant, the fine may become punitive in nature, and therefore more appropriate pursuant to a finding of criminal contempt."  *Id.*

Pursuant to § 330(a)(1) of the Bankruptcy Code, the Debtor's estate pays all allowed fees and expenses for professionals of the Debtor as well as the Committee.  Here, a compensatory payment of approximately ***one-half*** of the attorneys' fees and expenses charged to the Debtor's estate as a result of Mr. Trahant's misconduct constitutes a civil contempt sanction.

> (1) *What conduct is being punished or is sought to be deterred by the sanction? . . .* (2) *What expenses or costs were caused by the violation of the rule? . . .* (3) *Were the costs or expenses "reasonable," as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention? . . .* (4) *Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed?*

3 F.3d 931, 936-37 (5th Cir. 1993) (emphasis in original).  As detailed above, the Bankruptcy Court's comprehensive findings in the October 11, 2022 Opinion reflect the following:

1) the sanctions award was designed "to serve as a deterrent for any attorney or law firm who might be tempted to violate the Court's discovery orders" and "to preserve the integrity of the bankruptcy process and protect it from abuse" [R2 2-11, p. 426];

2) a total of $760,884.73 in attorneys' fees and expenses was incurred by professionals of the Debtor and the Committee in responding to the Sealed Motion to Compel and investigating the Protective Order violation [R2 2-11, p. 428];

3) the Bankruptcy Court's independent review of the invoices submitted by professionals of the Debtor and the Committee revealed that the amounts incurred were reasonable [R2 2-11, p. 427]; and

4) the sanctions award was narrowly tailored to the particular wrong because "an award of a percentage of the fees and costs incurred will serve the desired purpose of deterring Trahant and others from engaging in similar misconduct" [R2 2-11, p. 428].

The Bankruptcy Court did not abuse its discretion in deciding to impose sanctions or in carefully crafting its sanctions award.

#101013190v7

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that this Court

affirm both the June 7, 2022 Order and the October 11, 2022 Opinion.

Dated: March 6, 2023            Respectfully submitted,

*/s/ Mark A. Mintz*
MARK A. MINTZ (#31878)
R. PATRICK VANCE (#13008)
ELIZABETH J. FUTRELL (#05863)
EDWARD D. WEGMANN (#13315)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA 70170
Telephone: (504) 582-8368
Email: mmintz@joneswalker.com
Email: pvance@joneswalker.com
Email: efutrell@joneswalker.com
Email: dwegmann@joneswalker.com

***Counsel for Appellee, The Roman Catholic
Church of the Archdiocese of New Orleans***

## CERTIFICATE OF SERVICE

I hereby certify on March 6, 2023 that a true and correct copy of the foregoing

Principal Brief has been served on all counsel of record by operation of the Court's

electronic filing system.

*/s/ Mark A. Mintz*
MARK A. MINTZ

#101013190v7

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because it contains 11,169 words, as determined by the word-count function of Microsoft Word 2016, excluding the parts of the brief exempted by Fed. R. Bankr. P. 8015(g); and

2.   This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated: March 6, 2023

*/s/ Mark A. Mintz*
MARK A. MINTZ (#31878)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, LA 70170
Telephone: (504) 582-8368

***Counsel for Appellee, The Roman Catholic Church of the Archdiocese of New Orleans***

43