UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS | CIVIL ACTION NO: 22-1740 c/w 22-4101 |
| (Bankruptcy No. 20-10846) | SECTION: T (2) |

# OPINION

These consolidated appeals arise out of two Orders, issued by the Bankruptcy Court on June 7, 2022, and October 11, 2022,[1] finding that Appellant, Richard C. Trahant ("Trahant"), violated the court's Protective Order and imposing sanctions against him for disclosing confidential information to third parties. For the reasons below, the Bankruptcy Court's Orders are AFFIRMED.[2]

# BACKGROUND

The underlying Chapter 11 Bankruptcy Proceeding was initiated on May 1, 2020, by Appellee, the Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese").[3] Thereafter, the Office of the United States Trustee ("UST") appointed the Official Committee of Unsecured Creditors (the "Committee") on May 20, 2020.[4] Among those appointed to the Committee, and appearing in the Bankruptcy Proceeding as creditors, were four individuals who filed lawsuits in state court asserting sexual abuse claims against clergy of the Archdiocese.[5]

---

[1] *See* R1 Doc. 1-2 (No. 22-1740) & R2 Doc. 1-2 (No. 22-4101). The Court consolidated these appeals on February 10, 2023, for all purposes. R. Doc. 76 (22-1740). The use herein of "R1 Doc.__" refers to record documents found in Case Number 22-1740 and "R2 Doc.__" refers to record documents found in Case Number 22-4101.

[2] Having examined the briefs and the record, the Court finds that oral argument is unnecessary pursuant to Federal Rule of Bankruptcy Procedure 8019(b)(3).

[3] R2 Doc. 2-11, p. 404.

[4] R2 Doc. 2-1, p. 40.

[5] R2 Doc. 2-2, pp. 1-2.

1

Trahant is counsel of record for each of these four Committee Members in their respective state court actions.[6]

On August 3, 2020, the Bankruptcy Court entered a Protective Order governing the use and disclosure of "Protected Material" produced in discovery.[7] "Protected Material" is defined by the Protective Order as any document produced in discovery that has been designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS EYES ONLY" by the producing party.[8] The producing party may designate a document as "CONFIDENTIAL" when it contains "Confidential Information," meaning "any non-public information provided by a Party wherein such information is not public or available to the general public."[9] Further, the requesting party "shall be responsible for safeguarding all produced materials and information designated as 'CONFIDENTIAL' in accordance with the provisions of th[e] Protective Order."[10] Paragraph 7 of the Protective Order limits the disclosure or dissemination of any "CONFIDENTIAL" materials to purposes related directly to the Bankruptcy Proceeding and expressly prohibits their use "for any other purpose, including without limitation any business, competitive, governmental, commercial, administrative, publicity, press release, marketing, or research purpose or function, or in any other legal case, lawsuit, proceeding, investigation, or otherwise except as expressly provided herein, or as ordered by the Court."[11] Paragraph 9 of the Protective Order defines the prohibited uses of Protected Materials:

> Any Protected Material, and all information derived from Protected Material (including, but not limited to, all testimony, deposition, or otherwise, that refers, reflects or otherwise discusses any

---

[6] R1 Doc. 1-4, p. 3; R2 Doc. 2-2, pp. 1-2.
[7] R1 Doc. 33-2, pp. 23-43. The Protective Order was subsequently amended and supplemented on January 25, 2021, May 24, 2021, and October 18, 2021, to meet the needs of the case as it progressed. *See* R1 Doc. 33-2, pp. 51-71, pp. 110-114, pp. 127-131.
[8] R2 Doc. 2-2, p. 10.
[9] R2 Doc. 2-2, p. 11, ¶ 4.
[10] R2 Doc. 2-2, p. 11, ¶ 4.
[11] R Doc. 2-2, pp.15-16, ¶ 7.

> information designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" under this Protective Order), shall not be used, directly or indirectly, by any person for any business, commercial or competitive purposes, or for any purpose whatsoever other than for Authorized Uses.[12]

Importantly, Paragraph 6 of the Protective Order outlines the procedure for challenging the "CONFIDENTIAL" designation of any materials produced in discovery and having the designation removed, if warranted.[13] To that end, Paragraph 10 emphasizes that any disclosure of Protected Material beyond the methods set forth in the Protective Order is strictly prohibited.[14]

On December 3, 2021, the Archdiocese produced certain "CONFIDENTIAL" materials to the Committee in response to discovery requests in the Bankruptcy Proceeding.[15] The materials contained documents related to proceedings held before the Archdiocese's Internal Review Board ("IRB"), which investigates allegations of sexual abuse made against clergy.[16] On January 4, 2022, during a phone conference, Committee Counsel informed Counsel for the Archdiocese about its concerns that a priest identified in the recently-produced IRB records was currently serving as the chaplain at a local high school and could be a danger to students.[17] The Committee requested that the priest be immediately removed from his position at the school.[18] In turn, Counsel for the Archdiocese contacted its client and learned that the priest had been placed on medical leave and was no longer working at the high school.[19] Counsel for the Archdiocese also learned that an unidentified third party had recently contacted the high school to make it aware of the priest in question, thus indicating that a breach of the Protective Order had apparently occurred.[20]

---

[12] R2 Doc. 2-2, p. 20, ¶ 9.
[13] R2 Doc. 2-2, pp. 12-15, ¶ 6.
[14] R2 Doc. 2-2, p. 21, ¶ 10.
[15] R2 Doc. 2-3, p. 51, ¶ 13.
[16] R2 Doc. 2-3, p. 51, ¶ 13.
[17] R2 Doc. 2-3, p. 51, ¶ 14.
[18] R2 Doc. 2-3, pp. 51-52, ¶¶ 14-15.
[19] R2 Doc. 2-3, p. 52, ¶ 16.
[20] R2 Doc. 2-3, pp. 52-53, ¶ 19.

3

Thereafter, an article appeared on NOLA.com providing details about the priest in relation to the allegations contained in the IRB documents.[21]

On January 20, 2022, the Archdiocese filed a *Motion for Entry of an Order: (A) Compelling the Tort Committee and/or its Counsel to Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanction for Violation of Protective Order* (the "Motion to Compel") on January 20, 2022.[22] The Bankruptcy Court held sealed status conferences with counsel for the Archdiocese and the Committee on January 27, 2022, February 11, 2022, March 11, 2022, and April 14, 2022, to determine the best course of action for identifying the source of the apparent information leak.[23] During the February 11, 2022 status conference, it was decided that joint discovery would be issued to the high school seeking the identity of the individual who had contacted them.[24]

Discovery responses from the high school were received and discussed with the Bankruptcy Court at the April 14, 2022 status conference.[25] The responses revealed that on December 31, 2021, by text message, and on January 4, 2022, by telephone, Trahant contacted the principal of the high school inquiring about the priest at issue and discussed the allegations against him.[26]

The day before that status conference, on April 13, 2022, the Committee filed written declarations under seal, including a declaration by Trahant dated April 12, 2022, to show, ostensibly, that no individual associated with the Committee had any knowledge of, or role in, the leak.[27] In his Declaration, Trahant states that he submitted the Declaration in connection with the

---

[21] R2 Doc. 2-11, p. 403.
[22] R2 Doc. 2-3, pp. 46-58.
[23] *See* R2 Doc. 2-4, p. 4; R2 Doc. 2-11, pp. 168-220, pp. 221-53, and pp. 254-329, respectively.
[24] R2 Doc. 2-11, p. 220.
[25] R2 Doc. 2-11, p. 254.
[26] R2 Doc. 2-11, pp. 256-57.
[27] R2 Doc. 2-6, pp. 142-44; R2 Doc. 2-11, pp. 330-33.

Archdiocese's Motion to Compel and acknowledges that he received and reviewed "most, if not all" of the documents produced by the Archdiocese in the Bankruptcy Proceeding.[28] Trahant's Declaration further states that he "first became aware of the credible finding of the sexual abuse of a minor by [the priest] on or about December 31, 2022" and that he "took it upon [him]self to contact [the high school principal] for what I believed (and still believe) to be a legitimate compelling reason – to protect minors. I wanted to make sure that a priest who admitted to sexually abusing a minor was no longer permitted to be on a high school campus."[29] Trahant admits that his first contact with the high school principal occurred on December 31, 2021, via text message and was followed by conversations beginning on January 4, 2022, with more conversations and text messages thereafter.[30] Despite disclosing the priest's name to the high school principal, a clear violation of the Protective Order, Trahant's Declaration purports to defend his actions by declaring that he:

- did not provide any "confidential" documents to or discuss the contents of any "confidential" documents with [the high school principal];[31]

- did not disclose or disseminate any documents or reveal the contents of any documents to anyone associated with [the high school] regarding [the priest] at any time from December 31, 2021, to the date of this Declaration, nor did I ask or cause any other person to do so;[32]

- did not disclose or disseminate any documents marked in any way confidential, the contents of documents, or any other information produced by the Debtor to [the reporter] or anyone associated with the Advocate, the Times-Picayune, NOLA.com;[33] and

---

[28] R2 Doc. 2-11, pp. 330-31, ¶¶ 2-4.
[29] R2 Doc. 2-11, p. 331, ¶ 7.
[30] R2 Doc. 2-11, p. 332, ¶¶ 9-10.
[31] R2 Doc. 2-11, p. 332, ¶ 10.
[32] R2 Doc. 2-11, p. 332, ¶ 11.
[33] R2 Doc. 2-11, p. 333, ¶ 15.

5

- never provided, disclosed, or disseminated any sealed or confidential documents produced by the Debtor or any information included in those documents to any person other than members of the Committee, their counsel, or the Committee's bankruptcy professionals.[34]

In light of these troubling discoveries, on April 25, 2022, the Bankruptcy Court ordered the UST to investigate the breach and to prepare and submit a report of its findings by June 3, 2022.[35] The UST filed its Report (the "UST Report") under seal with the Bankruptcy Court on June 3, 2022.[36] The UST Report was accompanied by 78 sworn declarations, 18 transcripts of sworn examinations provided under Rule 2004 of the Federal Rules of Bankruptcy Procedure, one transcript and one summary of two unsworn telephonic interviews, and documents produced to the UST pursuant to Rule 2004, including telephone logs, text messages, e-mails, and letters.[37] Trahant's Rule 2004 deposition was among these supporting documents and his testimony, unsurprisingly, revealed additional Protective Order violations.[38]

Trahant was confronted with his Sworn Declaration and the text messages he exchanged with the high school principal during the deposition. Trahant testified that he contacted the principal, who is also his cousin, on December 31, 2021, and inquired about the priest by name.[39] Trahant added that the principal, "immediately knew – simply based on my question, he knew what the inference was."[40] The deposition testimony further confirmed Trahant disclosed the nature of the allegations against the priest in subsequent communications with the principal.[41] Trahant was also questioned about an email that he sent to a local reporter on January 1, 2022.[42]

---

[34] R2 Doc. 2-11, p. 333, ¶ 16.
[35] R2 Doc. 2-7, pp. 22-24.
[36] R1 Doc. 33-2 p. 543 (SEALED); R2 Doc. 2-11, p. 411.
[37] R2 Doc. 2-11, pp. 411-12.
[38] R2 Doc. 2-11, pp. 334-99.
[39] R2 Doc. 2-11, pp. 333-44 (Depo. pp. 36-39).
[40] R2 Doc. 2-11, pp. 344 (Depo. p. 39).
[41] R2 Doc. 2-11, pp. 351-53 (Depo. pp. 66-76).
[42] R2 Doc. 2-11, pp. 345 (Depo. p. 42).

The subject line of the email contained only the name of the priest.[43] The body of the message read: "Keep this guy on your radar. He is currently the chaplain at [the high school]."[44] Trahant testified that he knew the reporter had "been deeply involved in reporting on the clergy abuse crisis" and sent the email for the purpose of "alerting him, without telling him anything, clearly, keep this guy on your radar. This is where he is."[45]

After reviewing the UST Report and accompanying evidence, the Bankruptcy Court issued an Order on June 7, 2022 (the "June 7, 2022 Order"), finding that Trahant had knowingly and willfully violated the Protective Order.[46] The Bankruptcy Court precluded Trahant from further participating in the Bankruptcy Proceeding as personal counsel to Committee members and, as a result, removed his individual clients from serving on the Committee.[47] The June 7, 2022 Order indicated that a separate Order to Show cause would be issued "to determine appropriate sanctions for Trahant's disclosure of confidential information in violation of this Court's Protective Order."[48] Trahant appealed the June 7, 2022 Order to this Court on June 10, 2022.[49]

On June 13, 2022, the Bankruptcy Court issued an Order to Show Cause setting a hearing for Trahant to explain why he should not be sanctioned for violating the Protective Order.[50] The Show Cause Order also required the UST to provide the UST Report and all of its exhibits to Trahant and his counsel in preparation for the hearing.[51] The Show Cause Order further instructed counsel for the Archdiocese and the Committee to compile invoices "identifying attorney and

---

[43] R2 Doc. 2-11, p. 345 (Depo. p. 42).
[44] R2 Doc. 2-11, p. 345 (Depo. pp. 42-43).
[45] R2 Doc. 2-11, p. 345 (Depo. P.43).
[46] R1 Doc. 1-4.
[47] R1 Doc. 1-4.
[48] R1 Doc. 1-4, p. 5.
[49] R1 Doc. 33-2, pp. 569-71.
[50] R1 Doc. 33-2, pp. 586-88.
[51] R1 Doc. 33-2, p. 588.

paralegal time spent on services related to" the Motion to Compel.[52] Trahant filed "Objections to Order to Show Cause and to Imposition of Additional Sanctions" on August 8, 2022.[53] In his objections Trahant argued that the June 7, 2022 Order was improper because he had not been provided with adequate due process before he was found in contempt.[54]

The Show Cause Hearing was held by the Bankruptcy Court on August 22, 2022.[55] During the proceeding, Trahant was represented by counsel, allowed to present argument, evidence, and offered his own testimony under oath.[56] During the hearing, he once again confirmed his contemptuous conduct, but still asserted that he had not violated the Protective Order. At the conclusion of the Show Cause Hearing, the Bankruptcy Court took the matter under advisement.[57]

On October 11, 2022, the Bankruptcy Court issued a Memorandum Opinion and Order (the October 11, 2022 Order) imposing sanctions against Trahant in the amount of $400,000 for his Protective Order violations.[58] Trahant appealed the October 11, 2022 Order to this Court on October 21, 2022.[59]

On February 10, 2023, this Court consolidated the appeals on the grounds that they involve identical parties and intertwined factual and legal issues.[60] The issues raised by Trahant in these consolidated appeals fall under two inquiries: (1) whether Trahant was deprived of adequate procedural due process; and (2) whether the sanctions levied against Trahant were warranted and just.

---

[52] R1 Doc. 33-2, p. 588. The invoices were filed with the Bankruptcy Court from June 23, 2022, to September 14, 2022. *See* R2 Doc. 2-11, p. 417.
[53] R2 Doc. 2-11, pp. 27-36.
[54] R2 Doc. 2-11, pp. 27-36.
[55] R2 Doc. 2-11 pp. 81-141.
[56] R2 Doc. 2-11 pp. 81-141.
[57] R2 Doc. 2-11 p. 140.
[58] R2 Doc. 2-11, pp. 400-429. The Bankruptcy Court reached the $400,000 amount by reducing the $760,884.73 in total fees incurred by counsel for the Archdiocese and Committee by approximately 50%.
[59] R2 Doc. 2-11, pp. 430-32.
[60] R. Doc. 76 (22-1740).

8

## LAW AND ANALYSIS

The Court has jurisdiction over these consolidated appeals under 28 U.S.C. § 158(a)(1) because, collectively, the appeals arise from a final order of contempt and imposing sanctions against Trahant.[61]

When reviewing the findings of a bankruptcy court, the district courts act in their appellate capacity and apply the same standard of review as that of the court of appeals when reviewing a district court's action.[62] A district court reviews findings of contempt and imposition of sanctions for abuse of discretion.[63] A court abuses its discretion when it "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts."[64] The lower court's findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo*.[65] "Whether an alleged contemnor was afforded due process is a question of law…review[ed] *de novo*."[66]

**Trahant Was Provided Ample Due Process**

Trahant contends the June 7, 2022 Order violated his due process rights because he was not provided with notice and the opportunity to be heard before he was found in contempt and precluded from participating in the Bankruptcy Proceeding. "The fundamental requisite of due

---

[61] Although the Archdiocese originally objected to this Court's jurisdiction over Trahant's appeal of the Bankruptcy Court's June 7, 2022 Order, it concedes the objections were remedied when the Court consolidated these appeals. *See* R. Doc. 82, p. 3 (22-1740).
[62] *In re Perry*, 345 F.3d 303, 308 (5th Cir. 2003); *Matter of Glenn*, 900 F.3d 187, 189 (5th Cir. 2018).
[63] *Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 339 (5th Cir. 2015); *Goldin v. Bartholomew*, 166 F.3d 710, 722 (5th Cir. 1999).
[64] *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022) (quoting *Bradley on Behalf of AJW v. Ackal*, 954 F.3d 216, 224 (5th Cir. 2020)).
[65] *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000).
[66] *Waste Mgmt.*, 776 F.3d at 339.

process of law is the opportunity to be heard."[67] Where an alleged contemnor is provided notice and the opportunity to be heard before he is sanctioned, there has been no denial of due process.[68]

Despite taking issue with the June 7, 2022 Order, Trahant acknowledges the Bankruptcy Court was empowered to act *sua sponte* pursuant to 11 U.S.C. § 105(a) to take any action or make "any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."[69] Trahant continues that, regardless of the authority conveyed by § 105(a), the Bankruptcy Court did not have the ability to "punish a person for contempt or impose sanctions without reasonable notice and opportunity for hearing under Fed. R. Bankr. P. 9014(a), notice and a hearing under 11 U.S.C. § 1004(a)(4), or due process of law under the Fifth Amendment to the U.S. Constitution."[70] While the Court agrees with Trahant's recitation of the law on this point, it cannot agree that Trahant was subject to punishment for contempt or assessed with sanctions without notice or the opportunity to defend himself.

A thorough review of the record reveals Trahant was aware of the Protective Order and his obligations to abide by it before the document production in December 2021. Trahant was also aware that an apparent information leak had occurred in early January 2022. Indeed, as counsel for several Committee Members, Trahant provided a sworn declaration stating he did not breach of the Protective Order even though he simultaneously admitted to providing the priest's name to the high school principal. These inconsistent statements within his Declaration represent Trahant's understanding that he could be the "target" of the investigation and a concerted effort to defend his actions and explain why he believed they were permissible. Thereafter, the UST thoroughly

---

[67] *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).
[68] *See In the Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613-14 (5th Cir. 1997) (citing *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821 (1994)).
[69] R. Doc. 79, p. 33 (22-1740).
[70] R. Doc. 79, p. 33 (22-1740) (internal quotes omitted).

investigated the breach, which included written discovery to Trahant and the taking of his deposition. During his deposition Trahant was represented by counsel, who specifically observed that Trahant was "clearly being looked at as a potential person who violated the Court's protective order."[71] The Court finds Trahant's contention that he, an experienced attorney, was not provided sufficient notice or the opportunity to be heard before the June 7, 2022 Order to be disingenuous at best.

The Bankruptcy Court determined, for good reason, that Trahant was at least one source of the leak and issued its June 7, 2022 Order finding him in contempt. At this point, Trahant had enjoyed more than enough due process for the Bankruptcy Court to impose sanctions, but it did not. Instead, Trahant would later be given additional opportunities to be heard and the Bankruptcy Court merely precluded Trahant from further participating in the Bankruptcy Proceeding. The Bankruptcy Court took appropriate steps to "enforce…court orders or rules…[and] prevent an abuse of process" as it was empowered to do under 11 U.S.C. § 105(a). The Court finds that the need for the Bankruptcy Court at that time to take immediate action and remove Trahant was warranted by the circumstances. As stated by the Bankruptcy Court, the action was necessary "to protect the integrity of the bankruptcy process, to guard the rights of all parties in interest, and to preserve the trust in the confidentiality of mediation (which was due to begin on June 8, 2022)."[72] The Bankruptcy Court, therefore, did not abuse its discretion in acting pursuant to 11 U.S.C. § 105(a).

Even if a plausible argument could be made that the June 7, 2022 Order infringed upon Trahant's due process rights, which the Court finds is assuredly not the case, any conceivable procedural infirmities were cured by the subsequent chain of events. Following the issuance of the

---

[71] R2 Doc. 2-11, p. 372 (Depo. p. 152).
[72] R2 Doc. 2-11, p. 416.

June 7, 2022 Order, the Bankruptcy Court issued a Show Cause Order, which provided Trahant with additional notice and the opportunity to be heard before sanctions were levied against him. The Bankruptcy Court ordered that Trahant be provided with the UST's Report and the attached materials so that he could prepare for the Show Cause Hearing. Trahant filed written objections to the impending proceeding into the record. When the Show Cause Hearing was held on August 22, 2022, Trahant was represented by counsel and offered additional objections to the proceeding and the June 7, 2022 Order. Trahant also provided sworn testimony and engaged in thorough discourse with the Bankruptcy Court about the evidence against him. Trahant did not controvert the UST's findings in any meaningful way. Rather, Trahant's testimony confirmed the findings of the UST's investigation and he again admitted to disclosing the identity of the priest to the high school's principal and the reporter. Trahant further acknowledged that the priest's identity and details of the allegations against him were not in the public domain at the time he disseminated the information.[73] After the August 22, 2022 Hearing, he was afforded more than one month's time to submit briefing on any issue, including the invoices filed by the Committee and Archdiocese, before the October 11, 2022 Order was entered. In sum, the Court finds without hesitation that Trahant was not deprived of any due process rights in the proceedings below and, in fact, was provided with many opportunities to be heard before a finding of contempt and the imposition of sanctions.

**The Bankruptcy Court Did Not Abuse Its Discretion By Imposing Sanctions Against Trahant**

Trahant's assertion that the Bankruptcy Court lacked jurisdiction to render the October 11, 2022 Order is misplaced. Although this Court allowed Trahant's appeal of the June 7, 2022 Order to remain pending, the August 22, 2022 Hearing and the Bankruptcy Court's October 11, 2022

---

[73] R2 Doc. 2-11, p. 116:5-25.

Order did not alter the status of the issues already on appeal.[74] Rather, the October 11, 2022 Order brought finality to the issues now properly before the Court. The Bankruptcy Court did not err in continuing on with Trahant's contempt proceeding after the June 7, 2022 Order was appealed.

Trahant next argues the Bankruptcy Court abused its discretion by imposing sanctions against him because there was no evidence of bad faith or willfulness in his conduct. This is incorrect.

Section 105(a) of the Bankruptcy Code gives a bankruptcy court the power to, *sua sponte*, take any action or make any "determination necessary or appropriate to enforce of implement court orders or rules, or to prevent an abuse of process."[75] Included in those powers is the prerogative to issue civil contempt orders.[76] Bankruptcy courts also have inherent powers to impose sanctions where bad faith or willful abuse of process has occurred to ensure the orderly and expeditious disposition of their dockets.[77] Federal Rule of Civil Procedure 37(b) further endorses the imposition of sanctions, including attorneys' fees, for protective order violations.[78]

Here, a thorough review of the record reveals that the Bankruptcy Court's findings of fact as to Trahant's knowing and willful actions were correct and should not be disturbed. Trahant's testimony at the August 22, 2022 Hearing confirmed his awareness of the Protective Order and the materials it was intended to protect. He knew the appropriate process as provided in the Protective Order for challenging the "CONFIDENTIAL" designation of any document and failed to observe it. Trahant, thus, knowingly subverted that process and disseminated "Protected Materials" to third

---

[74] *See Dayton Independent School District v. U.S. Mineral Products Co.*, 906 F.2d 1059 (5th Cir. 1990) ("When one aspect of a case is before the appellate court on interlocutory review, the district court is divested of jurisdiction over that aspect of the case. A district court does not have the power to 'alter the status of the case as it rests before the Court of Appeals'." (quoting *Coastal Corp. v. Texas Eastern Corp.,* 869 F.2d 817, 820–21 (5th Cir. 1989)).
[75] 11 U.S.C. § 105(a).
[76] *In the Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997).
[77] *In re Carroll*, 850 F.3d 811, 815 (5th Cir. 2017) (citing *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 411 (5th Cir. 1996)); *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 26 F.4th 285, 292 (5th Cir. 2022).
[78] *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012).

parties. Trahant's contention that he firmly believed he was not violating the Protective Order is not convincing because it is directly at odds with his sworn testimony. Indeed, Trahant testified that he disagreed with the "CONFIDENTIAL" designation of the materials at issue and contacted the high school principal and the reporter with the intent of "planting a seed" about the priest.[79] A review of Trahant's text messages with the high school principal undeniably shows that Trahant knowingly and intentionally disclosed confidential information to him.[80] The uncontroverted facts provide more than a sufficient basis to conclude Trahant willfully and knowingly violated the Protective Order constituting bad faith on his part.

The $400,000 in sanctions imposed by the Bankruptcy Court are reasonable and justified under the circumstances. The Bankruptcy Court ordered the Archdiocese and the Committee to file their respective investigation-related fee invoices. There is no indication in the record that Trahant ever objected to any of the invoices filed. In any event, the Bankruptcy Court independently reviewed the invoices for reasonableness using the well-accepted "lodestar analysis," and considered the complexities of the litigation, the number of attorneys involved, and prevailing rates. The Bankruptcy Court was satisfied that the fees incurred were reasonable.[81] Despite finding the billing entries to be justified, and although not required to do so, the Bankruptcy Court reduced the total amount of the sanctions by approximately 50% to arrive at the $400,000 sanction imposed.[82] The Bankruptcy Court went to great lengths to emphasize that the sanctions were intended "to serve as a deterrent for any attorney or law firm who might be tempted

---

[79] R2 Doc. 2-11, pp. 119-124.
[80] R1 Doc. 37-4 (SEALED).
[81] R2 Doc. 2-11, pp. 426-27. "Once a court orders that a party must pay reasonable fees and expenses as a sanction, the lodestar analysis is then used to determine the proper amount of fees 'by multiplying the reasonable number of hours expended in defending the suit by the reasonable hourly rates for the participating lawyers.'" *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL NO. 2179, 2021 WL 4192060, at *2 (E.D. La. Sept. 15, 2021) (quoting *Skidmore Energy v. KPMG*, 455 F.3d 564, 568 (5th Cir. 2006)).
[82] R2 Doc. 2-11, pp. 427-28.

to violate the Court's discovery orders, but also to preserve the integrity of the bankruptcy process and protect it from abuse."[83] Accordingly, the Court finds no merit in Trahant's contention that the sanctions were punitive in any manner. Trahant's position that the sanctions against him rise to the level of criminal in nature are, therefore, meritless. The Bankruptcy Court did not abuse its discretion when imposing sanctions against Trahant.

## CONCLUSION

The record and undisputed facts demonstrate that Trahant, an experienced attorney, knew he was bound by the Protective Order and deliberately chose to violate it. What is worse, Trahant continues to suggest that he did not violate the Protective Order and that his disregard for its protocols was justified. The Court finds Trahant's position to be inexplicable, especially considering he is an officer of the Court. This Court has no reservations in finding that Trahant's conduct was contemptuous, wasteful, and warranted the imposition of sanctions. Trahant has been afforded the opportunity to be heard and has presented no evidence to support a contrary conclusion.

AFFIRMED.

New Orleans, Louisiana this 27th day of March 2023.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

---

[83] R2 Doc. 2-11, p. 426.