UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE ROMAN CATHOLIC
CHURCH OF THE ARCHDIOCESE
OF NEW ORLEANS

CIVIL ACTION

NO. 22-1740 c/w 22-4101

SECTION M (2)

**OPINION**

Before the Court is the motion of appellant Richard C. Trahant for rehearing of the March 27, 2023 opinion and corresponding judgments entered on March 28 and April 11, 2023.[1]  Appellee the Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese") responds in opposition.[2]  Also before the Court is Trahant's motion to vacate the March 27, 2023 opinion and the corresponding judgments.[3]  The Archdiocese responds in opposition,[4] and Trahant replies in further support of his motion.[5]  Although both the motions for rehearing and the motion to vacate are DENIED for the reasons set out herein, the undersigned withdraws the court's March 27, 2023 opinion in this matter and substitutes the following, which addresses the issues raised in the appeal as well as those raised by Trahant's motions for rehearing and his motion to vacate.[6]

\*       \*       \*       \*

---

[1] R. Docs. 90; 91 (citing the March 27, 2023 opinion, R. Doc. 88, and the corresponding judgments, R. Doc. 89 in this action and R. Doc. 5 in Civil Action No. 22-4101).  Trahant filed his motion in each of these consolidated appeals.  Because the motions are nearly identical, the Court will cite only to R. Doc. 90 in this opinion.

[2] R. Doc. 95.

[3] R. Doc. 102.

[4] R. Doc. 103.

[5] R. Doc. 106.

[6] This Court sits as an appellate court – essentially a court of first review – concerning the orders of the bankruptcy court in this matter.  When acting as the court of first review as to matters on appeal from a district court, the Fifth Circuit sometimes withdraws a prior opinion, and substitutes another, in response to a petition for rehearing so that it may clarify factual or legal points misapprehended by the petitioner, even though rehearing is ultimately denied.  *See, e.g., Crawford v. Cain,* 68 F.4th 273, 279 (5th Cir. 2023); *Craig v. Martin,* 49 F.4th 404 (5th Cir. 2022); *MTGLQ Investors, L.P. v. Walden,* 2021 WL 4888870 (5th Cir. Oct. 19, 2021); *Eldridge v. Stephens,* 608 F. App'x 289 (5th Cir. 2015).  This Court, as the court of first review in this bankruptcy matter, does likewise.

## OPINION ON TRAHANT'S APPEALS

These consolidated appeals arise out of two orders issued by the bankruptcy court on June 7, 2022, and October 11, 2022,[7] the first enforcing the court's protective order upon finding that appellant Richard C. Trahant had violated it, and the second imposing sanctions on Trahant upon finding him in contempt of court for disclosing confidential information to third parties.  For the reasons below, the bankruptcy court's orders are AFFIRMED.

## I.    BACKGROUND

The underlying Chapter 11 bankruptcy was initiated on May 1, 2020, by the debtor-appellee, the Archdiocese, largely in response to numerous lawsuits brought against it in state court alleging sexual abuse by priests or lay persons employed or supervised by the Archdiocese and complicity of the Archdiocese in that abuse.[8]  These are devastatingly serious allegations that should be resolved at the soonest for scores of reasons, including justice and healing for all involved, especially the victims, but also for the larger community and all affected by the titanic breach of trust at the heart of the allegations.  Achieving this end is the professed goal of all the stakeholders in the bankruptcy, including the bankruptcy court, the claimants who are sexual abuse victims, other creditors, and the debtor itself.  And yet, ancillary matters – like the events necessarily addressed by the bankruptcy court in the orders at issue here – have unfortunately sidetracked the bankruptcy case from this principal goal.  Thus, while the issues at hand are serious, involving as they do Trahant's admitted breach of the protective order governing the Archdiocese's bankruptcy case, they are secondary to the main matters of the case.  It is high time that these

---

[7] Civil Action No. 22-1740 (Trahant's appeal from the bankruptcy court's June 7, 2022 order) was consolidated with Civil Action No. 22-4101 (Trahant's appeal from the bankruptcy court's October 11, 2022 order) because both orders deal with Trahant's violation of the bankruptcy court's protective order.  R. Doc. 76.  Unless otherwise indicated, all record document citations are found in Civil Action No. 22-1740.

[8] No. 22-4101, R. Doc. 1-2 at 5.  After filing for bankruptcy relief, the Archdiocese removed the state-court cases to this federal court, and those cases are stayed pursuant to 11 U.S.C. § 362(a).  No. 22-4101, R. Doc. 1-2 at 5.

ancillary matters are resolved, so that the stakeholders can get on with confecting and confirming a plan of reorganization that encompasses a program to deal with the sexual abuse claims and the other essential questions posed by the bankruptcy.

Now, as to the orders on appeal – in which the bankruptcy court was forced to confront the protective order violation – the resolution of the issues they raise becomes clear once the chronology of events and the bankruptcy court's stepped approach to sorting them out are plainly understood. In short, this appeal deals with the bankruptcy court's deliberate handling of a known violation of the protective order it put in place to protect the confidentiality of information that sexual abuse victims themselves sought to keep private. Once the disclosure and suspected violation came to light, the bankruptcy court presided over a first phase involving an investigation of the violation and enforcement of the protective order. This phase culminated in the June 7, 2022 order finding that a violation had indeed occurred and implementing practical steps to prevent any additional unauthorized disclosure of protected information, any additional violation of the protective order, and any additional abuse of the bankruptcy or judicial process. And once the violation was established and the protective order vouchsafed, the bankruptcy court presided over a second phase involving a contempt proceeding against Trahant, which culminated in the October 11, 2022 order imposing sanctions against him. So understood, all of Trahant's objections to the way in which he was treated come to naught.

Let's begin then with the timeline of events. The Archdiocese filed for bankruptcy on **May 1, 2020**. On **May 20, 2020**, within three weeks of the initiation of the bankruptcy, the United States Trustee (the "Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") and, thereafter, reconstituted it twice – first on June 10, 2020, then again on October

8, 2020.[9]  At the time of the events underlying the appeal, the Committee was comprised of six of the more than 450 abuse claimants.[10]  The Committee, as a single unit and with the bankruptcy court's approval, is represented by the law firms of Locke Lord LLP and Pachulski Stang Ziehl & Jones LLP.[11]  However, individual members of the Committee retained their respective state-court counsel to advise them on their individual claims against the Archdiocese and its bankruptcy estate and to assist them in fulfilling their duties as Committee members.[12]  Until June 7, 2022, Trahant served as counsel or co-counsel to four of the individual members of the Committee.[13]

On **August 3, 2020**, the bankruptcy court adopted the protective order negotiated by the Archdiocese and the Committee to govern the use and disclosure of "Protected Material" produced in discovery.[14]  The protective order, which has been amended as needed,[15] remains in place.[16]  "Protected Material" is defined by the protective order as discovery (whether documents or information) designated by the producing party as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS EYES ONLY."[17]  The producing party may designate a document as "CONFIDENTIAL" when it contains "Confidential Information," meaning "any non-public information provided by a [p]arty wherein such information is not public or available to the general public."[18]  "The [p]arty requesting the material shall be responsible for safeguarding all produced

---

[9] No. 22-4101, R. Docs. 2-1 at 40; 2-2 at 1-2.  For a more complete explanation of the Committee's role in a bankruptcy proceeding and a narrative of the facts, see No. 22-4101, R. Doc. 1-2 at 1-22.

[10] *Id.* at 6.  Although not strictly relevant to the present appeal, the Court notes that, on March 5, 2021, the Trustee, pursuant to an order of the bankruptcy court, appointed a separate official committee comprised of unsecured *commercial* creditors.  *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.  See also* R. Doc. 1-4 at 3; No. 22-4101, R. Doc. 2-2 at 1-2.

[14] No. 22-4101, R. Doc. 1-2 at 7.  The original protective order is found at R. Doc. 33-2 at 23-43, and No. 22-4101, R. Doc. 2-1 at 48-68.

[15] The protective order was amended and supplemented in January, May, and October 2021 to meet certain case needs as they arose.  R. Doc. 33-2 at 51-71, 110-14, and 127-31.

[16] No. 22-4101, R. Doc. 1-2 at 7.

[17] R. Doc. 33-2 at 25.

[18] *Id.* at 26.

materials and information designated as 'CONFIDENTIAL' in accordance with the provisions of this Protective Order."[19]  Paragraph 7 of the protective order limits the disclosure or dissemination of any discovery material marked "CONFIDENTIAL" to purposes related to the bankruptcy proceeding and, even then, only to certain persons or entities, including the Trustee, the Archdiocese as debtor (its officers, employees, and agents), the Committee (its members and their attorneys), and other creditors and bankruptcy-case constituents, after they sign a confidentiality statement.[20]  In particular, under the protective order, the Committee may use such material:

> *solely* in connection with [the] Committee's obligations under the Bankruptcy Code, for purposes of the Chapter 11 Case, and/or for purposes of any judicial proceedings relating thereto (including informal discovery and any contested matters and adversary proceedings commenced in connection with the Chapter 11 Case), *and not for any other purpose*, including without limitation any business, competitive, governmental, commercial, administrative, *publicity, press release*, marketing, or research purpose or function, or in any other legal case, lawsuit, proceeding, investigation, or otherwise *except as expressly provided herein, or as ordered by the Court*[.][21]

Paragraph 9 of the protective order also delimits the prohibited uses of Protected Material:

> Any Protected Material, and all information derived from Protected Material (including, but not limited to, all testimony, deposition, or otherwise, that refers, reflects or otherwise discusses any information designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" under this Protective Order), shall not be used, directly or indirectly, by any person for any business, commercial or competitive purposes, or for any purpose whatsoever other than for Authorized Uses.[22]

Importantly, paragraph 6 outlines the procedure for challenging the "CONFIDENTIAL" designation of any materials produced in discovery and having the designation removed, if warranted.[23]  In all other circumstances, paragraph 10 of the protective order makes it clear that

---

[19] *Id.*

[20] *Id.* at 30-32.

[21] *Id.* at 30 (emphasis added).  These uses constitute the "Authorized Uses" under the protective order.  *Id.* at 30-31.

[22] *Id.* at 35.

[23] *Id.* at 27-30.

any disclosure of Protected Material beyond the methods set out in the order is strictly prohibited, reciting:

> Except with the prior written consent of the person asserting "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" treatment, or in accordance with a prior order of the Court after notice, any Protected Material, and *any information contained in, or derived from Protected Material* (including, but not limited to, all deposition, examination or hearing testimony that refers, reflects, or otherwise discusses any information designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY") may not be disclosed other than in accordance with this Protective Order.[24]

Trahant, as an attorney representing some of the individual Committee members, read, signed, and was bound by the protective order.[25]

In **December 2021**, the Archdiocese produced certain "CONFIDENTIAL" materials to the Committee in response to discovery requests in the bankruptcy proceeding.[26]   The materials included documents related to proceedings held before the Archdiocese's Internal Review Board, which investigates allegations of sexual abuse made against clergy.[27]   Specifically, certain of the documents contained the board's evaluation of decades-old abuse allegations by an accuser (who had kept her name and experience out of the public eye) against a specific priest (who had not been included on the Archdiocese's "Credibly Accused List" or named in a proof of claim filed in the bankruptcy case).[28]

On **December 31, 2021**, Trahant (whose law practice overwhelmingly consists of litigating clergy sexual abuse cases) texted his cousin, the principal of the high school where the priest worked, mentioning the priest's name and knowing that his cousin, who was aware of the nature

---

[24] *Id.* at 36 (emphasis added).
[25] *Id.* at 23.
[26] No. 22-4101, R. Doc. 2-3 at 51.
[27] *Id.*
[28] No. 22-4101, R. Doc. 1-2 at 13.  In November 2018, the Archdiocese published the "Credibly Accused List," which names clergy who have been removed from the ministry due to allegations of sexually abusing a minor. *Id.*

of his law practice, would infer from Trahant's action that the priest had been accused of sexual abuse.[29]  Trahant admitted that he did this to ensure that the priest would not be allowed to return to work at the high school.[30]  The text was quickly followed by conversations between Trahant and his cousin, beginning on January 4, 2022, and continuing, along with additional texts, into the first part of January 2022.[31]  At some point in these communications, Trahant disclosed to his cousin the nature of the allegations against the priest which he had learned through his receipt of the confidential documents produced by the Archdiocese.[32]

On **January 1, 2022**, Trahant sent an email to a journalist listing the priest's name in the subject line, identifying in the body of the email where the priest was employed, and advising the journalist to "keep him on your radar."[33]  Trahant admitted that he knew that the journalist, who investigated and reported on clergy abuse allegations, would then pursue every lead concerning allegations of sexual abuse involving that priest.  Trahant also admitted that his purpose in contacting the journalist was to get an article published disclosing the priest's conduct.[34]

On **January 4, 2022**, during a phone conference, counsel for the Committee informed the Archdiocese's counsel about its concerns that a priest against whom sexual abuse claims had been made was currently serving as chaplain at a local high school.[35]  The Archdiocese's counsel contacted its client and learned that the priest was on extended medical leave and consequently had no contact with minors at the school.[36]  Counsel also learned, however, that prior to January

---

[29] *Id.* at 14.
[30] *Id.* at 14-15.
[31] No. 22-4101, R. Doc. 2-11 at 332.
[32] No. 22-4101, R. Doc. 1-2 at 15.
[33] *Id.*
[34] *Id.*
[35] No. 22-4101, R. Docs. 1-2 at 9-10; 2-3 at 51.
[36] No. 22-4101, R. Docs. 1-2 at 10; 2-3 at 52.

4, an unidentified person had also contacted the high school with detailed information about the priest, as officials from the high school had already called the Archdiocese about the issue.[37]

On **January 18, 2022**, the journalist who Trahant had previously emailed published an article in an online newspaper naming the priest, disclosing details about the sexual abuse allegations against him, and disclosing information about the Archdiocese's Internal Review Board's investigation and disposition of the claims – none of which had been public before then.[38]

On **January 20, 2022**, the Archdiocese filed a sealed motion asserting violations of the bankruptcy court's protective order, specifically alleging that the Committee had allowed Protected Material, produced by the Archdiocese pursuant to the confidentiality protections of the order, to be disclosed to administrators at a local high school and to a local journalist leading to its publication.[39]  The motion sought to compel the Committee to investigate the source of the breach and asked the bankruptcy court to conduct an evidentiary hearing to consider imposing sanctions for the violation of the protective order.[40]

On **January 27, 2022**, the bankruptcy court held an initial status conference with counsel for the Committee and the Archdiocese to discuss the motion to compel.[41]  The Trustee and individual counsel for one of the Committee members were also in attendance.[42]  At the request of counsel for the Committee and Archdiocese, the bankruptcy court allowed them to conduct informal discovery concerning the matters raised in the motion and held three additional status

---

[37] No. 22-4101, R. Docs. 1-2 at 10; 2-3 at 52-53.
[38] No. 22-4101, R. Docs. 1-2 at 4; 2-3 at 55.
[39] No. 22-4101, R. Docs. 1-2 at 9; 2-3 at 46-58.
[40] *Id.*
[41] No. 22-4101, R. Doc. 1-2 at 10.
[42] *Id.*

conferences between February 11 and April 14, 2022, to receive progress updates.[43]  The objective

of the discovery was to uncover the source of the leak of the confidential information.[44]

At the **February 11 and March 11, 2022** status conferences, counsel for the Committee

reported that interviews of its attorneys and firm support staff, the Committee members, and the

Committee members' individual counsel (who included Trahant) did not uncover any evidence

that a Committee member or representative had breached the protective order.[45]  This means that,

as of these dates, Trahant had not even told counsel for the Committee about his role in making

the disclosures in question.

On **April 4, 2022**, as a part of the investigation instigated by the motion to compel, the

Committee and the Archdiocese received discovery responses from the high school revealing that

Trahant had contacted the principal of the high school multiple times beginning on December 31,

2021, regarding certain Protected Material.[46]

On **April 13, 2022**, counsel for the Committee filed under seal various written declarations,

including one by Trahant in which he admitted that on December 31, 2021, he first contacted his

cousin, the principal of the high school, regarding Protected Material he received in his role as

counsel for a Committee member.[47]  In the declaration, Trahant asserted that he believed that

protecting minors was a legitimate compelling reason for the disclosure.[48]  Despite having

disclosed the priest's name to the high school principal and the journalist, clear violations of the

---

[43] *Id.*

[44] Trahant makes much of his efforts to participate in these status conferences, obliquely blaming the restrictions on his participation for his failure to come clean that he was the source of the disclosures to the principal and the journalist.  The bankruptcy court was correct to discount this self-serving deflection, however, as Trahant was free to tell the court of his role without having more extensive participation in the status conferences – hardly the only vehicle available to Trahant for communicating to the court.

[45] *Id.* at 10-11.

[46] *Id.* at 11.

[47] No. 22-4101, R. Docs. 1-2 at 11; 2-11 at 330-33.

[48] No. 22-4101, R. Docs. 1-2 at 11; 2-11 at 331.

protective order, Trahant also swore in his declaration that he "did not provide any 'confidential' documents to or discuss the contents of any 'confidential' documents with" any officials at the high school and "did not disclose or disseminate any documents marked in any way confidential, the contents of documents, or any other information produced by the [Archdiocese] to" the journalist or anyone else affiliated with the newspaper.[49]

At the **April 14, 2022** status conference, the parties discussed with the bankruptcy court the discovery responses from the high school revealing that Trahant had contacted the principal of the high school by text message on December 31 2021, and by telephone on January 4, 2022, inquiring about the priest at issue and discussing the allegations against him.[50]  In light of these troubling discoveries, which were at odds with the reports made at the earlier status conferences, the bankruptcy court agreed to the parties' request that the Trustee be appointed to conduct an independent investigation.[51]

On **April 25, 2022**, the bankruptcy court issued an order instructing the Trustee to investigate the allegations of wrongful dissemination of Protected Material.[52]  The bankruptcy court "was concerned not only with enforcing its own [o]rders, but with the timing of such breach and the negative impact that violation would have on the functioning of the Committee, the rights of parties in interest in the bankruptcy process, and the ability of the parties in th[e bankruptcy] case to proceed in good faith in the upcoming mediation of claims asserted against the estate."[53] The bankruptcy court directed the Trustee to submit its findings on or before June 3, 2022, stating:

---

[49] No. 22-4101, R. Docs. 1-2 at 11; 2-11 at 332-33.
[50] No. 22-4101, R. Doc. 2-11 at 254-57.
[51] No. 22-4101, R. Doc. 1-2 at 12.  *See* 2 COLLIER ON BANKRUPTCY ¶ 307.02, at 307-3 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("The United States trustee is often the only party likely to pursue matters that go to the integrity or efficiency of the bankruptcy system but do not involve a recovery for the party bringing the matter.").
[52] R. Doc. 33-2 at 344-46; No. 22-4101, R. Doc. 1-2 at 12.
[53] No. 22-4101, R. Doc. 1-2 at 12.

"Upon reviewing the United States Trustee's Statement of Position, the Court will schedule a further hearing to determine what action, if any, should be taken."[54]

On **June 3, 2022**, the Trustee filed its statement of position under seal, attaching 78 sworn declarations, 18 transcripts of sworn examinations provided under Rule 2004 of the Federal Rules of Bankruptcy Procedure, one transcript and one summary of two unsworn telephone interviews, and numerous documents produced to the Trustee in discovery, including telephone and text message logs, e-discovery transaction reports, and emails, letters, and text messages (collectively, the "Trustee's Report").[55]   Trahant's Rule 2004 deposition was among these supporting documents, and his deposition testimony revealed additional protective order violations.[56]   In his deposition, Trahant testified that his law practice consists largely of litigating clergy sexual abuse claims.[57]  He admitted that, as counsel for four of the Committee members, he read, and was bound by, the protective order and all of its amendments.[58]   Trahant stated that he first learned of the abuse allegations against the priest at issue on December 30 or 31, 2021, through his receipt of the discovery produced by the Archdiocese.[59]  Trahant recognized the priest's name and conducted an internet search to find his current residence and workplace.[60]  When the Trustee confronted Trahant with his sworn declaration and the December 31, 2021 text messages, Trahant admitted that he contacted his cousin, the high school principal, to inquire about the priest by name, knowing that his cousin would immediately infer that the priest had been accused of sexual abuse.[61]   Trahant

---

[54] R. Doc. 33-2 at 345; No. 22-4101, R. Doc. 1-2 at 12.

[55] No. 22-4101, R. Doc. 1-2 at 12-13.  While the Trustee's Report was sealed, all parties bound by the protective order, including Trahant, were afforded the opportunity to review the full report and its attachments.  *Id.* at 13.

[56] No. 22-4101, R. Doc. 2-11 at 334-99.

[57] No. 22-4101, R. Doc. 1-2 at 14.

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] No. 22-4101, R. Docs. 1-2 at 14; 2-11 at 343-44 (testifying that the principal "immediately knew – simply based on my question, he knew what the inference was").

stated that his purpose was to ensure that the priest would not return to work at the high school.[62]

Trahant also admitted to further text and telephone communications with his cousin through

January 4, 2022, during which he revealed the nature of the allegations against the priest, which

he had only learned from the Protected Material produced in discovery.[63]  In the deposition, the

Trustee also confronted Trahant with his January 1, 2022 email to the journalist – the one with the

subject line containing only the name of the priest, while the body of the email read: "Keep this

guy on your radar.  He is currently the chaplain at [the high school]."[64]  Trahant admitted that he

knew the reporter would infer from the email that the priest had been accused of sexual abuse and

then would write about it.[65]  Trahant was adamant in his deposition that he did not believe his

actions violated the protective order, but he also testified contradictorily that he felt restricted by

its provisions.[66]  He admitted, however, that he did not move for relief from the protective order

to report what he claims were potential crimes, nor did he use the protective order's mechanism

for challenging the Archdiocese's "confidential" designation of the documents it produced.[67]

On **June 7, 2022**, after reviewing the Trustee's Report, the bankruptcy court issued an

order (the "June 7, 2022 Order" on appeal in Civil Action No. 22-1740), finding that Trahant's

own testimony, as well as certain documents attached to the Trustee's Report, confirmed that he

knowingly and willfully violated the protective order: "(i) Trahant had read and was bound by the

Protective Order; (ii) knew that he was bound by the  Protective Order; and (iii) beginning on

December 31, 2021, provided on multiple occasions confidential information he received to a third

---

[62] No. 22-4101, R. Docs. 1-2 at 14-15; 2-11 at 344-45.
[63] No. 22-4101, R. Docs. 1-2 at 15; 2-11 at 351-53.
[64] No. 22-4101, R. Docs. 1-2 at 15; 2-11 at 345.
[65] *Id.* (testifying that he knew the reporter had "been deeply involved in reporting on the clergy abuse crisis" and sent the email for the purpose of "alerting him, without telling him anything, clearly, keep this guy on your radar. This is where he is.").
[66] No. 22-4101, R. Docs. 1-2 at 15-16; 2-11 at 397-98.
[67] No. 22-4101, R. Docs. 1-2 at 16; 2-11 at 398.

party [his cousin, the principal] and the media in direct violation of the Court's Protective Order."[68]
The bankruptcy court noted that "[n]o dispute exists that the information that reached the media
was information that could not have come from any other source but the [Archdiocese]'s
production of discovery in this case."[69]  The bankruptcy court, expressly acknowledging its "duty
to protect the integrity of the bankruptcy process and enforce its own Orders," found that
"Trahant's willful breach of [the] Protective Order clearly disqualifies him from further receiving
Protected Material in this case and participating in any confidential Committee proceedings,
including meetings, deliberations, and mediation."[70]  This determination, however, presented a
dilemma to the bankruptcy court: how could it permit the four Committee members who were
Trahant's clients to keep him as their counsel (which the court recognized they had every right to
do) and yet continue to participate in the Committee's work, which necessarily involved protecting
the confidentiality of the sensitive information and documents they were called upon to receive
and review?  Recognizing that it could not interfere in the attorney-client relationship (meaning
that the court had to assume, given "the dynamics present on the Committee," that the confidential
information the Committee members received would be communicated to Trahant, who had
already demonstrated a willingness to disclose such information despite the protective order), the
bankruptcy court was "forced" to resolve the dilemma by imputing Trahant's "willful breach and
disregard of [the] Protective Order" to his clients – that is to say, presuming that disclosure of
confidential information to them, and consequently Trahant, could result in further unauthorized
disclosures to third parties – and finding cause to order the Trustee to remove them from the

---

[68] R. Doc. 1-2 at 3.
[69] *Id.* at 3-4 (noting also that the Trustee acknowledged in the report that "serious questions remain regarding *the extent of the information* [meaning the details of the allegations against the priest, but not his name] that was provided to third parties and the media by Trahant and whether documents or sensitive information contained therein was also provided to the media by someone else") (emphasis added).
[70] *Id.* at 4.

Committee "to prevent an abuse of process and to ensure adequate representation of creditors."[71] The bankruptcy court explained that it was compelled to "act [in this way] to protect against disruption of the bankruptcy process, to guard the rights of all parties in interest, and, most immediately in light of the current posture of the case, to preserve the trust in the confidentiality of mediation."[72]   The bankruptcy court concluded the June 7, 2022 Order by stating that it "will issue a separate Order To Show Cause to determine appropriate sanctions for Trahant's disclosure of confidential information in violation of [the] Protective Order."[73]

On **June 10, 2022**, Trahant filed a notice of appeal regarding the bankruptcy court's June 7, 2022 Order without seeking leave of the bankruptcy court to appeal that order.[74]   The appeal was allotted to Judge Greg Guidry.

On **June 13, 2022**, the bankruptcy court issued the promised order to show cause – that is, the order to set a contempt hearing as signaled in both its April 25, 2022 order and its June 7, 2022 Order.  Given its earlier finding that Trahant knowingly and willfully violated the protective order, the bankruptcy court ordered him to appear before the court on July 25, 2022, to show cause "why he should not be sanctioned for his willful violation of [the] Protective Order."[75]   The bankruptcy court rested its authority to convene this contempt proceeding on 11 U.S.C. § 105(a).  The court further ordered the Trustee to provide the Trustee's Report (along with all its exhibits) to Trahant and any counsel he might retain for purposes of preparing for the contempt proceeding; it ordered counsel for the Archdiocese and the Committee to file on or before July 1, 2022, invoices "identifying attorney and paralegal time spent on services related to" the investigation instigated

---

[71] *Id.* at 4-5.
[72] *Id.* at 4.  A mediation was scheduled to begin the next day.
[73] *Id.* at 5.
[74] R. Doc. 1.
[75] R. Doc. 33-2 at 1-2.

by the motion to compel; and it ordered Trahant to file a written response on or before July 18, 2022, for the court's "consideration regarding imposition[] of sanctions against him."[76]

On **August 8, 2022**, Trahant filed objections to the show-cause order and to the imposition of "additional" sanctions, arguing that the June 7, 2022 Order (even though the objections were ostensibly directed at the show-cause order) was improper because he had not been provided with adequate due process before he was found in contempt.[77]   Trahant's objections thus failed to apprehend the limited nature of the June 7, 2022 Order, which did not include any finding of contempt or impose sanctions.

On **August 22, 2022**, the bankruptcy court held the show-cause/contempt hearing after it had been continued from the original July 25, 2022 date due to counsel's scheduling conflict.[78] During the hearing, Trahant was represented by counsel, allowed to present evidence and argument, and offered his own testimony under oath.[79]   Trahant testified at the hearing that he obtained confidential information regarding the priest solely from the Protected Material he received as counsel for the individual Committee members.[80]   He also testified that he knew he was bound by the protective order.[81]   Trahant admitted that he sent text messages to his cousin containing the priest's name and asking if he was still employed at the high school, knowing that his cousin would understand from his messages that the priest had been accused of sexual abuse.[82]

---

[76] *Id.* at 2.

[77] No. 22-4101, R. Doc. 2-11 at 27-36.

[78] No. 22-4101, R. Docs. 1-2 at 18; 2-11 at 81-141.

[79] *Id.*

[80] No. 22-4101, R. Docs. 1-2 at 20.

[81] *Id.*

[82] *Id.* at 20-21 (quoting Trahant's testimony: "And did I plant a seed? Absolutely. Absolutely.  Your Honor is a hundred percent right.  Yeah, I planted a seed.  Why did I plant the seed as it related to [my cousin]?  Because it was simple.  I communicate with [my cousin] fairly frequently and I didn't want that guy back on campus.").

Further, he admitted that he gave the priest's name to the journalist.[83]  Trahant testified that he did not agree with the Archdiocese's confidential designation of the information concerning the priest, and that he did not think he violated the protective order because he did not give physical or electronic documents to his cousin or the journalist.[84]  When asked by the bankruptcy court why he did not tell counsel for the Committee that he communicated confidential information to his cousin and the reporter, his answers were equivocal and inconsistent, and they did not comport with the record, the timeline of events, or the actions taken by the Committee's counsel in investigating the breach.[85]

On **October 11, 2022**, the bankruptcy court issued its memorandum opinion and order (the "October 11, 2022 Order" on appeal in Civil Action No. 22-4101) imposing sanctions on Trahant pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure and 11 U.S.C. § 105(a) for his knowing and willful breach of the protective order.[86]  The bankruptcy court held that the Trustee's Report, which included Trahant's emails and text messages as well as the deposition testimony he provided to the Trustee, along with his sworn testimony at the show-cause/contempt hearing, provided clear-and-convincing evidence that Trahant was bound by the protective order and violated it for his own purposes.[87]  Further, the court found that Trahant's actions were wasteful, disrupted the progress of the bankruptcy case, and delayed resolution of the disclosure issue.[88]  The bankruptcy court emphasized that Trahant, as a seasoned attorney and officer of the court, has a

---

[83] *Id.* at 21 (quoting Trahant's testimony: "That was, that was the seed I planted with [the high school].  The seed I planted with [the reporter] ….  But yes, I planted a seed ….  Because I think this, I think this stuff needs to be exposed.").

[84] *Id.* at 20-21.

[85] *Id.* at 22 ("The Court heard equivocation, deflection, and inconsistency in Trahant's answers.").

[86] *Id.* at 1-30.

[87] *Id.* at 22-26 ("Trahant's testimony and the record in this case presents clear and convincing evidence that, even though a Protective Order was in place governing the confidential information produced by the [Archdiocese] and Trahant was bound by the Protective Order, he nevertheless took confidential information he received through his affiliation with the Committee and used it for his own purposes – not one for which it was intended or protected.").

[88] *Id.* at 26-27.

responsibility to obey court orders, "even those he may disagree with and those that become inconvenient to him," which was heightened by the position of trust he held as counsel to Committee members who were, in turn, entrusted with the duty to hold sensitive and non-public information in confidence.[89] With these findings, the bankruptcy court imposed sanctions against Trahant pursuant to Rule 37 and § 105 "not only to serve as a deterrent for any attorney or law firm who might be tempted to violate the Court's discovery orders [including, particularly, its protective order], but also to preserve the integrity of the bankruptcy process and protect it from abuse."[90] The Archdiocese and the Committee submitted evidence consisting of invoices totalling $760,884.73 for the attorneys' fees and costs they incurred in investigating and dealing with the breach of the protective order, but the bankruptcy court imposed only $400,000 (or 53% of this amount) as sanctions against Trahant.[91] Notably, Trahant did not challenge the reasonableness of the fees and costs reflected in the invoices.[92]

On **October 21, 2022**, Trahant filed a notice of appeal regarding the bankruptcy court's October 11, 2022 Order.[93]

On **February 10, 2023**, Trahant's appeals of the bankruptcy court's June 7, 2022 Order and October 11, 2022 Order were consolidated as related cases.[94]

---

[89] *Id.* at 27.
[90] *Id.*
[91] *Id.* at 27-29.
[92] *Id.* at 28
[93] No. 22-4101, R. Doc. 1.
[94] No. 22-4101, R. Doc. 4. From this date on, the events in this chronology bear less upon Trahant's appeals of the bankruptcy court's orders than they do upon his motions for rehearing and motion to vacate.

On **March 27, 2023**, after full briefing by the parties (which is reviewed below), Judge Guidry issued an opinion affirming both orders of the bankruptcy court.[95]  Because that opinion is now withdrawn, this Court does not rely upon it in any way.[96]

On **March 28 and April 11, 2023**, Judge Guidry entered judgments in the consolidated cases affirming the bankruptcy court's orders in accordance with his March 27, 2023 opinion.[97]

On **April 10 and 11, 2023**, Trahant filed the instant motions for rehearing.[98]

On **April 13, 2023**, Judge Guidry held a telephone status conference in which he noted that, while no motion to recuse had been filed, "it ha[d] been brought to [his] attention that past charitable donations to New Orleans Catholic Charities and the Catholic Community Foundation as well as [his] time as a board member for the New Orleans Catholic Charities approximately from 2000 to 2008 could possibly be a reason for [him] to consider recusing [him]self in this case." Judge Guidry then observed that, "in light of this, [he] ha[d] requested guidance from the committee on codes of judicial conduct and … should receive a response from the committee within a week or two.  The committee's response … will guide [his] decision concerning whether to recuse … or not."[99]

---

[95] R. Doc. 88.

[96] Nevertheless, for historical purposes and ease of reference, the Court recounts here the reasoning of Judge Guidry's opinion.  Judge Guidry held that Trahant was afforded due process with respect to the June 7, 2022 Order because he was aware that he was a target of the Trustee's investigation and was represented by counsel when giving his deposition. *Id.* at 9-11.  Further, Judge Guidry held that the June 7, 2022 Order did not impose sanctions on Trahant, but rather only prohibited him from participating in the bankruptcy proceeding in order to protect the integrity of the bankruptcy process as the bankruptcy court was empowered to do under § 105(a). *Id.* at 11.  In addition, Judge Guidry held that the bankruptcy court gave Trahant additional opportunities to be heard at the show-cause hearing, curing any due process violation that may have related to the June 7, 2022 Order. *Id.* at 11-12.  With respect to the October 11, 2022 Order, Judge Guidry held that the bankruptcy court did not abuse its discretion in imposing sanctions against Trahant under Rule 37 and § 105(a) because it correctly found, based on the clear-and-convincing evidence in the record, that Trahant knowingly and willfully violated the protective order. *Id.* at 12-14.  Finally, Judge Guidry found that the amount of attorney's fees the bankruptcy court imposed on Trahant as sanctions ($400,000) was reasonable and justified, especially considering that Trahant never contested the invoices presented and the bankruptcy court reduced the amount claimed by more than 50%. *Id.* at 14-15.

[97] R. Doc. 89; No. 22-4101, R. Doc. 5.

[98] R. Docs. 90; 91.

[99] R. Docs. 94; 97 at 4.

On **April 20, 2023**, Judge Guidry held another status conference in which he advised the parties that he had received the requested guidance from the Committee on Codes of Conduct concerning the recusal issue that had been raised. Judge Guidry read the committee's summary from its formal advisory opinion:

> The committee sees multiple factors that weigh against the need for recusal under Canon 3C(1) or the general impartiality rule of Canon 3C(1). First, none of the charities to which you contributed some of your wind-down campaign funds has been or is an actual party in any proceeding before you. Moreover, even though your contributions to charities affiliated with Catholic interests were generous and substantial, they amounted to less than 25 percent of the campaign funds you had to donate.
>
> Second, your leadership as a board member of one of the charities ended 15 years ago, which is a significant span of time, and over a decade before the Archdiocese filed its Chapter 11. Third, you have already entered several decisions and those decisions do not uniformly favor any interested party, which is a concrete indication of impartiality. Finally, simply participating as a faithful participant in the life of your parish and the Archdiocese of which it is a part cannot amount to a reasonable basis for questioning impartiality in litigation involving the church without effectively forcing judges to choose between their faith and their adjudicative duties.
>
> Based on the facts, the committee does not see in your case anything that would require a direct or explicit basis for disqualification under Canon 3C(1)(a) through (e). Recusal based on a risk of an appearance of impropriety under Canon 2 or a reasonable basis for questioning impartiality under Canon 3C(1) is inherently fact specific and often a very personal decision for the judge involved. With that said, the committee does not believe a reasonable person fully informed of all relevant considerations would have a basis to question your impartiality or to suggest a risk of an appearance of impropriety necessitating recusal in your case.[100]

Judge Guidry advised the parties that, "[b]ased upon [the committee's] advice and based upon my certainty that I can be fair and impartial, I have decided not to recuse myself."[101]

---

[100] R. Docs. 96; 98 at 4-6.
[101] R. Doc. 98 at 5-6.

On **April 21, 2023**, the Associated Press published an article suggesting that Judge Guidry could not be impartial in the appeals arising from the Archdiocese's bankruptcy case because of his prior donations to, and service on the board of, Catholic charitable organizations.[102]

On **April 28, 2023**, Judge Guidry entered an order of recusal, which reads:

> I do not believe disqualification pursuant to 28 U.S.C. § 455 is mandated, and no party has filed a motion to disqualify me pursuant to 28 U.S.C. § 144;[103] however, balancing my duty to decide the case with my duty to consider self-recusal if appropriate, I have decided to recuse myself from this matter in order to avoid any possible appearance of personal bias or prejudice.[104]

This order is the full extent of the information available to this Court concerning the grounds for recusal.

On **May 1, 2023**, after two more district court judges recused themselves from this matter, it was reallotted to this Court.[105]

Thereafter, on **May 8, 2023**, Trahant filed the instant motion to vacate Judge Guidry's March 27, 2023 opinion and the corresponding judgments entered on March 28 and April 11, 2023.[106]

## II.   LAW & ANALYSIS

In disposing of the appeals and motions that have been brought, this Court is mindful of two essential points.  First, it is imperative to bring final resolution to the matter concerning the unauthorized disclosure of protected confidential information so that the bankruptcy court and the stakeholders in this bankruptcy case, including most vitally the sexual abuse claimants, can get back to the main business of confecting a plan of reorganization to address their respective

---

[102] R. Doc. 102-2 at 13-16.
[103] Section 144 provides that a district judge must recuse when a party to a proceeding "makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party."  28 U.S.C. § 144.
[104] R. Doc. 99.
[105] R. Docs. 100; 101.
[106] R. Doc. 102.

interests.  Second, it is just as important that this Court do so in a way that upholds the sanctity of the judicial process in general, and court orders in particular, so that the participants in the bankruptcy process and the public it serves are ensured of integrity in the administration of justice. After all, courts are duty-bound to enforce their own orders and to prevent abuses of the judicial process.

## A.  The Appeals

### 1.  The Parties' Contentions on Appeal

In his appellant brief, Trahant argues that the bankruptcy court's June 7, 2022 Order contravened his right to procedural due process by holding him in contempt and sanctioning him without notice and an opportunity to be heard.[107]  He also argues that the bankruptcy court lacked jurisdiction to issue the October 11, 2022 Order because his appeal of the June 7, 2022 Order divested that court of jurisdiction to further consider imposing sanctions for his violation of the protective order.[108]  Moreover, according to Trahant, the August 22, 2022 show-cause hearing was "fraught with errors" principally because the bankruptcy court did not rightly appreciate that his testimony was the only competent evidence presented.[109]   Finally, Trahant argues that the $400,000 sanction is excessive, amounting to the imposition of criminal contempt, because there was no evidence that he violated the protective order willfully or in bad faith.[110]

The Archdiocese, in its appellee brief, argues that the bankruptcy court's June 7, 2022 Order was not final and appealable, nor did it deprive Trahant of due process, as it did not impose sanctions on him.[111]   Alternatively, the Archdiocese argues that Trahant was not deprived of due

---

[107] R. Doc. 79 at 32-39.
[108] *Id.* at 39-41.
[109] *Id.* at 41-52.
[110] *Id.* at 52-59.
[111] R. Doc. 82 at 31-34.

process because he knew he was the target of the Trustee's investigation prior to the issuance of the June 7, 2022 Order.[112]  Further, the Archdiocese argues that the clear-and-convincing evidence presented at the show-cause/contempt hearing, including the Trustee's Report and Trahant's own testimony, proved that Trahant knowingly and willfully violated a protective order by which he was bound.[113]  Finally, the Archdiocese argues that the $400,000 sanction that the bankruptcy court imposed on Trahant was reasonable considering the delay, disruption, and waste caused by Trahant's actions.[114]

In his reply brief, Trahant points to what he perceives to be misrepresentations in the Archdiocese's appellee brief and argues that the bankruptcy court's sealed status conferences in February, March, and April 2022 tainted the Trustee's investigation as to deny him due process.[115]

## 2.  Analysis

The Court has jurisdiction over these consolidated appeals under 28 U.S.C. § 158(a)(1) because, collectively, the appeals arise from a final order (the October 11, 2022 Order) of contempt imposing sanctions against Trahant.[116]  When reviewing the findings of a bankruptcy court, a district court acts in its appellate capacity and applies the same standard of review as does a court of appeals when reviewing a district court's action.  *In re Glenn,* 900 F.3d 187, 189 (5th Cir. 2018); *In re Perry,* 345 F.3d 303, 308 (5th Cir. 2003).  A district court reviews findings of contempt and

---

[112] *Id.* at 34-36.

[113] *Id.* at 36-42.

[114] *Id.* at 42-49.

[115] R. Doc. 83-1 at 5-35.  Trahant complains in his reply brief, as elsewhere, that the bankruptcy court over-sealed documents in the record and he urges this Court to unseal them.  The bankruptcy court unsealed some parts of the record and allowed Trahant access to certain other parts of the sealed record.  Because Trahant was permitted access to the essential documents in conjunction with the show-cause/contempt proceeding, he was able to participate fully in that proceeding and in these appeals.  The duty to comply with the Fifth Circuit's guidance for sealing is that of the court ordering the seal.  Accordingly, this Court will leave the question whether to unseal other parts of the record to the bankruptcy court in the first instance.

[116] Although the Archdiocese originally objected to this Court's jurisdiction over Trahant's appeal of the bankruptcy court's June 7, 2022 Order, it concedes that the objections were remedied when the Court consolidated these appeals.  *See* R. Doc. 82 at 3.

imposition of sanctions for abuse of discretion. *Waste Mgmt. of Wash., Inc. v. Kattler,* 776 F.3d 336, 339 (5th Cir. 2015); *Goldin v. Bartholow,* 166 F.3d 710, 722 (5th Cir. 1999). A court abuses its discretion when it "'(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts.'" *June Med. Servs., L.L.C. v Phillips,* 22 F.4th 512, 519 (5th Cir. 2022) (quoting *Bradley ex rel. AJW v. Ackal,* 954 F.3d 216, 224 (5th Cir. 2020)). The lower court's findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo. Am. Airlines, Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 578 (5th Cir. 2000). "Whether an alleged contemnor was afforded due process is a question of law ... review[ed] de novo." *Waste Mgmt.,* 776 F.3d at 339.

### a.  An overview of the bankruptcy court's stepped response to the violation

A correct disposition of the appeals of the bankruptcy court's orders follows from a correct understanding of the process the bankruptcy court pursued in issuing the orders. This process consisted of what were two phases – essentially two separate proceedings – instituted to address issues arising out of the unauthorized disclosure of confidential information which was suspected to be a violation of the court's protective order.

The first phase or proceeding was initiated in response to the January 18, 2022 publication of the protected information and the ensuing motion to compel. That proceeding involved an investigation into the suspected violation and the bankruptcy court's enforcement of its protective order through the issuance of the June 7, 2022 Order. Based on the investigation and the evidence it generated, the bankruptcy court applied a lesser evidentiary standard (likely, a preponderance standard) to make findings that a violation had indeed occurred and the court acted to enforce its protective order and prevent further abuse of the judicial process (namely, any additional unauthorized disclosure of confidential information) by removing Trahant from any role in the

Committee's receipt and handling of confidential information and documents.  This could only be accomplished by having the individual Committee members who were Trahant's clients removed from the Committee since the bankruptcy court could not (and would not) interfere with their choice of Trahant as their attorney.  At bottom, then, the first phase was limited to an investigation into the suspected protective order violation and the court's enforcement of its order.[117]

The second phase was the contempt proceeding initiated by the bankruptcy court's June 13, 2022 show-cause order.  That order advised Trahant of the accusation against him and that sanctions were being considered, and it set a hearing at which Trahant would be allowed to present evidence to disprove the accusation and the reasonableness of any sanctions, which would be considered under an evidentiary standard of clear and convincing.  Based on the evidence presented to the bankruptcy court in submissions before the hearing and in testimony at the hearing, the court issued its October 11, 2022 Order, confirming under the more rigorous clear-and-convincing standard that Trahant had violated the protective order by disclosing Protected Material to his cousin and the journalist and finding that Trahant had acted in contempt of court in doing so.  Consequently, the court also examined, again under the clear-and-convincing evidentiary standard, the evidence concerning the quantum of the fees and costs to be imposed as sanctions. In this light, as is proper for a contempt matter, this second proceeding was the only phase involving the imposition of sanctions.

With this overview in mind, the Court now examines the issues on appeal.

---

[117] This was undoubtedly how the bankruptcy court viewed its own approach in these proceedings – that is, as a stepped process – as reflected in the court's statement at the beginning of the show-cause/contempt hearing: "[W]e're here today on an order to show cause.  The Court issued it after … I had read the independent report of the United States Trustee.  I made some decisions, issued a couple of orders, and then issued this order to show cause.  Of course, *no sanctions have been awarded yet*."  No. 22-4101, R. Doc. 2-11 at 88-89 (emphasis added).

### b. Due process and the bankruptcy court's June 7, 2022 Order

Trahant argues that he was deprived of due process because the bankruptcy court's June 7, 2022 Order imposed sanctions on him without notice and an opportunity to be heard.[118]  However, Trahant's argument mischaracterizes the intent and effect of that order, which did not impose any sanction on him.  The timeline of events outlined above demonstrates that the bankruptcy court employed a stepped process in addressing Trahant's violation of the protective order.  First, the bankruptcy court ordered the Trustee to undertake an independent investigation and issue a report.[119]  The Trustee's Report states that Trahant admitted to disseminating to third parties information that he learned through his receipt of Protected Material as counsel to individual Committee members.[120]  Upon reviewing the Trustee's Report and the appended exhibits, the bankruptcy court correctly determined, for purposes of enforcing its protective order, that Trahant had knowingly and willfully violated it and effectively admitted to doing so.[121]  Recognizing that it had a duty to protect the integrity of the bankruptcy process and to enforce its own orders, the bankruptcy court employed § 105(a) of the Bankruptcy Code to fashion an appropriate remedy.

Section 105(a) empowers a bankruptcy court *sua sponte* to take any action or make "any determinations necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).[122]  That is exactly what occurred.  The bankruptcy court found that Trahant's blatant breach of the protective order disqualified him from further receiving Protected Material.[123]  Trahant's demonstrated inclination to disclose Protected Material also

---

[118] R. Doc. 79 at 32-39.
[119] R. Doc. 1-2 at 2.
[120] *Id.* at 3.
[121] *Id.*
[122] Although the June 7, 2022 Order also references 11 U.S.C. § 1102(a)(4), *see* R. Doc. 1-2 at 5, that statute was not applicable because it authorizes the bankruptcy court to remove claimants from the committee at the request of a party, which neither occurred – nor was required to occur – in connection with the issuance of this order that was crafted to enforce the court's earlier protective order.
[123] *Id.* at 4.

rendered imprudent his clients' continued service on the Committee since the bankruptcy court was appropriately unwilling to meddle with the free flow of attorney-client communications.[124] Thus, the bankruptcy court found it necessary to remove Trahant's clients from the Committee so as to end Trahant's access to Protected Material.[125]  This remedy was a prudential prophylactic step, not a sanction on Trahant.[126]  Trahant was not held in contempt, nor was he fined in the June 7, 2022 Order.  Neither were his clients. They had no protected right to serve on the Committee and their claims in the Archdiocese's bankruptcy proceeding were not compromised by their removal from the Committee.[127]  Thus, the bankruptcy court used § 105(a) to fashion a remedy that it deemed necessary and appropriate to implement its rules and prevent an additional abuse of process while preserving the attorney-client relationship.

The bankruptcy court further clarified that the June 7, 2022 Order was not a sanction by stating that it would "issue a separate Order To Show Cause to determine appropriate sanctions for Trahant's disclosure of confidential information in violation of [the] Protective Order."[128] Thus, the later (June 13, 2022) order set a hearing date for Trahant to show cause why he should not be held in contempt and sanctioned pursuant to § 105(a) for his knowing and willful violation

---

[124] *Id.*

[125] *Id.* at 4-5.

[126] Hence, this Court disagrees with Judge Guidry's observation in denying the Archdiocese's motion to dismiss the appeal of the June 7, 2022 Order that the order and Tranhant's removal "appear to satisfy the finality and contempt elements required for this appeal to proceed forward."  R. Doc. 32 at 2-3.  The history of the case in the bankruptcy court clearly indicates that the June 7, 2022 Order was just an interlocutory order designed to enforce an earlier court order (the protective order) and preserve the integrity of the bankruptcy proceeding while the court, in the separate show-cause/contempt proceeding, afforded Trahant due process in connection with the ultimate imposition of sanctions.

[127] The Court recognizes that Trahant's clients invested years of service on the Committee.  It is unfortunate that their attorney's actions have deprived them of the ability to continue to serve.  But, without interfering with the attorney-client relationship, it seems that the bankruptcy court had no choice but to remove them to preserve the integrity of the confidential communications necessary to the Committee's work.   Paramount in the Court's consideration of this consequence, though, is that the actual claims of the former Committee members are unaffected by the action and left intact.

[128] R. Doc. 1-2 at 5.

of the protective order.[129]   The term "contempt," which had not appeared in the June 7, 2022 Order, is employed for the first time in the June 13 show-cause order.   That order also granted Trahant access to the Trustee's Report, acknowledged that he had a right to counsel at the show-cause/contempt hearing, and afforded him the opportunity to file a written response to address whether sanctions should be imposed against him.[130]

 "The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950).   Where an alleged contemnor is provided notice and the opportunity to be heard before he is sanctioned, there has been no denial of due process.   *See In re Terrebonne Fuel & Lube, Inc.,* 108 F.3d 609, 613-14 (5th Cir. 1997) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 827 (1994)).   The June 13, 2022 show-cause order certainly constitutes notice to Trahant of the contempt proceeding, and he had the opportunity to be heard at the August 22, 2022 show-cause/contempt hearing.[131] Trahant was represented by counsel and testified at the hearing.[132]   It was only after Trahant had been heard that the bankruptcy judge imposed sanctions on him pursuant to § 105(a) and Rule 37(b)(2).   Thus, there was no due process violation in connection with the sanctions.

 Now, looking at the June 7, 2022 Order for what it was – namely, an enforcement of the bankruptcy court's protective order – Trahant received all the process he was due in connection with that order as well.   A thorough review of the record reveals that Trahant was aware of the protective order and his obligations to abide by it before the document production in December 2021.   Trahant was also aware that an apparent information leak had occurred in early January 2022.   Indeed, as counsel for several of the Committee members, Trahant provided a sworn

---

[129] R. Doc. 33-2 at 1-2.
[130] *Id.* at 3.
[131] No. 22-4101, R. Doc. 1-2 at 18.
[132] *Id.* at 18-22.

declaration stating that he did not breach the protective order even though he simultaneously admitted to providing the priest's name to the high school principal.  These inconsistent statements within his declaration show that Trahant knew he could be the "target" of the investigation into the leak and reflected a concerted effort on his part to defend his actions and explain why he believed they were permissible.  The investigation that followed, evolving into that of the Trustee, included written discovery to Trahant and the taking of his deposition.  During his deposition, Trahant was represented by counsel, who specifically observed that Trahant was "clearly being looked at as a potential person who violated the Court's protective order."[133]  This Court finds that Trahant, an experienced attorney, was provided adequate notice and an opportunity to be heard concerning the matters addressed by the June 7, 2022 Order – being the bankruptcy court's determinations, for purposes of enforcing its protective order, of whether a violation occurred, who committed it, and how to remedy it going forward so as to prevent additional abuse of the bankruptcy and judicial process and protect its integrity.

The bankruptcy court determined, for good reason, that Trahant was at least one source of the leak and issued its June 7, 2022 Order finding that he had knowingly and willfully violated the protective order.  And while at this point Trahant had arguably enjoyed more than enough due process for the bankruptcy court to impose sanctions, it did not impose sanctions but, instead, issued the show-cause order to afford him specific notice of the contempt hearing and an opportunity to be heard.  In issuing the June 7, 2022 Order, the bankruptcy court took appropriate steps to "enforce … court orders or rules [and] prevent an abuse of process" pursuant to its authority under § 105(a).  The need for the bankruptcy court to enforce its protective order by removing Trahant from his role with the Committee was warranted by the circumstances.  As well-

---

[133] No. 22-4101, R. Doc. 2-11 at 372 (Trahant deposition taken on May 18, 2022).

said by the bankruptcy court, the action was necessary "to protect the integrity of the bankruptcy process, to guard the rights of all parties in interest, and to preserve the trust in the confidentiality of mediation (which was due to begin on June 8, 2022)."[134]  The bankruptcy court, therefore, did not abuse its discretion, or deny due process to Trahant, in acting pursuant to § 105(a).[135]

### c.  The bankruptcy court's jurisdiction to enter the October 11, 2022 Order

Next, Trahant argues that his appeal of the June 7, 2022 Order divested the bankruptcy court of jurisdiction to re-adjudicate or otherwise address the issue of contempt and the imposition of sanctions against him.[136]  Consequently, in Trahant's view, the bankruptcy court had no jurisdiction to issue the show-cause order, hold the show-cause/contempt hearing, or enter the October 11, 2022 Order imposing sanctions against him.  Trahant's argument assumes that the June 7, 2022 Order was final and appealable.  It was not.

While it is generally true that a timely-filed notice of appeal will divest a court of jurisdiction over the judgment that is the subject of the appeal, "this rule presupposes that there is a final judgment from which to appeal." *In re U.S. Abatement Corp.*, 39 F.3d 563, 568 (5th Cir.

---

[134] No. 22-4101, R. Doc. 2-11 at 416.

[135] While Trahant does not similarly charge that the October 11, 2022 Order was entered without due process (other than to say that "the invalidity of the June 7, 2022 Order … is fatal to the October 11, 2022 Order," R. Doc. 79 at 41), the record reflects that the bankruptcy court afforded due process in regard to the later order as well.  Following the issuance of the June 7, 2022 Order, the bankruptcy court issued a show-cause order, which provided Trahant with additional notice and the opportunity to be heard before sanctions were levied against him.  The bankruptcy court ordered that Trahant be provided with the Trustee's Report and the attached materials so he could prepare for the show-cause/contempt hearing.  Trahant filed written objections to the impending proceeding into the record.  When the show-cause/contempt hearing was held on August 22, 2022, Trahant was represented by counsel and offered additional objections to the proceeding and the June 7, 2022 Order.  Trahant also provided sworn testimony and engaged in a thorough discourse with the bankruptcy court about the evidence against him.  Trahant did not controvert the Trustee's findings in any meaningful way.  Rather, Trahant's testimony confirmed the findings of the Trustee's investigation and he again admitted to disclosing the identity of the priest to the high school principal and the journalist.  Trahant further acknowledged that the priest's identity and details of the sexual abuse allegations against him were not in the public domain at the time he disseminated the information.  No. 22-4101, R. Doc. 2-11 at 116.  After the August 22, 2022 hearing, he was afforded more than one month's time to submit briefing on any issue, including the invoices filed by the Archdiocese and the Committee, before the October 11, 2022 Order was entered.  In sum, as with the June 7, 2022 Order, this Court finds without hesitation that Trahant was not deprived of due process in connection with the proceedings concerning the October 11, 2022 Order but was, in fact, provided with many opportunities to be heard before a finding of contempt was made and sanctions imposed against him.

[136] R. Doc. 79 at 39-41.

1994).  "[T]he Bankruptcy Code requires finality for appeals from bankruptcy court decisions to the district court, unless the district court grants leave to pursue an interlocutory appeal."  *Id.* at 566.  "[A] civil contempt order is not 'final' for purposes of appeal unless two actions occur: (1) a finding of contempt is issued, and (2) an appropriate sanction is imposed."  *Id.* at 567.  As explained above, this Court has determined that the way the events concerning the breach of the protective order unfolded demonstrates that the June 7, 2022 Order was confined to enforcement of the protective order and did not involve any element of a contempt ruling or an imposition of sanctions.  The June 7, 2022 Order does not even mention the term "contempt," and it plainly states that sanctions would be addressed at a later date, in connection with a show-cause/contempt hearing.  Hence, the June 7, 2022 Order was not a final and appealable order, *id.* at 566-67, but instead was merely a non-final, unappealable, interlocutory order.[137]  Trahant did not seek leave to appeal that interlocutory order.  Accordingly, Trahant's notice of appeal regarding the June 7, 2022 Order was premature and of no effect, meaning that the bankruptcy court retained jurisdiction to consider, and ultimately impose, sanctions.  *Id.* at 568.[138]

---

[137] *See supra* note 126.  This Court, in connection with its independent consideration of the matters on appeal, the motions for rehearing, and the motion to vacate, can and must also reexamine the basis of its own appellate jurisdiction.  This includes a reexamination of Judge Guidry's August 23, 2022 order (R. Doc. 32) denying the Archdiocese's motion to dismiss the then-separate appeal of the June 7, 2022 Order.  For the reasons discussed above, the Court holds that the August 23, 2022 order incorrectly determined that the June 7, 2022 Order appeared "to satisfy the finality and contempt elements required for this [separate] appeal to proceed forward."  *Id.* at 3.  With the issuance of the October 11, 2022 Order, which did find contempt and impose sanctions, the related issues addressed in the June 7, 2022 Order could be addressed in an appeal of the final and appealable October 11, 2022 Order, along with the contempt and sanctions determinations made in that later order.  This conclusion is confirmed by the Court's previous consolidation of the appeals from these two orders.

[138] *See Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.,* 906 F.2d 1059, 1062-64 (5th Cir. 1990) (holding that "the district court loses jurisdiction over all matters which are *validly* on appeal") (emphasis added); *Barnes v. BP Expl. & Prod. Inc.,* 2022 WL 3924317, at *1 n.1 (E.D. La. Aug. 30, 2022) ("The district court retains jurisdiction, however, when the notice of appeal relates to an order that is not immediately appealable.") (citing *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982)).

### d.  The bankruptcy court's October 11, 2022 Order

Trahant argues that the October 11, 2022 Order is not supported by competent evidence because no party offered evidence of his bad faith or willfulness at the show-cause hearing; in fact, says Trahant, no party offered any evidence at all other than his own testimony in which he denied knowingly or willfully violating the protective order.[139]  Trahant also argues that the imposition of $400,000 in attorney's fees and costs as sanctions is excessive as neither the Archdiocese nor the Committee suffered any harm by his disclosures of confidential information.[140]  These arguments are without merit.

Section 105(a) of the Bankruptcy Code gives a bankruptcy court the power to take any action or make any "determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  11 U.S.C. § 105(a).  This power includes the prerogative to issue civil contempt orders.  *In re Terrebonne Fuel & Lube, Inc.,* 108 F.3d at 613. Bankruptcy courts, "'to achieve the orderly and expeditious disposition of their dockets,'" also have the inherent power to impose sanctions against attorneys whose conduct involved bad faith or a willful abuse of process.  *In re Carroll,* 850 F.3d 811, 815 (5th Cir. 2017) (quoting *Scaife v. Associated Air Ctr. Inc.,* 100 F.3d 406, 411 (5th Cir. 1996)); *In re Cleveland Imaging & Surgical Hosp., L.L.C.,* 26 F.4th 285, 292 (5th Cir. 2022).  In addition, Rule 37(b)(2) allows courts to impose sanctions for the failure to obey discovery orders, including protective orders.  *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488-90 (5th Cir. 2012).  Authorized sanctions under Rule 37(b)(2) include imposing reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order, and these "[l]esser sanctions do not require a finding of willfulness."  *Id.* at 488; *see also* Fed. R. Civ. P. 37(b)(2)(C).  Sanctions are proper under Rule

---

[139] R. Doc. 79 at 41-52.
[140] *Id.* at 52-59.

37(b)(2) "where clear and convincing evidence indicates '(1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court order.'"  *Shaw v. Coix Health LLC*, 2021 WL 5140615, at *3 (E.D. La. Nov. 4, 2021) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir. 2002)).

Here, a thorough review of the record reveals that the bankruptcy court's findings of fact as to Trahant's knowing and willful violation of the protective order were correct and should not be disturbed.  Trahant's suggestion that the only evidence before the bankruptcy court at the August 22, 2022 show-cause/contempt hearing was the sworn testimony he provided blinks reality. Going into the hearing, the bankruptcy court made it clear that the record already encompassed the Trustee's Report and its attachments (which included, for example, Trahant's prior deposition testimony and his critical emails and text messages, among a vast array of other evidence).[141]  Also, going into the hearing, the bankruptcy court ordered and received the submissions of the Committee and the Archdiocese regarding the fees and costs they had incurred in conjunction with the investigation of the unauthorized disclosure of confidential information.[142]  This was the substantial body of evidence Trahant was given the opportunity at the August 22, 2022 hearing to confront.  He could do so by presenting his own testimony (as he did), the testimony of others (which he did not), or other documentary evidence (which he also did not).  The record also includes the extensive exchange between the bankruptcy court and Trahant at the hearing, wherein the latter was afforded the opportunity to respond to the bankruptcy court's questions about his conduct and to explain it, if he could.  And explain it he did, stating that he wanted to "plant a seed" via his disclosure to the principal because he "didn't want that guy [the priest] back on

---

[141] That Trahant was fully aware that the Trustee's Report (including its attachments) was part of the evidentiary record is made plain by his objection to such evidence at the show-cause/contempt hearing and the bankruptcy court's overruling the objection.  No. 22-4101, R. Doc. 2-11 at 101-03.

[142] Trahant never objected to the bankruptcy court's consideration of this evidence.

campus" and via his disclosure to the journalist because "this stuff needs to be exposed."[143]  Hardly the stuff of remorse.  Trahant's testimony at the August 22, 2022 hearing confirmed his awareness of the protective order, the materials it was intended to protect, and that he was bound by it.  His testimony also confirmed that he was aware of the procedure provided in the protective order for challenging a "CONFIDENTIAL" designation of any document produced in discovery, but that he failed to use it.  Thus, Trahant made the unilateral and knowing choice to subvert this procedure (to which he had agreed) and disclose the Protected Material to third parties.  The bankruptcy court correctly rejected Trahant's argument that he believed he was not violating the protective order as not credible, especially since he alternately contends that there was no violation because he did not hand over any of the confidential documents, that there was no violation because he disagreed with the "CONFIDENTIAL" designation (but did not bother to challenge it), and that there was no violation because the information needed to be made public through his planting seeds.

The bankruptcy court's finding of contempt in the October 11, 2022 Order – bottomed on the uncontroverted finding that Trahant willfully and knowingly violated the protective order, amounting to bad faith on his part – was thus easily supported by the ample clear-and-convincing evidence in the bankruptcy court's record.[144]  To be sure, in light of Trahant's own deposition and hearing testimony, his emails, and his text messages, the evidence is really uncontested that he violated the protective order because he thinks the priest's name should not have been protected. In short, Trahant took it upon himself to decide what rules should or should not be obeyed and what information should or should not be protected without first availing himself of the protective order's mechanism for contesting the confidential designation.  In doing so, Trahant blatantly violated a court order making sanctions appropriate, whether under § 105(a) or Rule 37(b)(2)(C).

---

[143] *Id.* at 120.
[144] No. 22-4101, R. Doc. 1-2 at 22-26.

Finally, Trahant argues that the $400,000 sanction is too high.  This Court disagrees and finds that the sanctions imposed by the bankruptcy court are reasonable, fully supported by the record, and justified under the circumstances.  Trahant was aware that the bankruptcy court had ordered the Archdiocese and the Committee to file their respective investigation-related invoices, and he had an opportunity to examine them ahead of the August 22, 2022 show-cause/contempt hearing.  Yet, he did not object to or contest the fee invoices before the bankruptcy court.  Thus, this Court finds no error in the bankruptcy court's determination, upon conducting its own independent lodestar review of the invoices, that the amount was reasonable given the waste and delay caused by Trahant's failure to own up to his actions sooner.  Indeed, although the bills presented to the bankruptcy court totaled $760,884.73, that court imposed a sanction of less than half this amount.[145]  The bankruptcy court went to great lengths to emphasize that the sanctions were intended "not only to serve as a deterrent for any attorney or law firm who might be tempted to violate the Court's discovery orders, but also to preserve the integrity of the bankruptcy process and to protect it from abuse."[146]  Accordingly, the Court finds no merit in Trahant's contention that the sanctions were punitive and thus criminal in nature.  The bankruptcy court did not abuse its discretion in imposing sanctions against Trahant.

## III.    CONCLUSION CONCERNING THE APPEAL

Rules are not made to be broken, as was blatantly done in this case.  Instead, they were made in this case, with the agreement of all stakeholders, to protect sensitive information about sexual abuse allegations that victims had chosen not to make public for reasons of their own, which

---

[145] *Id.* at 29.  This Court concludes that the bankruptcy court's decision to cut the total amount in half was reasonable since the Trustee had not been able to determine who had disclosed to the journalist the details of the sexual abuse allegations which found their way into his published article.  Instead, the Trustee was only able to determine that Trahant's violations involved his disclosure of the priest's name to the principal and, separately, to the journalist.

[146] *Id.* at 27.

included, no doubt, protecting their privacy. As the record and undisputed facts establish, Trahant, an experienced attorney, knew he was bound by the protective order and made the deliberate choice to violate it and, in doing so, failed to honor the privacy choices of certain sexual abuse victims he did not know but whose interests he professes to zealously advocate. This Court cannot condone an officer of the court's deliberate decision to violate a court order, no matter how noble his motivation, so it has no reservation in upholding the bankruptcy court's finding that Trahant's conduct was contemptuous, wasteful, and warranted the imposition of sanctions.

AFFIRMED.

*     *     *     *

## OPINION ON TRAHANT'S MOTIONS FOR REHEARING AND MOTON TO VACATE

## I.     TRAHANT'S MOTIONS FOR REHEARING

### A. Pending Motions

On April 10 and 11, 2023, Trahant filed his two motions for rehearing, one in each of the consolidated appeals, arguing that Judge Guidry's opinion overlooked or misapprehended material matters of law and fact.[147] First, Trahant argues that, regardless of whether he was aware that he might be the subject of a future contempt hearing, he was deprived of due process because he did not have notice and an opportunity to be heard before the bankruptcy court entered the June 7, 2022 Order.[148] Next, Trahant argues that his appeal of the June 7, 2022 Order, coupled with Judge Guidry's denial of the Archdiocese's motion to dismiss that appeal, divested the bankruptcy court of jurisdiction to further consider the imposition of sanctions against him and ultimately issue the October 11, 2022 Order.[149] Trahant also argues that neither the June 7, 2022 Order, nor the

---

[147] R. Docs. 90; 91.
[148] R. Doc. 90 at 9-12.
[149] *Id.* at 12-15.

October 11, 2022 Order, is supported by competent evidence because the priest's name is public, non-protected information or should be "declassified," he can still contest the "confidential" designation pursuant to the protective order, and the imposition of $400,000 in attorney's fees is excessive as neither the Archdiocese nor the Committee suffered any harm by the disclosures.[150]

In opposition, the Archdiocese argues that Trahant's motions for rehearing rehash old arguments, failing to demonstrate any mistake of fact or law.[151]  The Archdiocese argues that Trahant was afforded due process prior to the bankruptcy court's issuance of the June 7, 2022 Order because he knew he could be the subject of contempt and was represented by counsel when he was deposed by the Trustee.[152]  Next, the Archdiocese argues that the bankruptcy court retained jurisdiction to issue the October 11, 2022 Order because the June 7, 2022 Order was a non-appealable interlocutory order.[153]  The Archdiocese further argues that the orders were supported by competent evidence contained in the Trustee's Report and Trahant's testimony at the show-cause/contempt hearing, which confirmed that Trahant violated the protective order.[154]  Finally, the Archdiocese argues that the sanctions imposed were reasonable considering that Trahant willfully breached the protective order and the bankruptcy court reduced the fees claimed by more than 50%.[155]

### B.  Legal Standard for Rehearing

Rule 8022 of the Federal Rules of Bankruptcy Procedure governs motions for rehearing of bankruptcy appeals in district courts.  Such a motion "must be filed within 14 days after the entry of judgment on appeal" and "must state with particularity each point of law or fact that the movant

---

[150] *Id.* at 15-21.
[151] R. Doc. 95.
[152] *Id.* at 5-6.
[153] *Id.* at 6-7.
[154] *Id.* at 7-11.
[155] *Id.* at 11-12.

believes the district court … has overlooked or misapprehended and must argue in support of the motion." Fed. R. Bankr. P. 8022(a)(1)-(2).  A Rule 8022 motion for rehearing "may be granted to correct a 'mistaken use of facts or law' in the prior decision."  *In re Mar. Commc'ns/Land Mobile L.L.C.*, 745 F. App'x 561, 562 (5th Cir. 2018) (quoting *In re Coleman*, 2015 WL 7101129, at *1 (E.D. La. Nov. 13, 2015) ("The Court is of the opinion that the standard is simply whether the Court would have reached a different result had it been aware of its mistaken use of facts or law.")).

## C.  Analysis

Trahant's motions for rehearing were timely filed within 14 days of the Court's March 27, 2023 opinion.  Because the motions and oppositions largely reiterate the arguments raised in the parties' briefs on appeal, and because, following reallotment of the appeals to this section of court, this Court has withdrawn the March 27, 2023 opinion, thereby allowing it to consider independently the arguments made in the briefs on appeal as well as the arguments urged in the motions for rehearing, the Court need not repeat its analysis of these arguments in disposing of the motions for rehearing.  Instead, it suffices to say that Trahant's position on rehearing has been taken into account and sufficiently addressed in the foregoing opinion on the appeals from the June 7, 2022 and October 11, 2022 Orders.  The bankruptcy court did not deprive Trahant of due process in issuing either of its orders, it had jurisdiction to enter the October 11, 2022 Order, and that order was fully supported by the evidence and the law.  This Court pauses only to expressly reject Trahant's disingenuous argument that he did not violate the protective order because the priest's name is public, non-protected information or should be "declassified."[156]  Trahant only learned of the sexual abuse allegations against the priest through the Archdiocese's production of documents designated as confidential pursuant to the protective order.  Trahant's disclosures of the name to

---

[156] R. Doc. 91-1 at 16-18.

the principal and journalist were not made in a vacuum but under circumstances he understood perfectly well would signal ("plant a seed") that the priest was connected in some unspecified way with the sexual abuse claims Trahant was famously pursuing. This connection was not public. Trahant's argument that the name should be "declassified" falls flat given his failure to trigger the protective order's mechanism for challenging a confidential designation and thereby seek "declassification." Trahant points to another provision of the protective order providing that a failure to challenge a designation initially does not waive the right to later challenge it. While true, the provision cannot be read to greenlight violations of the protective order (through the disclosure of Protected Material) that are subsequently sought to be excused by means of a designation challenge. Trahant's reading of the provision thus places the proverbial cart before the horse.

Accordingly, the motions for rehearing are DENIED.

## II.      TRAHANT'S MOTION TO VACATE

### A. Pending Motion

Trahant argues that this Court should vacate Judge Guidry's March 27, 2023 opinion and the corresponding judgments pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure because they were entered by a judge subject to recusal under 28 U.S.C. § 455.[157] Trahant insists that the failure to do so will produce injustice to the parties because the bankruptcy court's June 7, 2022 and October 11, 2022 Orders "are invalid, unsupported by competent evidence, and clearly erroneous, yet they were affirmed in an Opinion and Judgments entered by a judge subject to recusal."[158] Trahant also argues that the failure to vacate the opinion and judgments will produce injustice in other cases because there is a risk that the bankruptcy court's two orders "will substantially erode due process protections in other contempt proceedings, and will substantially

---

[157] R. Doc. 102-1 at 8-13.
[158] *Id.* at 11.

expand the jurisdiction of bankruptcy courts over aspects of cases involved in other appeals of bankruptcy cases to district courts."[159]   Finally, Trahant argues that failure to vacate the opinion and judgments will undermine the public's confidence in the judicial process considering that "[t]he extensive national and international media coverage of the so-called 'donations scandal' exposes the extent to which the public might reasonably question Judge Guidry's impartiality."[160] According to Trahant, "[t]o deny relief in these circumstances would convey a message to the public that Mr. Trahant and the nearly 500 sexual abuse survivors with claims against the Archdiocese in the pending bankruptcy proceeding are unable to find a fair forum in federal court."[161]

In opposition, the Archdiocese first argues that the motion to vacate is an untimely motion for rehearing (filed long after the 14-day period for such motions), so it should not be considered.[162] On the merits of the motion, the Archdiocese argues that vacatur is not warranted because, "even if Judge Guidry were required to recuse himself before affirming the Bankruptcy Court's orders, his failure to do so [poses no risk of injustice to Trahant and] constitutes harmless error" because Trahant "may appeal to the Fifth Circuit, which will review the bankruptcy court's orders without giving any deference to Judge Guidry's ruling."[163]   Moreover, says the Archdiocese, vacatur "would work substantial injustice to [it] and other parties in interest and undermine the public's confidence in the judicial process by needlessly delaying resolution of these [a]ppeals and diverting additional attention and resources from the reorganization process."[164]

---

[159] *Id.*
[160] *Id.* at 12.
[161] *Id.*
[162] R. Doc. 103 at 2, 7-8.
[163] *Id.* at 2-3, 9-12.
[164] *Id.* at 3, 12-14.

In reply, Trahant again reviews the three factors governing whether recusal warrants vacatur, urging that each favors vacating Judge Guidry's opinion and judgments.[165]

## B.  Legal Standard for Vacating an Order and Judgment for Failure to Recuse[166]

Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  Similarly, § 455(b)(1) provides that a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party."  *Id.* § 455(b)(1).  The Fifth Circuit has explained that "[t]hese provisions afford separate, though overlapping, grounds for recusal.  Subsection (b)(1) pertains to specific instances of conflicts of interest, while subsection (a) deals with the appearance of partiality generally."  *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003).  "Further, whenever a judge's partiality might reasonably be questioned, recusal is required under § 455(a), irrespective whether the circumstance is covered by § 455(b)."  *Id.* (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 n.8 (1988)).  To evaluate a claim under § 455(a), courts "must consider whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality," and "recusal may be required even though the judge is not actually partial."  *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 484 (5th Cir. 2003) (quotations and emphasis omitted).

Although § 455 does not, on its own, authorize relief when a judge should have recused himself, Rule 60(b)(6) of the Federal Rules of Civil Procedure provides a remedy.  *See Liljeberg*, 486 U.S. at 863; *Patterson*, 335 F.3d at 485-86.  Rule 60(b)(6) "grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the

---

[165] R. Doc. 106 at 3-7.

[166] The Court pretermits consideration of the Archdiocese's argument concerning the timeliness of the motion to vacate because, even considering the Rule 60(b) motion on the merits, it is denied for the reasons reviewed below.

motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg*, 486 U.S. at 863 (quoting Fed. R. Civ. P. 60(b)(6)). The rule enables courts, in "extraordinary circumstances," "to vacate judgments whenever such action is appropriate to accomplish justice." *Id.* at 864 (quotations omitted). The Supreme Court has explained that Rule 60(b)(6) relief is "neither categorically available nor categorically unavailable for all § 455(a) violations." *Id.* Instead, in determining whether a judgment should be vacated for violation of § 455(a), courts must consider (1) "the risk of injustice to the parties in the particular case"; (2) "the risk that the denial of relief will produce injustice in other cases"; and (3) "the risk of undermining the public's confidence in the judicial process." *Id.* In the Fifth Circuit, "the 'harmless error' rule has long been applied in this context."[167] *Patterson*, 335 F.3d at 485; *see also Labranche v. Dep't of Def.,* 720 F. App'x 182, 185 (5th Cir. 2018) (applying harmless error rule as a component of the *Liljeberg* analysis).

**C. Analysis**

Because Judge Guidry did recuse himself, the appeals were reallotted to this section of court. And, as reflected above, this Court conducted an independent analysis of the issues raised on appeal, withdrew the March 27, 2023 opinion of Judge Guidry, and issues its own opinion addressing the appellate issues anew. Given these circumstances, it is probably unnecessary to address the substance of Trahant's motion to vacate because the opinion now underlying the judgments on appeal has been rendered by a judge not subject to recusal under § 455.

---

[167] In another proceeding emanating from the Archdiocese's bankruptcy case, it has been urged that the harmless error analysis is only to be performed by the Fifth Circuit, not this district court. However, a close reading of *Liljeberg* and *Patterson* indicates that the analysis is to be performed by the court handling the questions whether a judge should have recused and whether any failure to do so earlier requires that a judgment be vacated. *See, e.g., Roberts v. Wal-Mart La., L.L.C.,* 54 F.4th 852, 854 (5th Cir. 2022) (noting that a district judge "ably and succinctly applied the *Liljeberg* factors" to the questions about the recusal of another district judge once the case was reallotted to him). This Court is the court first called upon to answer these questions in this instance (in part, because it is acting as an appellate court in this instance), so it may conduct the harmless error analysis that accompanies a complete examination of these questions.

Nevertheless, in an abundance of caution, this Court will conduct the *Liljeberg* and *Patterson* analysis. Because Judge Guidry did recuse himself, this Court will assume he should have, notwithstanding the opinion of the Committee on Codes of Conduct that recusal was not required. So, the question is whether his failure to recuse earlier was harmless error considering: (1) the risk of injustice to the parties in this case; (2) the risk that the denial of relief will produce injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process. The Court finds that, on balance, Judge Guidry's failure to recuse earlier was harmless error.

First, declining to vacate Judge Guidry's opinion and judgments presents no risk of injustice to the parties in this case. As explained above, this Court conducted an independent analysis of the issues on appeal and, like Judge Guidry, affirms the bankruptcy court's June 7, 2022 and October 11, 2022 Orders. Although this Court employs slightly different reasoning, the result is the same – namely, affirmance of the bankruptcy court's orders. In addition, the Fifth Circuit will also perform a fair and impartial review of the bankruptcy court's orders. That court has repeatedly found no risk of injustice to the parties when the trial court's ruling is subject to *de novo* review – as is true here for both the bankruptcy court's and district court's rulings. *Roberts,* 54 F.4th at 854 (holding there was no risk of injustice to the parties in part because the party seeking vacatur "would have received a fair, impartial *de novo* review"); *Patterson,* 335 F.3d at 485 ("Because we review a summary judgment ruling *de novo,* using the same standards as the district court, the parties are guaranteed a fair, impartial review of the merits of the ruling."). The Fifth Circuit "review[s] the decision of a district court, sitting in its appellate capacity, by applying the same standards of review to the bankruptcy court's finding of fact and conclusions of law as applied by the district court." *In re ASARCO, L.L.C.,* 650 F.3d 593, 600 (5th Cir. 2011). As such,

the Fifth Circuit will review the bankruptcy court's June 7, 2022 and October 11, 2022 Orders under the same standards of review applied by Judge Guidry originally, and now by this Court, so Trahant is guaranteed yet another fair and impartial review of these rulings.

Second, there is no risk that the denial of vacatur will produce injustice in other cases. As explained above, the bankruptcy court provided Trahant with due process at each stage of these proceedings, appropriately exercised its jurisdiction to address the October 11, 2022 Order, and did not, at any point, act beyond the authority granted to it by § 105(a) and Rule 37(b)(2). Also, Judge Guidry has recused himself in all proceedings arising out of the Archdiocese's bankruptcy case, and this Court, when called upon, will conduct an independent review of the issues addressed in his prior orders, so there is no risk of inconsistent rulings or injustice in these other proceedings. Moreover, if Trahant seeks review from the Fifth Circuit, there will be a second fair and impartial review by that court of the bankruptcy court's orders in these other proceedings as well. Further, the fact-intensive nature of the rulings in these proceedings "suggests that this denial [of vacatur] is unlikely to produce injustice in other cases." *Roberts,* 54 F.4th at 854.

Finally, failure to vacate Judge Guidry's judgments – the relief sought by Trahant – will not undermine the public's confidence in the judicial process because this Court has weighed all the arguments made on appeal and reevaluated Judge Guidry's decision in connection with its own consideration of the appeals and the motions for rehearing. Further, Judge Guidry was advised by the Committee on Codes of Conduct that recusal was unnecessary and only recused to avoid an appearance of partiality after the media reported his donations to Catholic charitable organizations that are not parties to the bankruptcy case or any of its proceedings. In the wake of his recusal and reallotment of the bankruptcy appeals to this section of court, this Court's independent consideration of the appellate issues and issuance of a substituted opinion affirming the bankruptcy

court's orders, there is no reason to vacate the judgments entered by Judge Guidry, and the public's confidence in the judicial process should be heightened by the similarity in outcome, placing the integrity of Judge Guidry's judgments in the appeals beyond question.  *See Roberts,* 54 F.4th at 854 ("[T]he public's faith in the judicial system may be more undermined by vacating a straightforwardly correct decision …."); *Patterson,* 335 F.3d at 486 (cautioning that "the public may be more inclined to lose faith in the system if this court were to mindlessly vacate [the recused judge's] rulings"); *In re Continental Airlines Corp.,* 901 F.2d 1259, 1263 (5th Cir. 1990) ("[I]f we reverse and vacate a decision that we have already determined to be proper, the public will lose faith in our system of justice because the case will be overturned without regard to the merits of the … claims [at issue].")  As the Fifth Circuit concluded in *Roberts,* "[t]hat the case was reopened and reviewed by both an independent district judge and a panel of this court will likewise reassure the public that the federal judicial system takes its recusal obligations seriously."  54 F.4th at 854.

In sum, Judge Guidry's failure to recuse earlier was harmless error and this Court will not vacate his prior judgments (although it has withdrawn his prior opinion and substituted this one for it).  Finally, this Court emphasizes that denying relief to Trahant on his motion to vacate does not convey a message to the sexual abuse survivors involved in the Archdiocese's bankruptcy case that they cannot find a fair forum in federal court.  This appeal has nothing to do with the merits of their claims but deals instead with an attorney's failure to obey a court order and the court's obligation to protect the judicial process from such abuse.  It is the Court's hope that the stakeholders in the bankruptcy case can put these ancillary matters to rest, so they can get on with the primary goal of confecting and confirming a plan of reorganization for the debtor that will provide meaningful relief for sexual abuse claimants within the bankruptcy process.

## IV.  CONCLUSION CONCERNING THE PENDING MOTIONS

Accordingly, for the foregoing reasons,

IT IS ORDERED that Trahant's motion to vacate (R. Doc. 102) is DENIED.

IT IS FURTHER ORDERED that Trahant's motions for rehearing (R. Docs. 90; 91) are

DENIED.

New Orleans, Louisiana, this 21st day of June, 2023.


_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE